IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DISTRICT



GEORGE A. BROOKS, *et al.*,    *

    Plaintiffs,    *

        v.    *    Civil Action No. AW-06-1024

MOTSENBOCKER ADVANCED    *
DEVELOPMENTS, INC., *et al.*,    *

    Defendants.    *

'08 CV 0378 WQH CAB

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, IT IS this **25th day of February, 2008** by the United States District Court for the District of Maryland, hereby **ORDERED**:

1.    That the Motion to Transfer (Docket Nos. 10 and 33) BE, and the same hereby IS, **GRANTED**;

2.    That the Clerk of the Court **TRANSFER** this case to the United States District Court for the Southern District of California;

3.    That the Motion for Leave to File Amended Complaint (Docket No. 35) BE, and the same hereby IS, **DENIED-AS-MOOT;**

4.    That the Clerk of the Court **CLOSE** this case; AND

5.    That the Clerk of the Court transmit copies of this Opinion and Order to all parties of record.

                                              _____/s/_____

                                              Alexander Williams, Jr.
                                              United States District Judge

CLOSED

# U.S. District Court
# District of Maryland (Greenbelt)
# CIVIL DOCKET FOR CASE #: 8:06-cv-01024-AW

Brooks et al v. Motsenbocker Advanced Developements, Inc. et al

Assigned to: Judge Alexander Williams, Jr
Demand: $2,000,000
Case in other court: USCA, 07-01033
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 04/24/2006
Date Terminated: 12/08/2006
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

## Plaintiff

**George A. Brooks**                        represented by    **Michael J Trevelline**
                                                              Law Offices of Michael J Trevelline
                                                              1823 Jefferson Pl NW
                                                              Washington, DC 20036
                                                              12027371139
                                                              Fax: 12027751118
                                                              Email: mjt@mjtlegal.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

## Plaintiff

**Brooks Industries, Inc.**                 represented by    **Michael J Trevelline**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

V.

## Defendant

**Motsenbocker Advanced**                   represented by    **Aaron Jacob Snow**
**Developments, Inc.**                                        Boies Schiller and Flexner LLP
                                                              5301 Wisconsin Ave NW Ste 800
                                                              Washington, DC 20015
                                                              12022372727
                                                              Fax: 12022376131
                                                              Email: asnow@bsfllp.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Patrick Dennis Webb**
Webb and Carey APC
401 B St Ste 306
San Diego, CA 92101
16192361650
Fax: 16192361283
Email: pwebb@webbcarey.com
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Gregg A. Motsenbocker**          represented by     **Aaron Jacob Snow**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick Dennis Webb**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Skip A. Motsenbocker**          represented by     **Aaron Jacob Snow**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick Dennis Webb**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/24/2006 | 1 | COMPLAINT against Motsenbocker Advanced Developements, Inc., Gregg A. Motsenbocker, Skip A. Motsenbocker ( Receipt # 84637005249 Filing fee $350.00Paid.), filed by George A. Brooks, Brooks Industries, Inc.. (Attachments: # 1 Civil Cover Sheet aap, Deputy Clerk) Modified on 4/24/2006 (aap, Deputy Clerk). Modified on 4/25/2006 (rank, Deputy Clerk). (Entered: 04/24/2006) |
| 04/24/2006 | 2 | Jury Trial Demand by George A. Brooks, Brooks Industries, Inc.. (rank, Deputy Clerk) (Entered: 04/24/2006) |
| 04/24/2006 | 3 | Local Rule 103.3 Statement of plaintiff. (rank, Deputy Clerk) (Entered: 04/24/2006) |
| 04/24/2006 | 4 | Summons Issued 20 days as to Motsenbocker Advanced Developments, Inc., Gregg A. Motsenbocker, Skip A. Motsenbocker. (rank, Deputy Clerk) (Entered: 04/24/2006) |

| 06/05/2006 | 5 | JOINT MOTION for Extension of Time to File Answer or Otherwise Respond to Complaint by Motsenbocker Advanced Developments, Inc., Gregg A. Motsenbocker, Skip A. Motsenbocker. Responses due by 6/22/2006 (rank, Deputy Clerk) (Entered: 06/05/2006) |
| 06/05/2006 | 6 | PAPERLESS ORDER "Granting" 5 Joint Motion for Extension of Time to Answer Signed by Judge Alexander Williams Jr. on 6/5/06 (ajh, Chambers) (Entered: 06/05/2006) |
| 06/12/2006 | 7 | AFFIDAVIT of Service for Initial Pleading served on Motsenbocker Advanced Developments on 16 May 2006, filed by George A. Brooks, Brooks Industries, Inc.. (Trevelline, Michael) (Entered: 06/12/2006) |
| 06/12/2006 | 8 | AFFIDAVIT of Service for Initial Pleadings served on Gregg Motsenbocker on 16 May 2006, filed by George A. Brooks, Brooks Industries, Inc.. (Trevelline, Michael) (Entered: 06/12/2006) |
| 06/12/2006 | 9 | AFFIDAVIT of Service for Initial Pleadings served on Skip Motsenbocker on 16 May 2006, filed by George A. Brooks, Brooks Industries, Inc.. (Trevelline, Michael) (Entered: 06/12/2006) |
| 06/20/2006 | 10 | MOTION to Dismiss for Lack of Jurisdiction *or, in the Alternative, to Transfer the Case and Stay Discovery,* by Motsenbocker Advanced Developments, Inc., Gregg A. Motsenbocker, Skip A. Motsenbocker. Responses due by 7/7/2006 (Attachments: # 1 Memorandum in Support of Motion)(Snow, Aaron) (Entered: 06/20/2006) |
| 06/20/2006 | 11 | Corporate Disclosure Statement by Motsenbocker Advanced Developments, Inc.. (Snow, Aaron) (Entered: 06/20/2006) |
| 06/20/2006 | 12 | AFFIDAVIT re 10 MOTION to Dismiss for Lack of Jurisdiction *or, in the Alternative, to Transfer the Case and Stay Discovery, Declaration of Gregg A. Motsenbocker,* by Motsenbocker Advanced Developments, Inc., Gregg A. Motsenbocker, Skip A. Motsenbocker. (Snow, Aaron) (Entered: 06/20/2006) |
| 07/07/2006 | 13 | RESPONSE in Opposition re 10 MOTION to Dismiss for Lack of Jurisdiction *or, in the Alternative, to Transfer the Case and Stay Discovery,* filed by George A. Brooks, Brooks Industries, Inc.. Replies due by 7/21/2006. (Attachments: # 1 Affidavit of Brooks# 2 Exhibit Magazine Advertisement# 3 Exhibit pages from web site# 4 Affidavit of Douglas Earnest)(Trevelline, Michael) (Entered: 07/07/2006) |
| 07/13/2006 | 14 | MOTION for Patrick Dennis Webb to Appear Pro Hac Vice by Motsenbocker Advanced Developments, Inc., Gregg A. Motsenbocker, Skip A. Motsenbocker. (elt, Deputy Clerk) (Entered: 07/13/2006) |
| 07/13/2006 | 15 | MARGINAL ORDER granting 14 Motion for Patrick Dennis Webb to Appear Pro Hac Vice. Signed by Clerk on 07/12/2006. (c/m 7/13/06) (elt, Deputy Clerk) (Entered: 07/13/2006) |

| 07/20/2006 | 16 | REPLY to Response to Motion re 10 MOTION to Dismiss for Lack of Jurisdiction *or, in the Alternative, to Transfer the Case and Stay Discovery,* filed by Motsenbocker Advanced Developments, Inc., Gregg A. Motsenbocker, Skip A. Motsenbocker. (Attachments: # 1 Exhibit A (Patents Nos. 5,415,800 and 5,484,487)# 2 Exhibit B (Ecolab Distributorship/License Agreement)# 3 Exhibit C (Inventory Sales History Report-Brass Wash and Finish Coat)# 4 Exhibit D (Customer Sales Analysis-All Products-All Maryland Zip Codes)# 5 Affidavit Gregg Motsenbocker (Supplemental))(Snow, Aaron) (Entered: 07/20/2006) |
| --- | --- | --- |
| 07/26/2006 | 17 | MOTION for Leave to File *Surreply Memorandum* by George A. Brooks, Brooks Industries, Inc.. Responses due by 8/14/2006 (Attachments: # 1 Text of Proposed Order)(Trevelline, Michael) (Entered: 07/26/2006) |
| 08/14/2006 | 18 | RESPONSE in Opposition re 17 MOTION for Leave to File *Surreply Memorandum* filed by Motsenbocker Advanced Developments, Inc., Gregg A. Motsenbocker, Skip A. Motsenbocker. Replies due by 8/28/2006. (Snow, Aaron) (Entered: 08/14/2006) |
| 09/01/2006 | 19 | ORDER granting 17 Motion for Leave to File, that Plaintiff's have until September 8, 2006 to submit a surreply. Signed by Judge Alexander Williams Jr. on 08/31/2006. (elt, Deputy Clerk) (Entered: 09/01/2006) |
| 09/08/2006 | 20 | Memorandum re 10 MOTION to Dismiss for Lack of Jurisdiction *or, in the Alternative, to Transfer the Case and Stay Discovery, Surreply Memorandum* filed by George A. Brooks, Brooks Industries, Inc.. (Attachments: # 1 Affidavit of Walter Noga)(Trevelline, Michael) (Entered: 09/08/2006) |
| 11/29/2006 | 21 | ORDER advising the Court has scheduled a hearing on the Motion to Dismiss for December 5, 2006 at 9:00 am. Signed by Judge Alexander Williams Jr. on 11/28/2006. (elt, Deputy Clerk) (Entered: 11/29/2006) |
| 12/05/2006 |  | Motion Hearing held before Judge Alexander Williams Jr. on 12/5/2006 re 10 MOTION to Dismiss for Lack of Jurisdiction or, in the Alternative, to Transfer the Case and Stay Discovery, filed by Skip A. Motsenbocker, Gregg A. Motsenbocker, Motsenbocker Advanced Developments, Inc. - argued - "TAKEN UNDER ADVISEMENT. Order to be prepared by the Court. (Court Reporter Gloria Williams) (has, Deputy Clerk) (Entered: 12/05/2006) |
| 12/08/2006 | 22 | MEMORANDUM OPINION. Signed by Judge Alexander Williams Jr. on 12/8/2006. (elt, Deputy Clerk) (Entered: 12/08/2006) |
| 12/08/2006 | 23 | ORDER granting 10 Motion to Dismiss for Lack of Jurisdiction. Signed by Judge Alexander Williams Jr. on 12/8/2006. (elt, Deputy Clerk) (Entered: 12/08/2006) |
| 01/08/2007 | 24 | NOTICE OF APPEAL as to 22 Memorandum Opinion, 23 Order on Motion to Dismiss/Lack of Jurisdiction by George A. Brooks, Brooks Industries, Inc. Appeal Record due by 2/7/2007. (Trevelline, Michael) |

| | | |
|---|---|---|
| | | (Filing Fee $455.00, receipt no. 84637008031, received 1/11/07) Modified on 1/11/2007 (krc, Deputy Clerk). (Entered: 01/08/2007) |
| 01/11/2007 | 25 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 24 Notice of Appeal. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices. (krc, Deputy Clerk) (Entered: 01/11/2007) |
| 01/11/2007 | | Assembled Electronic Record Transmitted to Fourth Circuit -- Initial (krc, Deputy Clerk) (Entered: 01/11/2007) |
| 01/19/2007 | | USCA Case Number 07-1033 for 24 Notice of Appeal, filed by George A. Brooks, Brooks Industries, Inc.. Case Manager - Anthony Webb (krc, Deputy Clerk) (Entered: 01/19/2007) |
| 03/01/2007 | 26 | TRANSCRIPT of Proceedings held on December 5, 2006 before Judge Alexander Williams, Jr.. Court Reporter: Gloria I. Williams. (rank, Deputy Clerk) (Entered: 03/01/2007) |
| 03/09/2007 | 27 | ORDER of USCA "DENYING" Appellants' motion with prejudice to the filing of a motion to supplement the record in USDC as to 24 Notice of Appeal, filed by George A. Brooks, Brooks Industries, Inc. (krc, Deputy Clerk) (Entered: 03/09/2007) |
| 03/15/2007 | 28 | MOTION supplement the record by George A. Brooks, Brooks Industries, Inc.. Responses due by 4/2/2007 (Attachments: # 1 Affidavit of Brooks# 2 Exhibit B Fourth Circuit Order# 3 Text of Proposed Order)(Trevelline, Michael) (Entered: 03/15/2007) |
| 03/27/2007 | 29 | ORDER denying 28 Motion to Supplement the Record. Signed by Judge Alexander Williams Jr. on 3/26/2007. (elt, Deputy Clerk) (Entered: 03/27/2007) |
| 08/03/2007 | 30 | JUDGMENT of USCA "VACATING" the Judgment of the USDC and "REMANDING" to the USDC for further proceedings consistent with the Court's opinion as to 24 Notice of Appeal, filed by George A. Brooks, Brooks Industries, Inc. (Attachments: #(1) Unpublished Opinion) (krc, Deputy Clerk) (Entered: 08/03/2007) |
| 08/21/2007 | 31 | Correspondence from CT to Mr. Trevelline re: return of subpoena. (elt, Deputy Clerk) (Entered: 08/21/2007) |
| 08/29/2007 | 32 | MANDATE of USCA (certified copy) Judgment as to 24 Notice of Appeal, filed by George A. Brooks, Brooks Industries, Inc. (Attachments: # 1 certified copy Judgment, #(2) Unpublished Opinion)(krc, Deputy Clerk) (Entered: 08/30/2007) |
| 09/05/2007 | 33 | Supplemental to *Defendants' Motion to Dismiss or Transfer*. (Snow, Aaron) (Entered: 09/05/2007) |
| 09/11/2007 | 34 | RESPONSE re 33 Supplemental *Filing* filed by George A. Brooks, Brooks Industries, Inc.. (Attachments: # 1 Exhibit A# 2 Exhibit B)(Trevelline, |

| | | Michael) (Entered: 09/11/2007) |
|---|---|---|
| 09/11/2007 | <u>35</u> | MOTION for Leve to File Amended Complaint, by George A. Brooks, Brooks Industries, Inc. Responses due by 9/28/2007 (Attachments: # <u>1</u> Exhibit A# <u>2</u> Exhibit B)(Trevelline, Michael) Modified on 9/12/2007 (elt, Deputy Clerk). (Entered: 09/11/2007) |
| 09/28/2007 | <u>36</u> | RESPONSE in Opposition re <u>35</u> MOTION to Amend/Correct <u>1</u> Complaint, filed by Motsenbocker Advanced Developments, Inc., Gregg A. Motsenbocker, Skip A. Motsenbocker.Replies due by 10/12/2007. (Attachments: # <u>1</u> Exhibit Comparison of Original Complaint and Proposed Amended Complaint# <u>2</u> Appendix Appendix of Cases Not Available In Westlaw)(Snow, Aaron) (Entered: 09/28/2007) |
| 10/09/2007 | <u>37</u> | REPLY to Response to Motion re <u>35</u> MOTION to Amend/Correct <u>1</u> Complaint, filed by George A. Brooks, Brooks Industries, Inc.. (Attachments: # <u>1</u> Exhibit A)(Trevelline, Michael) (Entered: 10/09/2007) |
| 02/26/2008 | <u>38</u> | MEMORANDUM OPINION. Signed by Judge Alexander Williams, Jr on 2/25/2008. (elt, Deputy Clerk) (Entered: 02/26/2008) |
| 02/26/2008 | <u>39</u> | ORDER that the Motion to Transfer (Docket Nos 10 adn 33) BE, and the same hereby IS, GRANTED; the Clerk of the Court TRANSFER this case to the United States District Court for the Southern District of California; that the Motion for Leave to File Amended Complaint (Docket No. 35) BE, and the same hereby IS, DENIED-AS-MOOT; and the Clerk of the Court CLOSE this case. Signed by Judge Alexander Williams, Jr on 2/25/2008. (elt, Deputy Clerk) (Entered: 02/26/2008) |

### PACER Service Center

#### Transaction Receipt

02/27/2008 17:34:51

| PACER Login: | ud0077 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 8:06-cv-01024-AW |
| Billable Pages: | 4 | Cost: | 0.32 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| George A. Brooks<br>4913 Lakawanna Street<br>College Park, MD  20740<br>Telephone:  (301) 345-4776<br>Prince Georges County | ) )<br>) )<br>) )<br>) )<br>) ) |
| Brooks Industries, Inc.<br>4913 Lackawanna Street<br>College Park, MD  20740<br>Telephone:  (301) 345-4776<br>Prince Georges County | **Count I Breach of Contract**<br>**Count II Breach of Contract**<br>**Count III Quantum Meruit** |
| Plaintiffs, | **Count IV Unjust Enrichment** |
| vs. | **Count V Promissory Estoppel/Detrimental Reliance** |
| Motsenbocker Advanced Developments, Inc.<br>4901 Morena Boulevard, Suite 806<br>San Diego, CA  92117<br>Telephone:  (858) 581-0222 | **Count VI Tort Arising from Breach of Contract**<br>**Count VII  Misrepresentation** |
| <u>Serve:</u><br>Gregg A. Motsenbocker<br>874 Felspar Street<br>San Diego, CA  92109 | **Count VIII  Negligent Misrepresentation**<br>**Count IX Breach of Fiduciary Duties** |
| Gregg A. Motsenbocker<br>874 Felspar Street<br>San Diego, CA  92109<br>Telephone:  (858) 272-8372 | **Count X Accounting**<br>**Count XI Declaratory Relief**<br>**Count XII:  Breach of Contract** |
| Skip A. Motsenbocker<br>7925 Hillandale Drive<br>San Diego, CA  92120<br>Telephone:  (619) 287-7877 | |
| Defendants. | |

## Complaint for Breach of Contract, Fraud, and Related Claims

George A. Brooks and Brooks Industries, Inc., plaintiffs, by their attorney, Michael J. Trevelline, sues Motsenbocker Advanced Developments, Inc., Gregg Motsenbocker, Skip Motsenbocker, defendants, and states:

1.    Plaintiff George A. Brooks ("Brooks") is an individual residing in Prince Georges County, Maryland.

2.    Plaintiff Brooks Industries, Inc. is a corporation organized under the laws of Maryland with its principal place of business in Prince Georges County, Maryland.

3.    Defendant Gregg A. Motsenbocker is an individual residing in San Diego County, California.

4.    Defendant Skip Motsenbocker is an individual residing in San Diego County, California.

5.    Defendant Motsenbocker Advanced Developments, Inc. ("Motsenbocker Developments") is a corporation organized under the laws of California with its principal place of business in San Diego.

6.    There is complete diversity of citizenship between all plaintiffs and all defendants in this matter.  As will be more fully explained below, the amount in dispute in this action, exclusive of interests and costs, exceeds the sum of $75,000.  Therefore, this court has jurisdiction over this dispute by virtue of 28 U.S.C. § 1332.

7.    This Court has personal jurisdiction over the defendants

*Complaint—Page 2*

under the Maryland long-arm statute, Md. Code Courts & Judicial
Proceedings § 6-103.

8.    Venue is proper in this Court because a substantial part
of the events complained of herein have occurred in this district
and defendant Motsenbocker Developments conducts a significant
amount of business in this district.

## Background Facts

### Ecolab, Inc. & Brass Wash

9.    Motsenbocker Developments possesses patents (Patent
Numbers 5,484,487 and 5,415,800) on a biodegradable, water-based,
nonflammable, liquid cleaner used to remove paint and paint-like
coverings and deposits ("the Product").

10.    Motsenbocker markets and labels the Product as
MÖTSENBÖCKER'S LIFT OFF® under that name and with various additional
titles serving to identify particular uses and with at times a gel
additive making it more suitable for particular uses.

11.    Brooks is a painter by trade.

12.    In May 1998, Brooks purchased a bottle of the Product in a
Maryland store marketed as a graffiti remover with a disclaimer that
it is not to be used on painted wood and metal.

13.    As an experiment, Brooks tested the Product as a stripper
for removing clear coats from brass, finding that it worked well.

14.    Brooks telephoned Motsenbocker Developments and spoke to
Gregg Motsenbocker.  After receiving assurances from Gregg
Motsenbocker that he would not steal Brooks' ideas, Brooks related
that following the death of workers stripping brass with flammable

*Complaint—Page 3*

strippers the painting industry was looking for a water-based brass stripper and that the Product seemed to fulfill this need. Brooks proposed marketing it for Motsenbocker Developments.

15.   Motsenbocker Developments agreed and arranged for Brooks to sign a contract with Ecolab, Inc.. Ecolab possessed the exclusive rights to market the Product wholesale. On or about August 1998, Brooks entered into a written contract with Ecolab making Brooks the exclusive North American sales representative of the Product sold as a stripper to remove coatings such as paint, lacquers, and varnish. The terms of the agreement included that Brooks would be paid exclusively by commission earning 12% of the first million dollars in sales, 10% of the next half million, and 8% thereafter. As the exclusive sales representative, Brooks was to receive his commissions on all North American wholesale sales whether Brooks initiated it or not, and Brooks was to receive such for as long as Ecolab had the right to distribute the Product whether or not sold through any other sales representative. Ecolab granted Brooks these rights well beyond what a sales representative would normally have in recognition of Brook's contribution to the development of the product.

16.   Brooks then chose the name "Brass Wash" and marketed it under that name.

17.   In 1999 while Brooks was working with Motsenbocker Developments and Ecolab to promote the Product, Motsenbocker Developments modified the composition of the Product Brooks was selling. After consultation with Brooks, Motsenbocker Developments

*Complaint—Page 4*

returned to the original formula.

### Motsenbocker's Lift Off® Finish Coat

18.   In 1999 on behalf of Motsenbocker Developments Brooks worked with The Sherwin Williams Company at its Cleveland, Ohio and Olive Branch, Mississippi laboratories to develop a water-based clear coat to protect metal and wood and that could also be removed with the Product when it came time to refinish the part or panel without leaving a stain on metal.  At that time, all existing water-based coats could not be used to cover metal and wood without tarnishing it.  Brooks perfected a covering, Sherwin Williams produced it, and Motsenbocker Developments marketed it under the name "Motsenbocker's Lift Off® Finish Coat," (hereinafter "Finish Coat") with Brooks entering into an agreement with Motsenbocker Developments making Brooks the North American, exclusive sales representative of Finish Coat earning a commission of 10% on all sales, wholesale or retail.

19.   From on or about 1999 to 2005, Motsenbocker Developments sold approximately $20,000 worth of Finish Coat, with Brooks earning a commission of approximately $2,000.

20.   Despite demands, Motsenbocker Developments refuses to pay Brooks his commission.

### Motsenbocker Developments-Brooks Motsenbocker Lift Off® Agreement

21.   In 1999, Gregg Motsenbocker on behalf of Motsenbocker Developments traveled to Baltimore, Maryland and met with Brooks. He told Brooks that Motsenbocker Developments was ending its relationship with Ecolab and instructed Brooks to have no further

*Complaint—Page 5*

contact with Ecolab.

22.   When meeting with Brooks, Motsenbocker Developments
offered to engage Brooks as the sales representative for the Product
and Finish Coat, offering the same terms as Brooks' contract with
Ecolab except that Brooks' commission would be a flat 10% and Brooks
would earn a commission on retail as well as wholesale sales, and
except that Brooks was free to market the Product under whatever
name he and Motsenbocker Developments agreed to and to work with
Motsenbocker Developments to vary the formula if doing so would
improve it.

23.   Brooks accepted the offer, thus entering into an agreement
("the Agreement") with the understanding that Brooks would start
marketing the Product under the Agreement as soon as Ecolab was no
longer marketing the Product.

24.   Under the commissioned sales representative agreement, the
Agreement, Motsenbocker Developments and plaintiffs were to share
revenues from North American sales of the Product and in fact worked
very closely together to develop and promote the Product so that the
Agreement was a type of partnership agreement, with the purpose of
developing the Product into use as a refinishing stripper with
various formulations.

25.   In 2004, when Brooks noticed that Gregg Motsenbocker had
appeared to say that the Product with gel added was actually not
covered by the  Agreement with Brooks, Brooks asked Gregg
Motsenbocker and Skip Motsenbocker about this.  The Motsenbockers
replied that Brooks could trust them and assured Brooks that he

*Complaint—Page 6*

would receive his commissions and that the Motsenbockers would put something in writing.

26.   In August 2000, Brooks formed Brooks Industries, Inc.

27.   Brooks Industries is a janitorial service and seller of cleaning products.

28.   Brooks Industries paid Motsenbocker Developments for the samples Brooks distributed under the Agreement.

29.   In the alternative to the Agreement being with Brooks, Brooks and Brooks Industries allege that the parties agreed to transfer the Agreement to Brooks Industries.

### Promotional Trips and Development of the Product

30.   In 1999 under the Agreement, Brooks began marketing the Product and to experiment and further develop it and continued to do so until May 2005 when Motsenbocker Developments breached the Agreement by refusing to acknowledge its existence.

31.   After the Agreement was in place in or about 1999, Brooks further experimented with the Product, discovered it worked as a remover of paint from wood without damage to the part or panel, and began marketing it under the name "Coating Remover," with Motsenbocker Developments' knowledge and consent.

32.   In 2000, Brooks further promoted the Product and in 2001 began marketing it under the name "Lacquer Remover" in addition to the names "Coating Remover," with Motsenbocker Developments' knowledge and consent.

33.   In 2001 through 2004 Brooks further experimented with the Product and made some of the Product into gel form and distributed

*Complaint—Page 7*

samples of the Product in that form.

34.    Starting in 2000, Brooks promoted the Product by traveling at his own expense to promote the Product and continued to do so until Motsenbocker Developments breached the Agreement in 2005.

35.    In 2000, Brooks traveled to Des Moines, Iowa to the offices and wood shop of Better Homes and Gardens Wood Magazine to promote the Product.   The Wood Magazine tested the product in their testing wood shop.

36.    This trip resulted in the review of the Product labeled "Lacquer Remover" in the Wood Magazine and the product receiving a five-star rating, the highest rating possible.

37.    In 2002, Brooks traveled to Chicago to demonstrate the Product at a national hardware show, demonstrating the Product all day for two days.

38.    In 2002, Brooks traveled to Washington, D.C. to demonstrate the Product at the True Value Ace Hardware Show.   In addition, in 2002, Brooks traveled to approximately ten other places to promote the Product.

39.    In 2003 Brooks traveled to the General Services Administration in Washington, D.C. to promote the Product.

40.    Stuart Dean is a company in the business of refurbishing buildings.   In 2003, Brooks traveled to Stuart Dean's offices throughout the United States and trained its employees on how to refinish with the Product.

41.    In 2000, 2001, 2003, 2004, and 2005, Brooks traveled to the Metal Polishers Union Meany training center in White Oak,

Maryland and convinced the management to train union members in the use of the Product.

42.  In 2005, Brooks traveled to New Orleans and promoted the product at the Product at a trade show.  This was an instance where Motsenbocker Developments paid Brooks or Brooks Industries' expenses for promoting the Product.

43.  In 2003, Brooks traveled to San Diego and Los Angeles, California to promote the Product and to help Motsenbocker Developments' staff on company matters.

44.  In 2003, Brooks traveled to Houston, Texas to strip brass at a hotel using the Product and to promote the Product.

45.  In October 2004, Brooks traveled to San Diego to work temporarily for Motsenbocker Developments as a salesman for other products; while there he promoted the Product under the Agreement as well.  This employment as a salesman for other products ended in May 2005.

46.  In or about November 2004, Brooks traveled to the Ace Hardware Trade Show in Florida to promote the Product.  This was an instance where Motsenbocker Developments paid Brooks or Brooks Industries' expenses for promoting the Product.

47.  In April 2005, Brooks traveled to a hardware trade show in Chicago to promote the Product.  This was an instance where Motsenbocker Developments paid Brooks or Brooks Industries' expenses for promoting the Product.

48.  In 2005, Brooks traveled to the Frazze Paint Corporation in California to promote the Product.  This was an instance where

*Complaint—Page 9*

Motsenbocker Developments paid Brooks or Brooks Industries' expenses for promoting the Product.

49.   In 2005, Brooks traveled to a trade show in Law Vegas to promote the Product at International Hardware trade show.   This was an instance where Motsenbocker Developments paid Brooks or Brooks Industries' expenses for promoting the Product.

### Creation of Promotional Materials

50.   From 1999 to 2005, Brooks wrote the following in order to promote the Product:   a 1999 book in entitled "The Proper Techniques and Procedure for Applying and Using Motsenbockers Liftoff Lacquer Remover and Motsenbockers Liftoff Finish Coat for the Purpose of and How to Refinish Wood & Metal" (modified in 2001); a 2003 product booklet "Product Information Booklet" for the Lacquer Remover and Finish Coat; in 2003 a booklet entitled "Safe & Simple Step-by-Step Instructions on How to Restore and Clean Mirror & Satin Finish Brass"; various sales fliers and product definitions.

51.   The three defendants reviewed all these writings.

52.   Motsenbocker Developments through Gregg Motsenbocker and Skip Motsenbocker and others distributed these writings to those interested in the Product.

53.   From 1999 to 2005, Brooks made eight videos demonstrating how to use the Product for various purposes.

54.   The videos were entitled:   "Oxidize Brass in 40 Minutes," "Satin Finish Brass in 30 Minutes," Refinish Brass/Wood Basic Steps," " "Finish Coat & Lacquer Remover," "How to Restore a Satin Finish Elevator," "A Mirror Finish 2003," "How to Restore a Mirror

*Complaint—Page 10*

Finish Elevator," and "Metal & Wood."

55.  The three defendants viewed all of the videos and were aware of their contents.

56.  Motsenbocker Developments through Gregg Motsenbocker and Skip Motsenbocker and others distributed the videos to those interested in the Product.

### Breach of Contract

57.  In 2002, Brooks contacted the Home Depot buying office and learned that since Motsenbocker Developments already had a vendor number with the company that Brooks was obliged to contact the particular company buyer handling that number.  When Brooks asked Gregg Motsenbocker about this, Gregg Motsenbocker responded "to be patient that it was God's time" or words to that effect.

58.  Until early 2005, little of the Product had been sold, approximately $30,000 worth.

59.  Plaintiffs allege upon information and belief that around December 2004 Motsenbocker Developments had entered into negotiations with Home Depot for Home Depot to carry the Product and that Motsenbocker Developments used some if not all of the promotional materials that plaintiffs had developed to sell the Product to Home Depot.

60.  Plaintiffs allege upon information and belief that Motsenbocker Developments is selling large quantities of the Product throughout North America through Home Depot so that large commissions are due and owing to Brooks or Brooks Industries.

61.  In or about May 2005, Motsenbocker Developments through

*Complaint—Page 11*

Gregg Motsenbocker told Brooks that Motsenbocker Developments would be paying Brooks no commission on the Product.

62.   Since May 2005, despite demands from Brooks, Motsenbocker Developments has refused to pay Brooks a commission on sales of the Product.

63.   Upon information and belief, Brooks and Brooks Industries alleges that these commissions are in excess of $1,000,000.

### Count I:  Breach of Contract (By Brooks)

64.   Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 63 as if set forth at length herein.

65.   Motsenbocker Developments breached the Agreement with Brooks by refusing to pay Brooks commissions on all sales of the product.

66.   By reason of the foregoing, Motsenbocker Developments is liable to Brooks for compensatory damages and Brooks demands judgment against Motsenbocker on this Count for the sum of $1,000,000, the specific amount to be proved at trial.

### Count II:  Breach of Contract (By Brooks Industries)

67.   Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 66 as if set forth at length herein.

68.   In the alternative to Count I, Motsenbocker Developments breached the commission agreement with Brooks Industries by refusing to pay Brooks Industries commissions on all sales of the Product.

69.   By reason of the foregoing, Motsenbocker Developments is

*Complaint—Page 12*

liable to Brooks Industries for compensatory damages and Brooks Industries demands judgment against Motsenbocker Developments on this Count for the sum of $1,000,000, the specific amount to be proved at trial.

### Count III:    Quantum Meruit

70.    Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 69 as if set forth at length herein.

71.    Plaintiffs rendered valuable services for Motsenbocker Developments with the intention of receiving from Motsenbocker Developments a fee for services rendered.    Motsenbocker Developments accepted these services, received the benefit of such services, and knew that plaintiffs expected to be paid for such services.

72.    All services rendered by plaintiffs to Motsenbocker Developments were rendered under such circumstances that Motsenbocker Developments knew plaintiffs expected to be paid.    On many occasions Gregg Motsenbocker and Skip Motsenbocker even told Brooks that Brooks would become wealthy from such payment.

73.    By reason of the foregoing, Motsenbocker Developments is liable to plaintiffs for compensatory damages and plaintiffs demands judgment against Motsenbocker Developments on this Count for the sum of $1,000,000, the specific amount to be proved at trial.

### Count IV:    Unjust Enrichment

74.    Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 73 as if set forth at length herein.

75.  Plaintiffs made substantial improvements to the Product by performing valuable services to Motsenbocker Developments.

76.  The improvements made by plaintiffs to the Product conferred a benefit upon the defendants in the amount of 1,000,000, the specific amount to be proved at trial.

77.  Motsenbocker Developments was aware of, and had knowledge of the benefits conferred upon the Product by plaintiffs.

78.  Motsenbocker Developments acceptance and retention of the improvements made to the Product make it inequitable for Motsenbocker Developments to retain these benefits without payments of their value.

79.  The unpaid for improvements had a value of $1,000,000, the specific amount to be proved at trial.

80.  By reason of the foregoing, Motsenbocker Developments is liable to plaintiffs for compensatory damages and plaintiffs demands judgment against Motsenbocker Developments on this Count for the sum of $1,000,000, the specific amount to be proved at trial.

### Count V:  Promissory Estoppel/Detrimental Reliance

81.  Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 80 as if set forth at length herein.

82.  All three defendants promised plaintiffs that Motsenbocker Developments would compensate plaintiffs if plaintiffs made the improvements.

83.  In reliance upon this promise, plaintiffs made the improvements to the Product by developing it and by promoting it.

*Complaint—Page 14*

84.  Plaintiffs have made a claim upon Motsenbocker Developments to pay them for the improvements, but Motsenbocker Developments has wrongfully denied the claim.

85.  Injustice will result if Motsenbocker Developments does not pay plaintiffs.

86.  By reason of the foregoing, Motsenbocker Developments is liable to plaintiffs for compensatory damages and plaintiffs demands judgment against Motsenbocker Developments on this Count for the sum of $1,000,000, the specific amount to be proved at trial.

### Count VI:  Tort Arising from Breach of Contract

87.  Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 86 as if set forth at length herein.

88.  In or about May 2005 despite the fact that all three defendants had numerous times promised Brooks that the Agreement would be honored, and despite all the work plaintiffs had put into the Product, the three defendants refused to honor the Agreement.

89.  The course of conduct of the defendants as described above was deliberately undertaken and was committed in wanton, willful, and reckless disregard of plaintiffs' rights and was attended by malice and vindictiveness on the part of said defendants.

90.  By reason of the foregoing, defendants are liable to plaintiffs for damages, both compensatory and punitive, and plaintiffs demand judgment against defendants on this Count for the sum of $1,000,000 in compensatory damages, the specific amount to be proved at trial, and for the sum of $1,000,000 in punitive damages.

*Complaint—Page 15*

### Count VII:  Misrepresentation

91.   Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 90 as if set forth at length herein.

92.   From in or about 1999 to in or about May 2005, all three defendants represented to plaintiffs that Motsenbocker Developments intended to pay Brooks or Brooks Industries a commission under the Agreement on all North American sales of the Product.

93.   These representations continued through the defendants' contact with Home Depot in December 2004 into 2005 described above.

94.   The foregoing representations made by the defendants were false and fraudulent and were made by defendants as part of a scheme or artifice to defraud.

95.   The representations were known by the defendants to be false when made and were made with intent to deceive plaintiffs and with intent that plaintiffs rely upon them and to induce plaintiffs to promote and develop the Product in North America.

96.   The representations were material and, at the time they were made, plaintiffs believed them and did not know the truth and in reliance thereon plaintiffs were induced to promote and develop the Product to their detriment.

97.   The course of conduct of the defendants as described above was deliberately undertaken and was committed in wanton, willful, and reckless disregard of plaintiffs' rights and was attended by malice and vindictiveness on the part of said defendants.

98.   By reason of the foregoing, defendants are liable to

*Complaint—Page 16*

plaintiffs for damages, both compensatory and punitive, and plaintiffs demand judgment against defendants on this Count for the sum of $1,000,000 in compensatory damages, the specific amount to be proved at trial, and of $1,000,000 in punitive damages.

### Count VIII:  Negligent Misrepresentation

99.  Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 98 as if set forth at length herein.

100. At all times material hereto, defendants knew or should have known that plaintiffs were relying upon the Agreement in developing and improving the Product.

101. At all times material hereto, defendants knew or should have known that plaintiffs had no way of knowing that defendants had no intention of abiding by the Agreement.

102. At all times material hereto, defendants failed to exercise reasonable care in that they did not advise plaintiffs of their intention not to pay plaintiffs for the services provided.

103. Said omissions were of material facts to the transaction upon which plaintiffs reasonably relied.

104. Defendants knew or should have known that their negligence would subject the plaintiffs to an unreasonable financial loss.

105. For the reasons set out above, the negligence of defendants caused damage to the plaintiffs.

106. The course of conduct of the defendants as described above was deliberately undertaken and was committed in wanton, willful, and reckless disregard of plaintiffs' rights and was attended by

*Complaint—Page 17*

malice and vindictiveness on the part of said defendants.

107. By reason of the foregoing, defendants are liable to plaintiffs for damages, both compensatory and punitive, and plaintiffs demand judgment against defendants on this Count for the sum of $1,000,000 in compensatory damages, the specific amount to be proved at trial, and for the sum of $1,000,000 in punitive damages.

### Count IX:  Breach of Fiduciary Duties

108. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 107 as if set forth at length herein.

109. As discussed above, the Agreement was a type of partnership agreement.

110. As detailed above, while working for Motsenbocker Developments as a commissioned sales representative, plaintiffs worked with the defendants very closely in developing and promoting the Product for use as a stripper of coverings such as paint, varnish, lacquer and the like from wood and metal parts and panels as part of the process of refinishing.

111. Plaintiffs allege upon information and belief that as a party to the Agreement in or about 2004 and 2005, the defendants held discussions with potential purchasers of the Product such as Home Depot without informing plaintiffs.

112. As discussed above, plaintiffs allege upon information and belief that Motsenbocker Developments has sold substantial quantities of the Product to Home Depot and other purchasers without informing or paying plaintiffs.

*Complaint—Page 18*

113. As discussed above, defendants suddenly told plaintiffs that defendants were not honoring the Agreement in or about May 2005.

114. As plaintiffs' partner under the Agreement, defendants breached their fiduciary duties to plaintiffs by covertly planning to sell the Product and selling it without informing or paying plaintiffs.

115. By virtue of defendants' breach of fiduciary duties owed to plaintiffs, plaintiffs suffered damages.

116. The course of conduct of the defendants as described above was deliberately undertaken and was committed in wanton, willful, and reckless disregard of plaintiffs' rights and was attended by malice and vindictiveness on the part of said defendants.

117. By reason of the foregoing, defendants are liable to plaintiffs for damages, both compensatory and punitive, and plaintiffs demand judgment against defendants on this Count for the sum of $1,000,000 in compensatory damages, the specific amount to be proved at trial, and for the sum of $1,000,000 in punitive damages.

### Count X: Accounting

118. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 117 as if set forth at length herein.

119. Since in or about May 2005 when defendants told plaintiffs that defendants would not recognize the Agreement, plaintiffs have repeatedly requested of defendants payment under the Agreement and have requested both informally and formally an accounting or showing

*Complaint—Page 19*

by Motsenbocker Developments of the sums actually and honestly due plaintiffs from Motsenbocker Developments. Motsenbocker Developments has consistently and adamantly refused without reason or justification to make any accounting or showing in connection with the foregoing sums, transactions, and amounts which constitute a fraudulent attempt to defraud plaintiffs of sums rightfully due to plaintiffs, held by Motsenbocker Developments in trust for plaintiffs, and which sums are well known by Motsenbocker Developments to be due plaintiffs.

120. Plaintiffs are fearful that, unless enjoined by an order of this Court, Motsenbocker Developments may attempt to change, alter or destroy business and other records of the Agreement and also plaintiffs' own financial records insofar as they may apply to the subject matter of this lawsuit.

121. By reason of the foregoing, plaintiffs ask this Court to order Motsenbocker Developments to preserve the business records and to provide an accounting of monies owing under the Agreement.

### Count XI: Declaratory Relief

122. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 121 as if set forth at length herein.

123. A dispute has arisen between Motsenbocker Developments and plaintiffs as to the existence and terms of the Agreement.

124. Motsenbocker Developments contends that the Agreement does not exist, that plaintiffs developed and promoted the Product with no expectation of compensation, that plaintiffs developed and

*Complaint—Page 20*

promoted a different product than the one Motsenbocker Developments is now selling throughout the United States, that Motsenbocker Developments already compensated plaintiffs for developing and promoting the Product, that Motsenbocker Developments owes plaintiffs nothing.

125. Plaintiffs contend that the Agreement exists, that Motsenbocker Developments is selling large quantities of the Product, and that Motsenbocker Developments owes substantial sums of money to plaintiffs under the Agreement.

126. An actual existing and bona fide controversy exists between the plaintiffs and Motsenbocker Developments as to their jural and legal relations in respect to the existence and terms of the Agreement and the rights of the parties under this Agreement that can be determined only by a declaratory judgment.

### Count XII:  Breach of Contract

127. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 126 as if set forth at length herein.

128. Motsenbocker Developments breached the commission agreement with Brooks or in the alternative with Brooks Industries by refusing to pay Brooks commissions on all sales of the Finish Coat.

129. By reason of the foregoing, Motsenbocker Developments is liable to plaintiffs for compensatory damages and plaintiffs demand judgment against Motsenbocker on this Count for the sum of $2,000, the specific amount to be proved at trial.

*Complaint—Page 21*

**WHEREFORE**, Plaintiffs request a judgment against defendants for **$2,002,000**, the specific amount to be proved at trial, with interest and costs, and for an accounting and for declaratory relief on the following counts, and such other relief as the Court deems appropriate:

A.   Under Counts I, II, III, IV, V, VI, VII, VIII, IX ,and X, against Motsenbocker Developments, $1,000,000 in compensatory damages;

B.   Under Counts VI, VII, VIII, and IX, against Motsenbocker Developments, $1,000,000 in punitive damages;

C.   Under Counts VI, VII, VIII, and IX, against Gregg Motsenbocker and Skip Motsenbocker, $1,000,000 in compensatory damages;

D.   Under Counts VI, VII, VIII, and IX, against Gregg Motsenbocker and Skip Motsenbocker, $1,000,000 in punitive damages;

E.   Under Count X (Accounting), plaintiffs demand that:

1.   Motsenbocker Developments be ordered by a decree of this Court to fully and completely account for all sums due plaintiffs as commissions on the sales of the Product;

2.   Plaintiffs have judgment against Motsenbocker Developments in the sum found to be due to plaintiffs on such accounting, with interest together with the costs and disbursements of this action;

F.   Under Count XI (Declaratory Relief), against Motsenbocker Developments for declaratory relief that the  Agreement exists, the

*Complaint—Page 22*

terms of the Agreement and the monies Motsenbocker Developments is to pay plaintiffs under the terms of this agreement;

   G. Under Count XII, against Motsenbocker Developments $2,000 in compensatory damages;

   I. That the monetary judgment against the defendants be joint and several.

Respectfully submitted,

Dated: _24 April 2006_   Signed: _____

Michael J. Trevelline, Maryland Fed. Bar No. 14733
Address:   1823 Jefferson Place, NW
Washington, DC 20036-2504
Telephone:   (202) 737-1139/Fax: (202) 775-1118
Email:   mjt@mjtlegal.com

**Attorney for Plaintiffs George Brooks and Brooks Industries, Inc.**

## Bar Membership Certification

I am a member in good standing of the Maryland bar.

Dated: _24 April 2006_   Signed: _____

Michael J. Trevelline, Maryland Fed. Bar No. 14733

**Accompanying Papers:**
1. Lc. R. 103.3 Disclosure of Corporate Interests (duplicate originals)
2. Demand for Jury Trial

*Complaint—Page 23*

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**
George Brooks & Brooks Industries, Inc.

**DEFENDANTS**
DISTRICT OF MARYLAND
Motsenbocker Advanced Developments, Inc.
Gregg A. Motsenbocker, Skip A. Motsenbocker
7006 APR 24 P 12: 30
County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
AT LAND INVOLVED.

**(b)** County of Residence of First Listed Plaintiff    Prince Georges
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Michael J. Trevelline, Attorney-at-Law, 1823 Jefferson Place, NW
Washington, DC 20036    Telephone: (202) 737-1130

Attorneys (If Known)

AW 06 CV 1024

| **II. BASIS OF JURISDICTION** (Place an "X" in One Box Only) | **III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only) |
|---|---|

| | | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|
| U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| | | Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**V. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Diversity 28 U.S.C. Sec. 1332
Brief description of cause:
Breach of Contract to pay sales representative commission

| **VII. REQUESTED IN COMPLAINT:** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 2,002,000.00 | CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE    24 April 2006    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **George A. Brooks et al** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Civil Action No. |
| ) | |
| **Motsenbocker Advanced Developments,** ) | |
| **Inc. et al** ) | |
| Defendants. ) | |
| ) | |

### Disclosure of Corporate Interest

*Check all that apply:*

[  **X**  ] I certify, as party/counsel in this case that **Brooks Industries, Inc.**
(name of party)
is not an affiliate or parent of any corporation, and no corporation, unincorporated association,

partnership or other business entity, not a party to the case, has a financial interest in the outcome of

this litigation as defined in Local Rule 103.3 (D. Md.)

[   ]   The following corporate affiliations exist with _____:

(name of party)

_____.

(names of affiliates)

[   ]   The following corporations, unincorporated associations, partnerships or other business

entities which are not parties may have a financial interest in the outcome of this litigation:

(names of entities with possible financial interests)

Respectfully submitted,

Dated: 24 April 2006     Signed: _____

Address:     Michael F. Trevelline, Maryland Fed. Bar No. 14733
1823 Jefferson Place, NW
Washington, DC 20036-2504

Telephone:     (202) 737-1139/Fax:  (202) 775-1118

**Attorney for Plaintiffs George Brooks and Brooks Industries, Inc.**

AO 440 (Rev. 10/93) [MD Rev. 02/2001] Summons in a Civil Action

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

George   Brooks   et   al

V.

**SUMMONS IN A CIVIL CASE**

CASE    AW 08 CV 1024

Gregg   A.   Motsenbocker

TO: (Name and address of Defendant)

Gregg   A.   Motsenbocker
874   Felspar     Street
San Diego,   CA   92109

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Michael   J.   Trevelline
Attorney-at-Law
1823 Jefferson     Place,   NW
Washington,   DC  20036-2504
Telephone:   (202)   737-1139
Fax:   (202)   775-1119
Email:   mjt@mjtlegal.com

an answer to the complaint which is herewith served upon you, within _____20._____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Felicia C. Cannon
CLERK

(By) DEPUTY CLERK

DATE

• AO 440  (Rev. 10/93) [MD Rev. 02/2001] Summons in a Civil Action

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

George  Brooks  et  al

V.

**SUMMONS IN A CIVIL CASE**

Skip  A.  Motsenbocker

CASE    AW 06 CV 1 0 2 4

TO: (Name and address of Defendant)

Skip  A.  Motsenbocker
7925  Hillandale  Drive
San Diego,  CA  92120

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Michael  J.  Trevelline
Attorney-at-Law
1823 Jefferson  Place,  NW
Washington,  DC  20036-2504
Telephone:  (202)  737-1139
Fax:  (202)  775-1119
Email:  mjt@mjtlegal.com

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

Felicia C. Cannon
CLERK

(By) DEPUTY CLERK

DATE

AO 440 (Rev. 10/93) [MD Rev. 02/2001] Summons in a Civil Action

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

George   Brooks   et   al

V.

**SUMMONS IN A CIVIL CASE**

Motsenbocker    Advanced
Developments,    Inc.

CASE

TO: (Name and address of Defendant)

Motsenbocker    Advanced    Developments,    Inc.
4910 Morena  Boulevard,    Suite   806
San  Diego,   CA  92117

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Michael   J.   Trevelline
Attorney-at-Law
1823 Jefferson    Place,   NW
Washington,   DC  20036-2504
Telephone:   (202)   737-1139
Fax:   (202)   775-1119
Email:    mjt@mjtlegal.com

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Felicia C. Cannon

CLERK

(By) DEPUTY CLERK

DATE

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

GEORGE A. BROOKS and BROOKS    )    Case No. 8:06-cv-01024-AW
INSUDSTRIES, INC.    )
    ).    **THE PARTIES JOINT MOTION PER**
    )    **STIPULATION TO EXTEND TIME**
    )    **TO ANSWER OR OTHERWISE**
    Plaintiffs,    )    **RESPOND TO COMPLAINT**
vs.    )
    )    Judge Alexander Williams
MOTSENBOCKER ADVANCED    )
DEVELOPMENTS, INC., and GREGG A.    )
MOTSENBOCKER, and SKIP A.    )
MOTSENBOCKER,    )
    )
    )
    )
    Defendants.    )
    )

The Plaintiffs, GEORGE A. BROOKS, BROOKS INSUDSTRIES, INC. and Defendants,

MOTSENBOCKER ADVANCED DEVELOPMENTS, INC., GREGG A. MOTSENBOCKER,

and SKIP A. MOTSENBOCKER, by an through the undersigned counsel, hereby move the court

for an order per the parties' stipulation that the Defendants, MOTSENBOCKER ADVANCED

DEVELOPMENTS, INC., GREGG A. MOTSENBOCKER, and SKIP A. MOTSENBOCKER,

may have until June 20, 2006, in which to answer or otherwise respond to the plaintiffs'

1

complaint pursuant to F.R.C.P. Rule 12.

Dated: June 2, 2006                      **MICHAEL J. TREVELLINE**
                                         Maryland Fed. Bar No. 14733


                                   By:
                                         Michael J. Trevelline
                                         Attorneys for Plaintiffs
                                         1823 Jefferson Place, NW
                                         Washington, D.C. 20036-2504
                                         Tel: 202-737-1139
                                         Fax:202-775-1118


Dated: June 2, 2006                      **BOIES, SCHILLER & FLEXNER LLP**


                                   By            BAR #27814
                                         Aaron J. Snow
                                         Attorneys for Defendants
                                         5300 Wisconsin Ave., N.W., Ste. 800
                                         Washington, D.C. 20015
                                         Tel: 202-237-2727
                                         Fax: 202-237-6131


Dated: June 2, 2006                      **WEBB & CAREY**



                                   By:  _____
                                         Patrick D. Webb
                                                Attorneys for Defendants
                                                401 B Street Ste 306
                                                San Diego CA 92101
                                                Tel: 619-236-1650
                                                Fax:619-236-1283


                                         2

AO 440 (Rev. 10/93) [MD Rev. 02/2001] Summons in a Civil Action

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

George Brooks et al

V.

**SUMMONS IN A CIVIL CASE**

Motsenbocker Advanced
Developments, Inc.

CASE

CASE 06cv1024

TO: (Name and address of Defendant)

Motsenbocker Advanced Developments, Inc.
4910 Morena Boulevard, Suite 806
San Diego, CA 92117

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Michael J. Trevelline
Attorney-at-Law
1823 Jefferson Place, NW
Washington, DC 20036-2504
Telephone: (202) 737-1139
Fax: (202) 775-1119
Email: mjt@mjtlegal.com

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

APR 2 4 2006

Felicia C. Cannon

CLERK

DATE

(By) DEPUTY CLERK

AO 440  (Rev. 10/93) [MD Rev. 02/2001] Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE 5-16-06  @  11:00AM |
|---|---|
| NAME OF SERVER *(PRINT)* G. ROBERT SMITH | TITLE Private Process Server |

*Check one box below to indicate appropriate method of service*

**✶** Served personally upon the defendant. Place where     4901 Morena Boulevard, Suite 806
San Diego, California 92117

G  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were _____

G  Returned _____

_____

G  Other (specify): _____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed     5-19-06
Date

*Signature of Server*

CAPITOL PROCESS SERVICE
1827 18TH STREET, N.W.
WASHINGTON, D.C. 20009
(202) 667-0050

*Address of Server*

\* Disclosure of Corporate Interest, Jury Demand and Civil Cover Sheet

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440  (Rev. 10/93) [MD Rev. 02/2001] Summons in a Civil Action

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

George  Brooks    et  al

V.

**SUMMONS IN A CIVIL CASE** 

Gregg  A.  Motsenbocker

CASE    AW 0 6 CV 1 0 24

TO: (Name and address of Defendant)

Gregg  A.  Motsenbocker
874 Felspar    Street
San Diego,   CA   92109

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Michael    J.   Trevelline
Attorney-at-Law
1823 Jefferson    Place,   NW
Washington,   DC  20036-2504
Telephone:   (202)   737-1139
Fax:   (202)   775-1119
Email:   mjt@mjtlegal.com

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Felicia C. Cannon
CLERK

APP 2 4 2006
DATE

(By) DEPUTY CLERK

AO 440 (Rev. 10/93) [MD Rev. 02/2001] Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE 5-16-06 @ 11:00AM |
|---|---|
| NAME OF SERVER *(PRINT)* G. ROBERT SMITH | TITLE Private Process Server |

*Check one box below to indicate appropriate method of service*

**X** Served personally upon the defendant. Place where    4901 Morena Boulevard, Suite 806
San Diego, California 92117

G  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were _____

G  Returned _____

_____

G  Other (specify): _____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed    5-19-06
               Date

*Signature of Server*

**CAPITOL PROCESS SERVICES**
**1827 18TH STREET, N.W.**
**WASHINGTON, D.C. 20009**

*Address of Server*    (202) 667-0050

* Letter Dated April 24, 2006, Disclosure of Corporate Interest, Jury Demand and Civil Cover Sheet

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

• AO 440 (Rev. 10/93) [MD Rev. 02/2001] Summons in a Civil Action

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

George  Brooks  et al

V.

**SUMMONS IN A CIVIL CASE**

Skip  A.  Motsenbocker

CASE    **AW 06 CV 1 0 2 4**

TO: (Name and address of Defendant)

Skip  A.  Motsenbocker
7925  Hillandale    Drive
San  Diego,    CA  92120

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Michael  J.  Trevelline
Attorney-at-Law
1823 Jefferson    Place,    NW
Washington,    DC  20036-2504
Telephone:    (202)  737-1139
Fax:  (202)  775-1119
Email:    mjt@mjtlegal.com

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

APR 2 4 2006

Felicia C. Cannon
CLERK

(By) DEPUTY CLERK

DATE

AO 440 (Rev. 10/93) [MD Rev. 02/2001] Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE<br>5-16-06 @ 11:00AM |
|---|---|
| NAME OF SERVER *(PRINT)*<br>G. ROBERT SMITH | TITLE<br>Private Process Server |

*Check one box below to indicate appropriate method of service*

   Served personally upon the defendant. Place where _____

**G**  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were _____

**G**  Returned  _____

X**G**  Other (specify):  By serving Gregg A. Motsenbocker, authorized to accept. Service was completed at 4901 Morena Boulevard, Suite 806, San Diego, California 92117.

### STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

### DECLARATION OF SERVER

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed  5-19-06        _____
            Date            *Signature of Server*

CAPITOL PROCESS SERVICES
1827 18TH STREET, N.W.
WASHINGTON, D.C. 20009
*Address of Server*   (202) 667-0050

\* Disclosure of Corporate Interest, Jury Demand and Civil Cover Sheet

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE FEDERAL DISTRICT OF MARYLAND

GEORGE A. BROOKS, et al.,⟩     Case No. 8:06-cv-01024-AW

|  |  |
|---|---|
| GEORGE A. BROOKS, et al.,      ) | Case No. 8:06-cv-01024-AW |
|        Plaintiffs,      ) | **DEFENDANTS' MOTION TO DISMISS FOR** |
| vs.      ) | **LACK OF PERSONAL JURISDICTION, OR IN** |
|      ) | **THE ALTERNATIVE, TO TRANSFER THE** |
| MOTSENBOCKER ADVANCED      ) | **CASE AND STAY DISCOVERY** |
| DEVELOPMENTS, INC., et al.,      ) | |
|      ) | Judge Alexander Williams |
|        Defendants.      ) | Greenbelt Division |
|      ) | |
|      ) | |

For the reasons set forth in the accompanying Memorandum in support of this motion,

Defendants Motsenbocker Advanced Developments, Inc., Gregg A. Motsenbocker, and Skip A.

Motsenbocker hereby move this court for an order dismissing the action for lack of both personal and

subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(1); or, in the alternative, for an

order transferring this case to the Federal District Court for the Southern District of California, pursuant

to 28 U.S.C. 1404, and staying discovery and disclosures pursuant to Fed. R. Civ. P. 26 until this motion

is finally determined.

Dated: June 20, 2006

By: _____

Aaron J. Snow, Bar No. 27814
Attorneys for Defendants
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave., N.W., Ste. 800

Washington, D.C. 20015
Tel: 202-237-2727
Fax: 202-237-6131
asnow@bsfllp.com

Patrick D. Webb
Attorneys for Defendants
Webb & Carey
401 B Street, Ste. 306
San Diego, CA 92101
Tel: 619-236-1650
Fax: 619-236-1283
pwebb@webbcarey.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

GEORGE A. BROOKS, et al.,      )    Case No. 8:06-cv-01024-AW
                           )
           Plaintiffs,     )    **MEMORANDUM IN SUPPORT OF**
vs.                       )    **DEFENDANTS' MOTION TO DISMISS**
                           )    **FOR LACK OF PERSONAL**
MOTSENBOCKER ADVANCED    )    **JURISDICTION, OR IN THE**
DEVELOPMENTS, INC., et al.,    )    **ALTERNATIVE, TO TRANSFER THE**
                           )    **CASE AND STAY DISCOVERY**
          Defendants.    )
                           )    Judge Alexander Williams
                           )    Greenbelt Division

For the reasons set forth below, Defendants Motsenbocker Advanced Developments, Inc., Gregg A. Motsenbocker, and Skip A. Motsenbocker (collectively "Defendants") move this court for an order dismissing the action for lack of both personal and subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(1); or, in the alternative, for an order transferring this case to the Federal District Court for the Southern District of California, pursuant to 28 U.S.C. 1404, and staying discovery and disclosures pursuant to Fed. R. Civ. P. 26 until this motion is finally determined.

## I.    INTRODUCTION.

Plaintiffs cannot meet their burden by a preponderance of the evidence to prove grounds for the court's personal jurisdiction over the claims raised in their complaint. Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993).

Defendants have no physical presence in Maryland. Defendants have no offices, no telephone listing, no employees, and no agents or sales representatives in Maryland. Defendants' sole contact with Maryland is a *de minimus* portion of their nationwide product sales, sold through a distribution network, which includes The Home Depot.

For this reason, Plaintiffs' complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b), or, in the alternative, this action should be transferred to the Federal District Court for the Southern District of California, where a predominant number of the facts arise and where the witnesses and documents concerning this dispute are located.

## II.    PLAINTIFFS CANNOT MEET THEIR BURDEN OF PROOF AS TO THE COURT'S PERSONAL JURISDICTION OVER THE DEFENDANTS.

Under Fed. R. Civ. P. 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant only in the manner provided by state law. ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997). Thus, for a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the state's long-arm statute must confer jurisdiction, and (2) the exercise of jurisdiction, if authorized, must be consistent with the Due Process requirements of the Fourteenth Amendment. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003); Christian Sci. Bd. of Dir. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).

With regard to the first requirement, the court must accept as binding the interpretation of Maryland's long-arm statute rendered by the Maryland Court of Appeals. Carefirst, 334 F. 3d at 396 (citing Mylan Labs, 2 F.3d at 61). Maryland's state courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution. See Mohamed v. Michael, 279 Md. 653, 370 A.2d 551, 553 (1977).

Since Maryland's long-arm statute expands the exercise of personal jurisdiction to the limits allowed by the Due Process Clause, the two-step analysis merges in this case and the question is simply whether the exercise of personal jurisdiction would be consistent with due process. See Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir.1993); Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135 (4th Cir. 1996); Yangming Marine Transp. Co. v. Revlon Prods. U.S.A, Inc., 311 Md. 496, 536 A.2d 633, 636 (1988). Due process requires only that a defendant have certain "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). For minimum contacts to exist, there must "be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985).

In examining whether the exercise of jurisdiction is reasonable, a distinction is made between specific and general jurisdiction. When the cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). In determining whether specific jurisdiction exists, the court must consider: (1) the extent to which the defendant has purposefully availed itself of the privilege of

conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002), cert. denied, 537 U.S. 1105 (2003); see Helicopteros, 466 U.S. at 414 & n.8.

However, when the cause of action does not arise out of the defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. Helicopteros, 466 U.S. at 416; see also Goodyear Tire & Rubber Co. v. Ruby, 312 Md. 413, 422, 540 A.2d 482, 486 (1988). The Fourth Circuit has held that business activities focusing "generally on customers located throughout the United States and Canada without focusing on and targeting" the forum state cannot yield personal jurisdiction. Carefirst, 334 F.3d at 398 (citing ESAB Group, 126 F.3d at 625-26).

For example, "a person's action of placing information on the Internet" is not sufficient by itself to "subject[] that person to personal jurisdiction in each State in which the information is accessed." ALS Scan, 293 F.3d at 712; see also Young v. New Haven Advocate, 315 F.3d 256, 264 (4th Cir. 2002). Nor does a *de minimus* shipment amount to "continuous and systematic" contact with a forum state, particularly where the evidence fails to demonstrate that any of the defendants "even attempted to do business in Maryland at all." Base Metal Trading, Ltd. v. Ojsc Novokuznetsky Aluminum Factory, 283 F.3d 208, 214 (4th Cir. 2002).

Overall, courts "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief" when determining whether the exercise of jurisdiction is reasonable in any given case. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987). "The unique burdens placed upon one who must defend oneself in a foreign legal system should have

significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Id. at 114.

Here, there is no suggestion that Defendants engaged in continuous and systematic activities within Maryland, and the conduct allegedly giving rise to the suit did not occur in Maryland. Defendants have no agreement with either of Plaintiffs. Motsenbocker Decl. ¶ 8.

Most importantly, Defendants have no physical presence, let alone minimum contacts, in Maryland. Defendants have no offices, no telephone listing, no employees, and no agents or sales representatives in Maryland. Id. ¶¶ 1-6. Defendants' sole contact with Maryland is a *de minimus* portion of their nationwide product sales (less than ½ of 1%), sold through a distribution network, which includes The Home Depot. Id. ¶ 11.

For all of these reasons, Defendants "could not have 'reasonably anticipated being haled into [a Maryland] court.'" Young, 315 F.3d at 264 (quoting Calder v. Jones, 465 U.S. 783, 790 (1984)). In sum, given the *de minimus* contacts between Defendants and Maryland, to require them to defend their interests in this court would "offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316. Thus, the plaintiffs cannot meet their burden of proof to demonstrate by a preponderance of the evidence that this court has jurisdiction over this dispute.

## III.    PLAINTIFFS CANNOT MEET THEIR BURDEN OF PROOF THAT THIS COURT HAS PROPER DIVERSITY JURISDICTION.

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states . . . ." 28 U.S.C 1332(a).

By Plaintiffs' own admission, <u>see</u> Complaint ¶¶ 19 and 58, the matter in controversy here is only 10% of $50,000, or $5,000. Moreover, Defendants further substantiate that the entirety of the sales of the "Product and Finish Coat," as described by Plaintiffs, is less than $75,000. Motsenbocker Decl. ¶ 12. Thus, if either plaintiff were entitled, as they allege, to a 10% commission on sales (to which neither are entitled), the matter in controversy remains far less than $75,000.

For this independent reason, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) should be granted with prejudice, since the case does not qualify to be transferred.

## IV. SHOULD PLAINTIFFS MEET THEIR JURISDICTIONAL BURDEN OF PROOF, DEFENDANTS REMAIN ENTITLED TO HAVE THIS CASE TRANSFERRED TO THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

Lack of personal jurisdiction can be cured by transfer to a district in which personal jurisdiction could be exercised, with the transfer authority derived from either 28 U.S.C. 1404(a) or 1406(a). <u>SongByrd, Inc. v. Estate of Grossman</u>, 206 F3d 172, 179 & n.9 (2nd Cir. 2000).

Should the court find that plaintiff can somehow meet its burden of proof to demonstrate that the matter in controversy exceeds $75,000, the court has ample authority to transfer this case to the Federal District Court for the Southern District of California, where the evidence before the court demonstrates that the predominate facts arise, and the majority of witnesses and documents concerning the alleged dispute are located.

## V. CONCLUSION.

For all of these reasons, this court should dismiss this action for lack of both personal and subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(1); or, in the alternative, transfer this case to the Federal District Court for the Southern District of California, pursuant to 28 U.S.C. 1404, and

stay discovery and disclosures pursuant to Fed. R. Civ. P. 26 until this motion is finally determined.

Dated: June 20, 2006

By: _____

Aaron J. Snow, Bar No. 27814
Attorneys for Defendants
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave., N.W., Ste. 800
Washington, D.C. 20015
Tel: 202-237-2727
Fax: 202-237-6131
asnow@bsfllp.com

Patrick D. Webb
Attorneys for Defendants
Webb & Carey
401 B Street, Ste. 306
San Diego, CA 92101
Tel: 619-236-1650
Fax: 619-236-1283
pwebb@webbcarey.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GEORGE A. BROOKS, et al.,                     *
          Plaintiffs

      vs.                                 *          Case No. 8:06-cv-01024-AW

MOTSENBOCKER ADVANCED                         *
DEVELOPMENTS, INC., et al.,
          Defendants                 ***

## DISCLOSURE OF CORPORATE INTEREST

*Check all that apply:*

[ **X** ] I certify, as party/counsel in this case that    <u>Motsenbocker Advanced Developments, Inc.</u>
                                                              (name of party)
is not an affiliate or parent of any corporation, and no corporation, unincorporated association,

partnership or other business entity, not a party to the case, has a financial interest in the outcome of

this litigation as defined in Local Rule 103.3 (D. Md.)

[   ] The following corporate affiliations exist with _____:
                                                   (name of party)

_____
                              (names of affiliates)
[   ] The following corporations, unincorporated associations, partnerships or other business

entities which are not parties may have a financial interest in the outcome of this litigation:


                   (names of entities with possible financial interests)

*June 20, 2006*
_____
Date

                                      *Signature*

                                      *Printed Name*         *Bar Number*
                                      **Aaron J. Snow**       **27814**

                                      *Address*
                                      **Boies, Schiller & Flexner LLP**
                                      **5301 Wisconsin Ave., NW, Suite 800**

                                      *City/State/Zip*
                                      **Washington, DC  20015**

                                      *Phone No.*            *Fax No.*
                                      **202-237-2727**       **202-237-6131**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

GEORGE A. BROOKS, et al.,            )    Case No. 8:06-cv-01024-AW
                                     )
                 Plaintiffs,         )    **DECLARATION OF GREGG A.**
vs.                                  )    **MOTSENBOCKER IN SUPPORT OF**
                                     )    **DEFENDANTS' MOTION TO**
MOTSENBOCKER ADVANCED                )    **DISMISS FOR LACK OF PERSONAL**
DEVELOPMENTS, INC., et al.,          )    **JURISDICTION, OR IN THE**
                                     )    **ALTERNATIVE, TO TRANSFER THE**
                 Defendants.         )    **CASE AND STAY DISCOVERY**
                                     )
                                     )    Judge Alexander Williams
                                     )    Greenbelt Division

I, Gregg A. Motsenbocker declare:

I am President of Motsenbocker Advanced Developments, Inc., and I have personal knowledge

of the facts stated herein and if called as a witness would and could testify truthfully thereto.

1.      Motsenbocker Advanced Developments, Inc. is a California corporation, with its

principal place of business in San Diego, California. It is a privately held corporation, and all

shareholders are California citizens.

2.      Motsenbocker Advanced Developments, Inc. is a manufacturer and distributor of several

patented products for removing adherent deposits from certain surfaces.

3.      None of the defendants have any residences or offices in Maryland.

4.      None of the defendants have purposefully availed themselves of the privilege of

conducting activities within the state of Maryland.

5.      None of the defendants have any sales force in Maryland, nor have they ever been

authorized to do business in Maryland, transacted or solicited business in Maryland, or designated an agent to accept service of process in Maryland.

6.    None of the defendants owns or rents any property in Maryland, nor do any of them have assets in Maryland.

7.    George A. Brooks' first contact with any of the defendants was by a telephone call to the San Diego office of Motsenbocker in 1999. He indicated that he was a painter, and that he had an idea for the use of Motsenbocker's patented formulas for the removal of clear finishes from brass. As with many other similar trade contacts, Motsenbocker offered Mr. Brooks free product with which he was permitted to conduct and develop his own business. Since approximately 1999, as Mr. Brooks admits, significantly less than $50,000 of Mr. Brooks' selection of Motsenbocker's products were sold, all of which were delivered in states other than Maryland.

8.    Neither I, nor anyone employed by Motsenbocker, have ever met with Mr. Brooks in Maryland.

9.    None of the defendants ever entered into the Agreement, as described in plaintiffs' complaint with either plaintiff.

10.    In October 2004, Mr. Brooks traveled to San Diego and was employed by Motsenbocker as a warehouseman. In May 2005, Mr. Brooks returned to Maryland.

11.    Less than ½% of Motsenbocker's sales are made in Maryland.

12.    Motsenbocker has sold less than the jurisdictional amount of $75,000 of what the plaintiffs allege to be the "Product and Finish Coat," as Mr. Brooks admits in paragraphs 19 and 58 of the complaint. Since plaintiffs seek only a percentage of those sales, the matter in dispute does not exceed the $75,000 minimum amount in controversy required for this court to retain jurisdiction over

this case.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on June 19, 2006 at San Diego, California.

_____
Gregg A. Motsenbocker

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **George A. Brooks et al** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No.  06cv1024 AW |
| | ) | Judge Alexander Williams, Jr. |
| **Motsenbocker Advanced Developments,** | ) | |
| **Inc. et al** | ) | |
| Defendants. | ) | |
| | ) | |

### Memorandum of Points and Authorities

### in Opposition to

### Defendants' Motion to Dismiss

### for Lack of Personal Jurisdiction,

### or in the Alternative,

### to Transfer the Case and Stay Discovery

### I.    Summary

In essence, the question before the court is whether a self-
employed Maryland painter who served as a sales representative and
product developer can obtain personal jurisdiction over a
prosperous California company where the representative-developer
alleges that that the California company came into Maryland to
contract with him and where the California defendant is retaining
the great revenues flowing from the representative-developer's
work.  The facts most relevant to whether personal jurisdiction can
be had over Motsenbocker Developments include:  The corporation
chose to maintain a distributor-agent, Ecolab, in Maryland, chose
to market a line of its products in the United States exclusively

*Opposition to Motion—Page 1*

through this Maryland agent-distributor, Ecolab, chose to sign a written contract with a Maryland sales representative-product developer, Brooks, in Maryland, chose to have its agent Gregg Motsenbocker travel to Maryland to meet with its distributor and with its representative-developer in order to allay concerns of potential customers about the credibility of the Product as developed by Brooks, chose to have in Maryland a private meeting with its representative-developer, chose to modify the written agreement with that representative-developer while in Maryland, chose to communicate by mail and telephone over a period of years with its Maryland representative-developer, chose to falsely state to its representative-developer repeatedly that the representative-developer would become wealthy from his work since Motsenbocker Developments would honor its agreement.

Although not clear from the motion and supporting affidavit, defendants' argument that no personal jurisdiction exists over them seems to be limited to the twelfth count (a relatively minor count for $2,000); however, they do seem to provide a blanket denial of the other eleven counts. Their personal jurisdiction argument, then, is limited to arguing that since they deny all the facts of the complaint, no long-arm jurisdiction could possibly exist over them since they never entered into any contract in Maryland nor perpetrated any tort or fraud. The law does not allow such an unsupported denial to serve as a basis for denying jurisdiction especially where the defendants never bother confronting the many facts detailed in the complaint.

## II.  Facts

1.    In a twenty-three count complaint alleging twelve causes

*Opposition to Motion—Page 2*

of action, plaintiffs ("Brooks") allege that Brooks was a Maryland
painter who noticed a graffiti remover (the "Product") in Maryland
sold by defendant Motsenbocker Advanced Developments, Inc.
("Motsenbocker Developments")(Complaint at ¶¶ 1-12; Affidavit of
George Brooks ¶ 2, attached as Exhibit A).  After experimenting,
Brooks found that it worked as a stripper of coatings covering
brass, telephoned Motsenbocker Developments with Brooks' idea to
market it as such, and entered into an agreement in Maryland with
Motsenbocker Developments' distributor, Ecolab, with Ecolab's
Baltimore, Maryland office, which office was handling the
Motsenbocker Developments account.  (Complaint ¶¶ 13-16; Brooks
Affidavit ¶ 2.)

    2.    Since the idea of marketing the Product as a stripper was
Brooks' idea, the written agreement did not make Brooks a mere
sales representative, rather in recognition of his discovery and
continued development, Brooks was made the exclusive sales
representative who would earn a commission on all sales, not just
the ones Brooks initiated.  (Complaint ¶ 15; Brooks Affidavit ¶ 2.)
Brooks and Motsenbocker Developments worked out this agreement
initially by telephone, Brooks and Ecolab in Maryland and Gregg
Motsenbocker, Motsenbocker Developments' agent, in California.
(Complaint ¶ 14; Brooks Affidavit ¶ 2.)  In the following months,
Brooks worked closely with Motsenbocker Developments' Maryland

*Opposition to Motion—Page 3*

agent, Ecolab, in marketing the Product.  (Complaint ¶ 17; Brooks Affidavit ¶ 2.)

3.    In addition, in 1999 Brooks traveled to a laboratory in Mississippi and developed a coating to be used in conjunction with the stripper.  (Complaint ¶ 18; Brooks Affidavit ¶ 3.)  Upon his return to Maryland, he entered into an agreement with Motsenbocker Developments where Motsenbocker Developments would produce the coating and Brooks would be its exclusive sales representative upon similar terms to his Agreement with Motsenbocker Developments made through Ecolab.  They worked out this agreement by telephone, Brooks in Maryland and Gregg Motsenbocker, Motsenbocker Developments' agent, in California.  (Complaint ¶¶ 18-20; Brooks Affidavit ¶ 3.)

4.    In spring 1999, Gregg Motsenbocker on behalf of Motsenbocker Developments traveled to Maryland to meet with Brooks. (Complaint ¶ 21; Brooks Affidavit ¶ 4.)  They met at the restaurant dining room of the Marriott hotel located near Baltimore, just outside of BWI Airport.  (Brooks Affidavit ¶ 4.)  In attendance at the meeting was also a former Ecolab employee, Mr. Walter Noga. (Brooks Affidavit ¶¶ 4 & 5.)  Out of the presence of Mr. Noga of Ecolab, Gregg Motsenbocker told Brooks that Motsenbocker Developments was ending its relationship with Ecolab and would like to modify the agreement with Brooks in that the terms would be

*Opposition to Motion—Page 4*

substantially the same including that Brooks would continue to develop the product's formula and uses except that Brooks would receive a flat 10% on all sales of the Product and that the coating he was developing would be part of the deal as well.  (Complaint ¶¶ 22 & 24; Brooks Affidavit ¶ 5.)  Brooks accepted the offer to modify the agreement entering into the modified agreement (the "Agreement").  (Complaint ¶ 23; Brooks Affidavit ¶ 5.)  Immediately following the Agreement, Gregg and Mr. Noga traveled to New York to discuss with a buyer the Product.  (Brooks Affidavit ¶ 5.)

5.    Pursuant to the Agreement, as soon as Motsenbocker Developments' relationship with Ecolab ended, Brooks started to develop the Product and to market it throughout the country.  (Complaint ¶¶ 30-56; Brooks Affidavit ¶ 6.)  Brooks did develop the product and marketed it from 1999 to 2005.  (Complaint ¶¶ 25 & 30-56; Brooks Affidavit ¶¶ 6 & 7.)  Brooks performed a significant amount of the development at his home in Maryland, but also did some of the development in Virginia and the District of Columbia.  (Complaint ¶ ; Brooks Affidavit ¶ 6.)  As part of his work, Brooks wrote instruction manuals, product flyers, and product definitions, all done in Maryland.  (Complaint ¶ 50; Brooks Affidavit ¶ 6.)  Also Brooks developed other uses and names for the Product, all done in Maryland.  (Complaint ¶¶ 30-33; Brooks Affidavit ¶ 6.)  From 1999 to 2005 Brooks made eight videos demonstrating how to use

*Opposition to Motion—Page 5*

the Product.  (Complaint ¶¶  50-51; Brooks Affidavit ¶ 6.)   Brooks made these videos in Washington, D.C and one in Maryland.  (Brooks Affidavit ¶ 6.)  Brooks sent these writings and videos to Motsenbocker Developments in California who then distributed them to interested buyers throughout the country.  (Complaint ¶ 56; Brooks Affidavit ¶ 6.)

6.    From 1999 to 2005 Brooks communicated frequently with Motsenbocker Developments through its agents Gregg Motsenbocker and Skip Motsenbocker about the Product as well as about the coating. (Complaint ¶¶ 25, 51, 55, 56, 57; Brooks Affidavit ¶ 7.)  These communications were done by telephone and mail between his Maryland home and their offices in California.  (Brooks Affidavit ¶ 7.)  In addition, Brooks traveled to their offices in California twice, once in 2003, once in 2004 into 2005, to work with Motsenbocker Developments on company matters and to work on the Product. (Complaint ¶¶ 43 & 45; Brooks Affidavit ¶ 7.)  Often from 1999 to 2005, Skip and Gregg Motsenbocker told Brooks that Brooks would be a wealthy man someday from the sale of the Product.  (Brooks Affidavit ¶ 8.)  In reliance on the Agreement, on these continued promises and optimistic exhortations and on Brook's own highly-optimistic assessment of the Product, he spent over $140,000 of his own money to promote the Product, including by traveling to trade shows and producing eight videos.  (Brooks Affidavit ¶ 8.)

7.    In May 2005, Gregg Motsenbocker, Skip Motsenbocker, and Motsenbocker Developments told Brooks that they would not honor the Agreement, that Brooks would receive nothing. (Complaint ¶ 61; Brooks Affidavit ¶ 9.) They did this after they had a meeting with Home Depot where they arranged for Home Depot to sell the product. (Complaint ¶ 59; Brooks Affidavit ¶ 9.) Brooks knew about the Home Depot meeting since Brooks was at their offices when calls were made to arrange the meeting and Brooks boxed up and sent samples of the Product to Home Depot and trained Skip Motsenbocker on how to conduct a demonstration and how to describe and pitch the Product. (Brooks Affidavit ¶ 9.)

8.    Since then as a painter and sales representative with continued interest in the Product, Brooks has discovered the Product at Home Depot stores in Maryland and that it is being sold at Ace Hardware and Dutch Guard as well. (Complaint ¶ 60; Brooks Affidavit ¶ 10.) Under the Agreement, Brooks is entitled to have a ten percent commission on all of sales of the Product, including of course the sales currently being done through Home Depot, Ace Hardware, and Dutch Guard. (Complaint ¶ 63; Brooks Affidavit ¶ 10.) Considering that Home Depot alone has highly-penetrated the North American market (the territory covered in the Agreement), Brooks knows that substantial quantities of the Product are being sold and that his commissions on Home Depot sales alone will amount

to easily a million dollars. (Complaint ¶ 63; Brooks Affidavit ¶ 10.) In addition, a search of Motsenbocker Developments web site shows that no less than ten suppliers of the Product exist in Maryland including one wholesale supplier. The pages showing this are attached as Exhibit C. (Brooks Affidavit ¶ 10.)

9.    In addition to Motsenbocker Developments' relationship to Brooks and to Ecolab in Maryland, Brooks has knowledge that Motsenbocker Developments did have agreements with a sales representative company, Daycon Products Company, in Maryland who sold latex paint in Maryland. At one point on or after 2000, Motsenbocker Developments ended its relationship with Daycon and Gregg Motsenbocker would market the latex paint directly to Maryland buyers. Brooks knows this since in 2003 and 2004-2005 Brooks worked briefly at Motsenbocker Developments' California office where Brooks spoke to the former Maryland sales representatives on the telephone. (Complaint ¶¶ 43, 45; Brooks Affidavit ¶ 11.)

10.    In their twenty-three page, detailed complaint, the plaintiffs bring essentially two breach of contract claims—one for breach of the Agreement (Counts I and II), alleging approximately one million dollars in commissions owing, the other for breach of an agreement to pay Brooks a commission on the covering (Count XII), alleging approximately $2,000 in commissions owing. In

*Opposition to Motion—Page 8*

addition to these two instances of breach of a contract, the complaint brings nine counts on causes of action ancillary largely to the first breach, the million dollar breach. These counts include equity claims, tort, fraud, and breach of fiduciary duty counts as well as a count asking for an accounting of the current sales of the Product through Home Depot and other retailers as well as a declaratory relief count.

11.    The key witnesses include (Brooks Affidavit ¶ 12.):

| Witness | Location |
| --- | --- |
| George Brooks | Maryland |
| Vickie Masonieuve | Maryland |
| Patrick Poney | Maryland |
| Sean Siemon | Maryland |
| Walter Noga | Maryland |
| Marcel Maisonieuve | Maryland |
| Daniel Poney | Maryland |
| Theresa Poney | Maryland |
| Larry Brook | Maryland |
| Georgia Cornell | Maryland |
| Rose Sachs | Maryland |
| Mark Tetlow | Maryland |
| John Pisaini | Maryland |
| Thomas Clime | Maryland |

*Opposition to Motion—Page 9*

| | |
|---|---|
| Laura Brooks | Virginia |
| Douglas Earnest | Illinois |
| Michelle Earnest | Illinois |
| Charles Scamanice | Illinois |
| Gregg Motsenbocker | California |
| Skip Motsenbocker | California |
| Naomi Craft | California |

### III.  Law & Argument

**A.  Personal Jurisdiction**

**1.  Law of Personal Jurisdiction in General**

The U.S. Court of Appeals for the Fourth Circuit in Ciena Corp. v. Jarrard, 203 F.3d 312 (2000), in construing the Maryland long-arm statute has provided a general statement of the law of personal jurisdiction in a case involving a breach of contract claim:

> Federal Rule of Civil Procedure 4(k)(1)(A) provides that "service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant . . . who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located."  We have previously explained that "because Rule 4(k)(1)(A) delimits the scope of effective federal service in terms of the limits on state court jurisdiction," our inquiry into a federal court's jurisdiction pursuant to the Rule looks to the law of the state in which the federal court sits and the limits on the jurisdiction of that state's courts imposed by the Fourteenth Amendment.  ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622-23 (4th Cir. 1997), cert. denied, 523 U.S. 1048, 140 L. Ed. 2d 513, 118 S. Ct. 1364 (1998). . . .

> The Maryland Court of Appeals has noted that [Md. Code Ann. Cts. & Jud. Proc. § 6-103(b)] "represents an effort by the Legislature to expand the boundaries of permissible in personam jurisdiction to the limits permitted by the Federal

*Opposition to Motion—Page 10*

Constitution." <u>Geelhoed v. Jensen</u>, 277 Md. 220, 352 A.2d 818,
832 (Md. 1976).  As a consequence, "the statutory inquiry
necessarily merges with the constitutional inquiry, and the two
inquiries essentially become one."  <u>Stover v. O'Connell Assoc.,
Inc.</u>, 84 F3d 132, 135-36 (4th Cir. 1996).  As we explained in
<u>ESAB Group</u>, "because Rule 4(k)(1)(A) delimits the scope of
effective federal service in terms of the limits on state court
jurisdiction, our inquiry into a federal court's jurisdiction
pursuant to Rule 4(k)(1)(A) incorporates the Fourteenth
Amendment due process standard, even though that Amendment
applies of its own force only to states."  126 F.3d at 622-23.
We therefore turn to the constitutional question of whether
[the defendant] has established "minimum contacts with
[Maryland] such that the maintenance of the suit does not
offend 'traditional notions of fair lay and substantial
justice.'"  <u>International Shoe Co. v. Washington</u>, 326 U.S. 310,
316, 90 L. Ed. 95, 66 S. Ct. 154 (1945) (quoting <u>Milliken v.
Meyer</u>, 311 U.S. 457, 463, 85 L. Ed. 278, 61 S. Ct. 339 (1940)
(internal citation omitted)).

<u>Ciena Corp.</u>, 203 F.3d at 317.  This court has provided further

guidance:

> **Physical presence** within the **forum state** is not required to
> establish personal jurisdiction over a non-resident defendant.
> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476, 85 L. Ed. 2d
> 528, 105 S. Ct. 2174 (1985).  Jurisdiction is also established
> if it can be shown that the defendant has **purposefully** directed
> its activities towards the residents of the **forum state**, <u>id.</u> at
> 472, or otherwise **purposefully** availed itself of the **privilege
> of conducting activities** within the **forum State, thus invoking**
> the benefits and protections of its laws."  <u>Hanson v. Denkla</u>,
> 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958).
>
> A court may exercise "specific jurisdiction" where the suit
> arises from a defendant's contacts with the **forum state.**
> <u>Hilicopteros Nacionales de Colombia v. Hall</u>, 466 U.S. 408, 414,
> 80 L. Ed. 2d 404, 104 S. Ct. 1868 91984).  Specific
> jurisdiction exists when the "contacts related to the cause of
> action . . . create a 'substantial connection' with the **forum
> state . . . ."** <u>ESAB Group v. Centricut, Inc.</u>, 126 F.3d 617,
> 625 (4th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1048, 140 L. Ed. 2d
> 513, 118 S. Ct. 1364 (1998) (quoting <u>McGee v. Int'l Life Ins.
> Co.</u>, 355 U.S. 220, 223, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957)).
> The defendant's activities must be **purposefully** directed at the

> **forum state** "in more than a random, fortuitous, or attenuated
> way." <u>ESAB Group</u>, 126 F.3d at 625 (citing <u>Burger King</u>, 471
> U.S. at 475 (1985)).  The Supreme Court has held that even a
> single contact may be sufficient to create jurisdiction when
> the cause of action arises out of that single contact, provided
> that the principle of "fair play and substantial justice" is
> observed.  <u>Burger King</u>, 471 U.S. at 477-78.

<u>Giannaris v. Cheng</u>, 219 F. Supp. 2d 687, 692 (D. Md. 2002)

(emphasis in original).

Besides "specific jurisdiction," "'general jurisdiction' may

nevertheless be asserted over a defendant whose activities in the

forum state have been 'continuous and systematic'.  But the

threshold level of minimum contacts to confer general jurisdiction

is significantly higher than for specific jurisdiction." <u>ESAB</u>

<u>Group v. Centricut Inc.</u>, 126 F.3d 617, 625 (4th Cir. 1997)

(citations omitted).

Finally the Maryland long-arm statute (Md. Code Ann. Cts. &

Jud. Proc. § 6-103) provides in part:

> (a) Condition.  If jurisdiction over a person is based
> solely upon this section, he may be sued only on a cause of
> action arising from any act enumerated in this section.
>
> (b) In general.  A court may exercise personal jurisdiction
> over a person, who directly or by an agent:
>
> > (1) Transacts any business or performs any character of
> > work or service in the State;
> > (2) Contracts to supply goods, food, services, or
> > manufactured products in the State;
> > (3) Causes tortious injury in the State by an act or
> > omission in the State;
> > (4) Causes tortious injury in the State or outside of the
> > State by an act or omission outside the State if he regularly
> > does or solicits business, engages in any other persistent

course of conduct in the State or derives substantial revenue
from goods, food services, or manufactured products used or
consumed in the State.

### 2.  Burden of Proof

In deciding a motion to dismiss for lack of personal
jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), a court may
rely on the allegations in the complaint and affidavits
submitted by the parties.  When . . . the district court
decides the issue of personal jurisdiction without an
evidentiary hearing, the plaintiff bears the burden of proving
a prima facie case of personal jurisdiction.  **The court, in
deciding whether a plaintiff has met this burden, must
"construe all relevant pleading allegations in the light most
favorable to the plaintiff, assume credibility, and draw the
most favorable inferences for the existence of jurisdiction."**

Giannaris v. Cheng, 219 F. Supp. 2d 687, 691 (D. Md. 2002)

(citation omitted) (emphasis added).

### 3.  "Specific Jurisdiction" Over Corporate Defendant

The facts most relevant to whether personal jurisdiction under

the "specific jurisdiction" category can be had over Motsenbocker

Developments include:  The corporation chose to maintain a

distributor-agent, Ecolab, in Maryland, chose to market its

products through this Maryland agent-distributor (Brooks Affidavit

¶ 2), chose to sign a written contract with a Maryland sales

representative-product developer, Brooks, in Maryland (Brooks

Affidavit ¶ 2), chose to have its agent Gregg Motsenbocker travel

to Maryland to meet with its distributor and with its

representative-developer in order to allay concerns of potential

customers about the credibility of the Product (Brooks Affidavit ¶¶

4 & 5), chose to have in Maryland a private meeting with its

representative-developer (Brooks Affidavit ¶ 5), chose to modify

the written agreement with that representative-developer while in Maryland (Brooks Affidavit ¶ 5), chose to communicate by mail and telephone over a period of years with its Maryland representative-developer (Brooks Affidavit ¶ 7), chose to falsely state to its representative-developer repeatedly that the representative would become wealthy from his work since Motsenbocker Developments would honor its agreement (Brooks Affidavit ¶ 8).

The conflicting affidavit of Gregg Motsenbocker denies any defendant ever did business in Maryland, ever employed Ecolab in Maryland as a distributor, ever met with Brooks in Maryland, ever entered into an agreement with Brooks. (Affidavit of Gregg Motsenbocker attached to defendants' motion to dismiss ¶¶ 4, 5, 8, & 9.) However, since this Court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction" (Giannaris, 219 F. Supp. 2d at 691), it must favor Brooks version over Gregg Motsenbocker'. Beside the requirement to favor Brook's version, the Motsenbocker Affidavit is inherently deceptive and so not to be trusted (as is brought out more fully below under the discussion of diversity jurisdiction). Moreover, additional circumstantial evidence confirms Brooks' account of a Maryland meeting: the affidavit of Douglas Ernest at Exhibit D. As well, direct evidence confirms the meeting took place: plaintiffs are working to obtain the affidavit of Walter Noga confirming the meeting.

The salient facts as stated by Brooks do give rise to personal jurisdiction over the corporate defendant under sections (b)(1), (3), and (4) of the long-arm statute. Several cases similar in

*Opposition to Motion—Page 14*

particular respects to this one support a finding of personal

jurisdiction under these three sections and provide guiding rules

to apply.  One rule is "that the Maryland courts could and would

assert jurisdiction over a party to a contract in a suit for breach

of that contract if the party has performed purposeful acts in

Maryland in relation to the contract, albeit preliminary or

subsequent to its execution."  Du-Al Corp. v. Rudolph Beaver, Inc.,

540 F.3d 1230, 1232 (4th Cir. 1976) (citations & internal quotations

omitted).  In Du-Al Corp., a Maryland manufacturer sued an out-of-

state distributor for breach of contract and violations of anti-

trust laws where a small amount of the distribution was in

Maryland.  In finding jurisdiction under sections (b) (1), (3), and

(4), the Fourth Circuit noted:

> in at least two respects the contract was to be performed by
> Beaver in Maryland, Beaver did perform in part in Maryland, and
> its performance is now alleged to be defective, incomplete,
> tortious, or in violation of the antitrust laws.  In addition,
> Maryland was the site either of the final execution of the
> contract, or of steps preliminary to its execution.  There is
> thus no doubt that in entering into and performing the contract
> Beaver **purposefully** availed itself of the **privilege of
> conducting activities** within the **forum State, thus invoking** the
> benefits and protections of its laws.

Du-Al Corp., 540 F.2d at 1233 (citation and internal quotes

omitted) (emphasis in Original).

By having its agent enter into a written contract in Maryland

with Brooks, by having its president travel into Maryland and enter

into a an oral modification in Maryland, Maryland became the site

of negotiating the contract being litigated and the site of its

final execution and the site of its modification so that

Motsenbocker Developments purposefully availed itself of the

privileges of conducting activities in Maryland.  In addition, just
as in Du-Al Corp., Motsenbocker Developments performed in part the
contract in Maryland by sending the Product into Maryland as it
itself admits.  (Motsenbocker Affidavit ¶¶ 7 & 11.)  And
Motsenbocker' admission that it derives less than ½% of its sales
in Maryland (Motsenbocker Affidavit ¶ 11) is significant since this
Court has found a company deriving ½ of 1 percent of its sales in
Maryland to be quite significant and a justification for a finding
of personal jurisdiction under section (b) (4) of the long-arm
statute.  United Merchants & Mfrs. Inc. v. David & Dash, Inc., 439
F. Supp. 1078, 1084-85 (1977).  In addition to looking at the
percentage of sales in Maryland, the court also looked at the
dollar value of those percentages.  Id.  Sadly, Motsenbocker'
declining to provide the Court with the dollar amount that this 1/2
% represents may well mean that Motsenbocker Developments does not
take its own motion seriously; in any event, the absence of
information on this point cannot be held against plaintiffs.

   This case also has strong similarities to Choice Hotels Int'l,
Inc. v. Madison Three, Inc., 23 F. Supp. 2d 617 (D. Md. 1998) where
a Maryland plaintiff-franchisor sued a Massachusetts defendant-
franchisee (Madison).  This Court found personal jurisdiction under
section (b) (1) of the long-arm statute even though "[t]he fact
that the negotiations between the parties did not occur in
Maryland, while certainly relevant, is not determinative."  Id. at
620 (citation omitted).  The instant case is even stronger in this
respect since Brooks and Motsenbocker Developments physically
negotiated the contract and its modification in Maryland and
actually signed the written contract in Maryland.  The Court's

reasoning is instructive:

> I agree with [the plaintiff-franchisor] that application of
> the above principles [of jurisdiction] here establishes *prima
> facie* that both the corporate defendant and the individual
> defendants are subject to jurisdiction in Maryland.  As to the
> corporate defendant, . . . the facts of the instant case are
> remarkably similar to those in [Burger King Corp. v. Rudzewicz,
> 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)], which
> held that a federal court in Florida may constitutionally
> exercise personal jurisdiction over the operator of a Michigan
> Burger King franchise in a suit arising out of the franchise
> agreement  471 U.S. at 487.  The Court reasoned that the
> Michigan franchisee purposely availed himself of the benefits
> of Florida law by entering into a significant long-term
> commercial franchise agreement, from which substantial benefits
> would accrue to him in Michigan with Burger King, a citizen of
> the forum state.  Id. at 478-82.  Similarly here, [the
> defendant-franchisee] sought to benefit (by operating its local
> inn under a nationally-recognized mark) from its execution of
> the franchise agreement, and therefore, to avail itself of the
> benefits of Maryland law, as Maryland is [the plaintiff-
> franchisor's] principal place of business.

Choice Hotels Int'l, Inc., 23 F. Supp. 2d at 620.  Similarly,

Brooks' complaint shows that Motsenbocker Developments was

marketing a graffiti remover—a product of limited application;

under the Agreement with Brooks, Brooks was able to develop the

Product into something of wide and great application—a

biodegradable, water-based stripper to be used on wood and metals

without any noxious, dangerous fumes, a product with enormous sales

potential, so enormous that Home Depot and other large retailers

picked it up.  See, e.g., Complaint ¶¶ 12, 14, 31, 35, 36, 59, 60.

Motsenbocker Developments owes this great source of sales to one

event—Brooks' development of the Product under an agreement that

*Opposition to Motion—Page 17*

took place in Maryland where most of the development took place.

Just as the franchisees "sought to benefit from association with an out-of-state franchisor and so purposefully availed [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," Motsenbocker Developments did so by seeking its highly-lucrative association with Brooks.

Further, another circumstance greatly increases Motsenbocker Developments' contact with Maryland. Ecolab, duly licensed to do business in Maryland, was Motsenbocker Developments' agent in Maryland. Ecolab was its presence in Maryland. The in-state actions of the agent of a defendant do not establish jurisdiction where the agent is suing its out-of-state principal so that Brooks' actions cannot be attributable to Motsenbocker Developments. However, where the agent is not the plaintiff, then the agent's actions are attributable to the out-of-state principal so that personal jurisdiction over the principal exists. Snyder v. Hampton Industries, Inc., 521 F. Supp. 130, 143 (D. Md. 1981) (subsection (b) (1) personal jurisdiction established based on activities of agent). So all of Ecolab's activities on behalf of Motsenbocker Developments constitute purposeful contacts with Maryland. Such included: product sales and distribution, negotiation and signing of contract with Brooks, on-going relation with Brooks.

The only factor that seems to weigh against Brooks is the fact that Brooks initiated the first contact with Motsenbocker Developments. This so since "[i]n determining whether prior business negotiations in the forum state give rise to specific jurisdiction, the strongest factor is whether the defendant initiated the business relationship in some way." Giannaris v. Cheng, 219 F. Supp. 2d 687, 692 (D. Md. 2002). However, Brooks is not relying on prior business negotiations.

### 4. "Specific Jurisdiction" Over Corporate Officers Gregg & Skip Motsenbocker

Since only tort causes of action are brought against the individual defendants, the analysis of this section bears only on subsections (b) (3) and (4) of the long-arm statute. A decision of this Court provides a fine statement of the law on the preliminary question of whether the actions of the individual defendants as corporate officers can at all be used to obtain personal jurisdiction over them. In Maryland ex rel. Sachs v. Mid-Atlantic Toyota distribs., Inc., 525 F. Supp. 1265 (D. Md. 1981), officers of the defendant corporations were also named as defendants in an antitrust suit. The officers contested personal jurisdiction.

> The complaint alleges that Weisman [a defendant-corporate officer] participated in a series of meetings, three of which took place in Maryland, in furtherance of the price-fixing conspiracy. Weisman argues that plaintiff has not shown he committed an act causing tortious injury because there is no allegation that he actually entered into the price-fixing agreement in Maryland. However, even if the final agreement were reached in another state, that agreement would not have been possible without the series of meetings in which the plan's details were negotiated. The meetings in Maryland were

an integral part of the alleged price-fixing conspiracy.
Therefore, by participating in the Maryland meetings, Weisman
committed acts in Maryland that caused the alleged tortious
injury in Maryland.

Weisman also argues that, to the extent that he
participated in meetings concerning a price-fixing conspiracy,
he did so in his capacity as a corporate director, so those
acts cannot serve as a basis for personal jurisdiction over him
in his individual capacity.  However, the holding in Merkel
Associates, Inc. v. Bellofram Corp., 437 F. Supp. 612 (W.D.
N.Y. 1977), explains why this principle of distinguishing
individual from corporate acts does not apply to Weisman.  In
that case, the court found that jurisdiction over individual
defendants, officers of the corporate defendants, could not be
based upon their corporate activities.  The court stated that
when a corporate officer enters New York on corporate business,
he should not be deemed to have "transacted business" or to
have engaged in a "persistent course of conduct" in New York
for purposes of personal jurisdiction over him in his
individual capacity.  However, the court noted that: "the
purpose of such a 'fiduciary shield' from long-arm jurisdiction
is to protect such corporate officers from unreasonable and
unjust subjection to personal jurisdiction; not to protect them
from liability.  This shielding should not be unlimited."  Id.
at 618.  The "fiduciary shield" does not apply where a
corporate officer has allegedly committed a personal or
business tort within the state.  Id. at 619.  In such a
situation, there would be personal jurisdiction over the
defendant in his individual capacity, under the section of the
long arm statute providing for personal jurisdiction over a
person who commits a tortious act within the state.  Id.  In
the instant case, it is alleged that Weisman committed a
business tort in Maryland by participating in meetings in
furtherance of a price-fixing conspiracy.  Therefore, there is
personal jurisdiction in Maryland over Weisman in his
individual capacity under Md. Cts. & Jud. Proc. Code Ann. § 6-
103(b)(3).  Other courts have found jurisdiction proper in
similar circumstances.

Maryland ex rel. Sachs, 525 F. Supp. at 1270-71 (citation omitted).

Similarly, Gregg Motsenbocker participated in a meeting in

Maryland as part of misrepresentations and breaches of fiduciary

duties he perpetrated on Brooks so that subsection (b) (3)

jurisdiction exists over him.

Personal jurisdiction also is had over Gregg Motsenbocker under subsection (b) (4), as well as over Skip Motsenbocker. This provision allows jurisdiction over someone who causes tortious injury in or outside of Maryland "by an act or omission outside" of Maryland if, among other possibilities, he "engages in any other persistent course of conduct in the State . . . ." The Motsenbockers certainly caused tortious injury in Maryland as described above, but especially by over-a-period-of-years telling Brooks that he would be a wealthy man one day and that Motsenbocker Developments planned on honoring the Agreement. Moreover, to establish personal jurisdiction, one need never have entered Maryland, rather one must only have purposely availed oneself of the privilege of conducting activities within the forum state-- "[s]uch activities need not involve physical presence in the state, but must still be purposefully directed toward the forum state." ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997) (citations and internal quotes omitted).

The question then is whether the Motsenbockers engaged in a persistent course of conduct in Maryland in order to establish subsection (b) (4) jurisdiction. Repeating a lie to Brooks by telephone into Maryland over the course of years so that Motsenbocker Developments could obtain the vast revenues that would be had from Brooks' development of the Product in Maryland certainly appears to be "persistent" to say the least.

(This subsection also establishes jurisdiction over Motsenbocker Developments especially since it "derives substantial revenue from goods" in Maryland. United Merchants & Mfrs., Inc. v.

*Opposition to Motion—Page 21*

David & Dash, Inc., 439 F. Supp. 1078, 1084-85 (D. Md. 1977) (1/2
of 1 percent constitutes "substantial revenues").  See the
discussion of United Merchants above at section III. A. 3.
However, plaintiffs need not rely upon this subsection to obtain
jurisdiction over Motsenbocker Developments since such has already
been demonstrated under the other sections.)

### B.   $75,000 Diversity Requirement

"In diversity cases, the general rule is that the amount
claimed by a plaintiff in the complaint determines the amount in
controversy, unless it appears to a legal certainty that the claim
is for less than the jurisdictional minimum amount."  Moore's
Manual:  Federal Practice and Procedure § 5.72 (2005) (footnote
omitted).  "[A] party contesting the amount in controversy is
required to support its assertion with 'competent proof' and a mere
good faith belief on the part of the opponent is not competent
proof."  Id.

Defendants inform the court that the complaint on its face only
demands $50,000.  (Memorandum in Support of Motion p. 6;
Motsenbocker Affidavit ¶ 12.)  To the contrary, the complaint makes
it quite clear that Brooks is claiming his commission on ongoing
sales of the Product and that such commissions amount to much more
than $75,000.  See, e.g., Complaint ¶¶ 60, 63.  Therefore, the
amount in controversy is well over $75,000 so that diversity
jurisdiction exists.

The deception of the Motsenbocker Affidavit on the diversity
question does not end at misstating the amount as $50,000:  Gregg
Motsenbocker also tells the Court the percentage of sales in
Maryland (1/2%) but never provides the dollar value, nor does he

provide any indication of the dollar value of the current sales of
the Product in North America.  The most that can be said about the
statement of Gregg Motsenbocker—a statement made under penalty of
perjury—is that it is cunning.  This misrepresentation of the
complaint and refusal to provide the facts need to make a
determination of the personal jurisdiction question—done under
penalty of perjury—in all fairness should serve as an estoppel of
the defendants from raising any personal jurisdiction defenses.
This is so especially considering the other assertions of the
Motsenbocker Affidavit that Brooks has already countered (never had
an agent such as Ecolab or Brooks in Maryland, never participated
in a meeting in Maryland, etc.).

### C.    Transfer Under 28 U.S.C. 1404(a) or 1406(a)

Section 1404 provides that a district court may transfer any
civil action to any other district or division where it might have
been brought, for the convenience of parties and witnesses, and
where it would be in the interest of justice.

**In ruling on such motions, the burden is on the defendant to
make a strong case for transfer.**  Plaintiff's privilege of choosing
forum is a factor to be considered as against what otherwise might
be the balance of convenience among the parties.  See Celanese
Corp. v. Fed. Energy Admin., 410 F. Supp. 571 (D.D.C. 1976);
Medicenters of America, Inc. v. T & V Realty & Equipment Corp., 371
F. Supp. 1180 (E.D. Va. 1974).

Although § 1404 mentions only three general factors
(convenience of parties, convenience of witnesses, and the interest
of justice ) to be considered in determining whether to grant or
deny, a motion to transfer, a court is not limited to these rather

*Opposition to Motion—Page 23*

broad categories, but may consider other factors.

Private factors include:

1.  The plaintiff's forum preference.
2.  The defendant's forum preference.
3.  The location where the claim arose.
4.  The convenience of the parties as indicated by their relative physical and financial condition.
5.  The convenience of the witnesses to the extent that the witnesses may be unavailable for trial in one of the fora.
6.  The location of evidence, including books and records.
7.  Any applicable forum selection clause.

Moore's Manual:  Federal Practice and Procedure § 7.81[2][a] (2005)

(footnotes omitted).

Public factors include:

1.  The enforceability of the judgment.
2.  Practical considerations that could make the trial simple, expeditious, or inexpensive.
3.  The relative administrative difficulty in the two for a resulting from court congestion.
4.  The local interest in deciding local controversies at home.
5.  The public policies of each district.
6.  The familiarity of the trial judge with the applicable state law in diversity cases.
7.  Other factors regarding the interest of justice.

Id. at § 7.81[3][b] (footnotes omitted).

Overwhelmingly, the factors militate in favor of not transferring this litigation. Especially significant is the fact that Brooks as a self-employed painter (Brooks Affidavit ¶ 2) has quite limited means while the defendants have such extensive means (as seen, for example, in the sale of the Product throughout the North America in Home Depot (Complaint ¶ 60)). As well, especially significant is that by breaching the contract, defendants have control of the great revenues presently being derived from the sale of the Product while Brooks has no revenues at all from its sale.

Other considerations militating in favor of maintaining the
litigation in Maryland include that the written agreement and its
oral modification were both done in Maryland so that Maryland law
will most likely apply to the better part of this controversy; and
that so many of the witnesses are in Maryland (Brooks Affidavit ¶
12).  The only factor in favor of a transfer would be that the
financial records of Motsenbocker Developments revenues are located
in California, but these could easily be brought to Maryland, at
least copies.


In cases where venue is laid in the wrong forum, sec. 1406,
rather than § 1404 governs.  While nearly all of the same factors
govern those motions, there are significant differences.  Section
1404 deals with situations in which venue is proper in the district
were the case was originally filed, and the question is whether or
not to transfer the case—Section 1406 requires a decision of a
different nature, whether to transfer or dismiss where venue is
improper.  Under § 1406, the interest of justice, not the
convenience of the parties predominates.  <u>Novak-Canzeri v. Saud</u>,
864 F. supp. 203 (D.D.C. 1994).

Courts are generally loath to dismiss cases and generally favor
transfer whenever possible.  <u>See</u> <u>e.g.</u>, <u>Superfos Investments Ltd. v.
Firstmiss Fertilizer, Inc.</u>, 774 F. Supp. 393 (E.D. Va. 1991).

If the Court does find that it cannot exercise personal
jurisdiction over Skip Motsenbocker and that he is not estopped
from raising personal jurisdiction, plaintiffs represent that they
consent to having Skip Motsenbocker dismissed from this action,

<em>Opposition to Motion—Page 25</em>

rather than transferring it to California.

### D.  Stay of Discovery

In the conclusion to their memorandum, defendants ask the Court to "stay discovery and disclosures." Fed. Civ. R. 26(c) provides that "for good cause shown, this Court . . . may make an order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." In general,

> Before a protective order may be entered, however, the party seeking it must make a showing of good cause, stating with some specificity how it may be harmed by the disclosure of a particular document or piece of information. "The burden then shifts to the party seeking discovery to establish that the disclosure is both relevant and necessary to the action. . . . to show necessity, the party seeking discovery must demonstrate that the information is necessary to the preparation of its case for trial, including proving its own theories and rebutting those of its opponent." Plough, Inc. v. National Academy of Sciences, [530 A.2d 1152, 1155-1156 (D.C. 1987)].

Mampe v. Ayerst Lab., 548 A.2d 798, 804 (D.C. 1988) (citation omitted).

Courts do grant stays of discovery pending disposition of dispositive motions where the discovery may well turn out to unnecessary if claims relating to the discovery are ultimately dismissed. The United States Court of Appeals for the Eleventh Circuit explained the policy:

> If the . . . court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided. Conversely, delaying ruling on a motion to dismiss such a claim until after the parties compete discovery encourages abusive discovery and, if the court ultimately dismisses the claim, imposes unnecessary costs. For these reasons, any legally unsupported claim that would unduly enlarge the scope of discovery should be

*Opposition to Motion—Page 26*

eliminated before the discovery stage, if possible.
Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 (11th Cir.
1997).  See also Brennan v. Local Union No.639, 161 U.S. App. D.C.
173, 494 F.2d 1092 (1974), cert denied, 429 U.S. 1123 (1977)
(upholding grant of protective order staying discovery until after
ruling on summary judgment motion).

The request of defendants (citing no authority other than Fed.
R. Civ. P. 26) appears ill-conceived and virtually pointless.
First, unlike with a motion for summary judgment, with a
jurisdiction motion, little reason exists to stay discovery since
discovery must be done no matter where litigated.  Second,
defendants seem unaware of Local Rule 104.4, which provides that
"discovery shall not commence and disclosures need not be made
until a scheduling order is entered."  No discovery is presently
occurring to be stayed.

## IIII.   Conclusion

WHEREFORE, since "specific jurisdiction" exists over all three
defendants, the motion of defendants must be denied.

Respectfully submitted,

| | | |
|---|---|---|
| Dated:  7 July 2006 | Signed: | _____/s/_____ |
| | | Michael J. Trevelline, Maryland Fed. Bar No. 14733 |
| | Address: | 1823 Jefferson Place, NW |
| | | Washington, DC 20036-2504 |
| | Telephone: | (202) 737-1139/Fax: (202) 775-1118 |
| | Email: | mjt@mjtlegal.com |

**Attorney for Plaintiffs George Brooks and Brooks Industries, Inc.**

4 Exhibits:
A.  Affidavit of George Brooks
B.  Metal Finish Magazine Advertisement
C.  Pages from Motsenbocker Developments web site showing some of its suppliers in Maryland
D.  Affidavit of Douglas Earnest

## Certificate of Service

I hereby certify that the **foregoing this 7 July 2006** was served by electronic case filing through the Court

_____/s/_____
Michael J. Trevelline

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **George A. Brooks et al** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 06cv1024 AW |
| vs. ) | Judge Alexander Williams, Jr. |
| ) | |
| **Motsenbocker Advanced Developments,** ) | |
| **Inc. et al** ) | |
| Defendants. ) | |
| ) | |

### Affidavit of George Brooks

District of Columbia        )
                            ) ss:
City of Washington          )

I, George Brooks, being duly sworn, do hereby depose and say:

1.    I am over the age of 18 and am competent to testify and to make this affidavit and make this affidavit from personal knowledge.  I am a plaintiff in the above-captioned lawsuit.  I hereby verify that the allegations stated in the complaint herein are true and accurate, and all sums claimed to be due therein are due and owing, exclusive of all setoffs and just grounds of defense.

2.    I am a Maryland, self-employed painter.  In 1998 I noticed a graffiti remover (the "Product") in a Maryland store sold by defendant Motsenbocker Advanced Developments, Inc. ("Motsenbocker Developments")  After experimenting, I found that it worked as a stripper of coatings covering brass, telephoned

*Affidavit of George Brooks—Page 1 of 9*

EXHIBIT

_A_

Motsenbocker Developments with my idea to market it as such.  At
that time Motsenbocker Developments had an agent in Maryland, a
company by the name of Ecolab, which is based in Minnesota, but it
has an Olney, Maryland office.  The Olney office was the
distributor of all of the Liftoff products of Motsenbocker
Developments including the product.  When I called Motsenbocker
Developments and spoke with Gregg Motsenbocker, he told me that he
would like to enter into an agreement with me and that I should
call his Maryland agent and distributor, Ecolab, and that Ecolab
would sign the contract.  I did so and entered into a written
agreement in Maryland with Motsenbocker Developments through its
distributor, Ecolab.  I signed the agreement in Olney, Maryland.
Since the idea of marketing the Product as a stripper was mine, the
agreement did not make me a mere sales representative, rather in
recognition of my discovery and continuing development, I was made
the exclusive sales representative with Motsenbocker Developments
and would earn a commission on all sales, not just the ones I
initiated.  In the following months, I worked closely with
Motsenbocker Developments' Maryland agent, Ecolab, in marketing the
Product and I started developing it.

    3.    In addition, in 1999 I traveled to a laboratory in
Mississippi and developed a coating to be used in conjunction with
the stripper.  Upon my return to Maryland, I entered into an

*Affidavit of George Brooks—Page 2 of 9*

agreement with Motsenbocker Developments where Motsenbocker Developments would produce the coating and I would be its exclusive sales representative upon similar terms to my agreement with Motsenbocker Developments made through Ecolab. We worked out this agreement by telephone, me in Maryland and Gregg Motsenbocker, Motsenbocker Developments' agent, in California.

4.    In early 1999, I had made significant progress in demonstrating to those in the metal refinishing industry that the Product worked as an effective and safe stripper. In particular, my demonstration with Mount Sinai Hospital in New York City was quite a success. Since major players in the metal refinishing industry were conducting significant research to develop a safe and effective metal stripper and since I seemingly appeared out of nowhere with a product that worked from a little-known manufacturer, I sought to bring Gregg Motsenbocker to meet key players in the industry. To this end, I arranged in the spring or early summer of 1999 for Gregg to come to Maryland to meet with Mr. Walter Noga of Ecolab and then to travel to New York with Mr. Noga to meet with Mr. David Straub, the head of the Metal Maintenance Industrial Association.

5.    Gregg agreed. So my associate, Mr. Douglas Earnest, and I went to the Marriott hotel in 1999 to meet with Gregg. Gregg did not show up—we learned because he had to have an operation in San

*Affidavit of George Brooks—Page 3 of 9*

Diego.  So we arranged another meeting four weeks later.  Gregg did show up.  Mr. Earnest was aware of the meeting, but decided not to attend; however, he did drive me to my car the morning of the meeting.  Thus, in spring or early summer of 1999, Gregg Motsenbocker on behalf of Motsenbocker Developments traveled to Maryland to meet with me and Mr. Noga.  We met at the restaurant dining room of the Marriott hotel located near Baltimore, just outside of BWI Airport.  Out of the presence of Mr. Noga of Ecolab, Gregg told me that Motsenbocker Developments was ending its relationship with Ecolab and would like to modify the agreement with me in that the terms would be substantially the same including that I would continue to develop the product's formula and uses except that I would receive a flat 10% on all sales of the Product and that the coating I was developing would be part of the deal as well.  I accepted the offer to modify entering into the modified agreement (the "Agreement").  Immediately following the Agreement, Gregg and Mr. Noga traveled to New York to meet with Mr. Straub.

6.    Pursuant to the Agreement, as soon as Motsenbocker Developments' relationship with Ecolab ended, I ceased representing and developing the Product through Ecolab and started representing and developing it directly on behalf of Motsenbocker Developments and to develop the Product and to market it throughout the country as is detailed in the complaint especially at paragraphs 30 through

56.    I did develop the product and marketed it from 1999 to 2005.

I performed a significant amount of the development in Maryland,

but also did some of the development in the District of Columbia.

As part of my work, I wrote instruction manuals, product flyers,

and product definitions, all done in Maryland.  Also I developed

other uses and names for the Product, all done in Maryland.  From

1999 to 2005 I made eight videos demonstrating how to use the

Product.  I made these videos in Washington, D.C and two in

Maryland.  I sent these writings and videos to Motsenbocker

Developments in California who then distributed them to interested

buyers throughout the country.  With the complete knowledge and

consent of Gregg Motsenbocker, Skip Motsenbocker, and Motsenbocker

Developments I represented myself in Maryland as an agent-sales

representative of Motsenbocker Developments in Maryland.  I attach

as Exhibit B an advertisement I placed in Metal Finish Magazine,

which shows my status as an agent, and which I provided a copy to

Motsenbocker Developments.

7.    From 1999 to 2005 I communicated frequently with

Motsenbocker Developments through its agents Gregg Motsenbocker and

Skip Motsenbocker about the Product as well as about the coating.

These communications were done by telephone and mail between my

Maryland home and their offices in California.  In addition, I

traveled to their offices in California twice, once in 2003, once

*Affidavit of George Brooks—Page 5 of 9*

in 2004 into 2005, to work with Motsenbocker Developments on company matters and to work on the Product.

8.    As paragraph 72 of the complaint states, often from 1999 to 2005 both Gregg and Skip Motsenbocker told me that I would be wealthy one day from the sale of the Product.  They told me this not only when I was in California on two occasions, but often over the telephone when I was in Maryland and in other states.  In reliance on the Agreement, on these continued promises and optimistic exhortations and in reliance on my own highly-optimistic assessment of the Product, I spent over $140,000 of my own money to promote the Product, including by traveling to trade shows and producing eight videos.

9.    In May 2005, Gregg Motsenbocker, Skip Motsenbocker, and Motsenbocker Developments told me that they would not honor the Agreement, that I would receive nothing.  They did this after they had a meeting with Home Depot where they arranged for Home Depot to sell the product.  I knew about the Home Depot meeting since I was at their offices when calls were made to arrange the meeting and I boxed up and sent samples of the Product to Home Depot and trained Skip Motsenbocker on how to conduct a demonstration and how to describe and pitch the Product.

10.    Since then as a painter and sales representative with continued interest in the Product, I have discovered the Product at

Home Depot stores in Maryland and that it is being sold at Ace Hardware and Dutch Guard as well.  Under the Agreement, I am entitled to have a ten percent commission on all of sales of the Product, including of course the sale currently being done through Home Depot, Ace Hardware, and Dutch Guard.  Considering that Home Depot alone has highly-saturated the North American market (the territory covered in the Agreement), I know that substantial quantities of the Product are being sold and that my commissions on Home Depot sales alone will amount to easily a million dollars.  In addition, while working with Motsenbocker Developments I learned of a web site it maintains to promote its business.  The web site is at www.liftoffinc.com.  A search shows that no less than ten suppliers of the Product exist in Maryland including one wholesale supplier.  I have attached the pages showing this as Exhibit C.

    11.    In addition to Motsenbocker Developments' relationship to me and to Ecolab in Maryland, I do know that Motsenbocker Developments did have an agreement with a Maryland sales representative company that promoted its other products in Maryland.  I know this since in the early part of this decade I worked briefly at Motsenbocker Developments' California office where I spoke to the Maryland sales representatives on the telephone.

    12.    The key witnesses to my dealings with the defendants

*Affidavit of George Brooks—Page 7 of 9*

include:

| Witness | Location |
|---|---|
| George Brooks | Maryland |
| Vickie Masonieuve | Maryland |
| Patrick Poney | Maryland |
| Sean Siemon | Maryland |
| Walter Noga | Maryland |
| Marcel Maisonieuve | Maryland |
| Daniel Poney | Maryland |
| Theresa Poney | Maryland |
| Larry Brook | Maryland |
| Georgia Cornell | Maryland |
| Rose Sachs | Maryland |
| Mark Tetlow | Maryland |
| John Pisaini | Maryland |
| Thomas Clime | Maryland |
| Laura Brooks | Virginia |
| Douglas Earnest | Illinois |
| Michelle Earnest | Illinois |
| Charles Scamanice | Illinois |
| Gregg Motsenbocker | California |
| Skip Motsenbocker | California |
| Naomi Craft | California |

*Affidavit of George Brooks—Page 8 of 9*

13.   I declare under penalty of perjury that the foregoing is true and correct.   Executed on _July 5 2006_   .

George Brooks

2 Exhibit:
B.   Metal Finish Magazine Advertisement
C.   Pages from Motsenbocker Developments web site showing some of its suppliers in Maryland

*Affidavit of George Brooks—Page 9 of 9*

**REFERENCES**

1. Koiwa, I. et al., "Heat Change Properties of Chemically Deposited Amorphous Ni-W-P Films," *Journal of the Metal Finishing Society of Japan,* 34(12):600–603; 1983

2. Aoki, K. and O. Takano, "Corrosion Resistance of Nickel-Tungsten-Phosphorus Alloy Films Deposited on Iron by Electroless Plating," *Journal of the Metal Finishing Society of Japan,* 35(10):460–464; 1984

3. Aoki, K. and O. Takano, "Corrosion Characteristics of Crystalline And Amorphous Electroless Nickel-Tungsten-Phosphorus Deposits," *Plating & Surface Finishing,* 73(5):136–141; 1986

4. Osaka, T. et al., "Autocatalytic (Electroless) Nickel-Tungsten-Phosphorus Plating," *Metal Finishing,* 80(2):31–35; 1982

5. Stepanova, L.I. et al., "Electroless Nickel-Tungsten-Phosphorus Plating on the Surface of Gallium Arsenide Single Crystals," *Metal Finishing,* 93:1:26–28; 1995

6. Stepanova, L.I. et al.,"On Chemical and Phase Composition of Electroless Ni-W-P alloy Coatings," *Journal of Applied Chemistry,* (Russian), 69(12):1951–1956; 1996

7. Schlesinger, M., "On the Interdiffusion of Electrolessly Deposited Nickel and Gold," Proc. Symp. Electrocryst. Hollywood. Fla., pp. 221–232; Oct. 1980

8. Sviridov, V.V. et al., "Electroless metal deposition," Minsk. Universitetskoye Publ., 1987.270 P. (Russian)

**MF**

*WANT TO WRITE FOR METAL FINISHING?*
Call or write to request a copy of our guidelines for authors,
or simply contact the editor at *914-333-2571.*

## METAL FINISHING

660 White Plains Rd., Tarrytown, NY 10591, Fax: 914-333-2570

# BROOKS INDUSTRIES

## INCORPORATED

### P.O. Box 357
### New Market, MD 21774

**Metal / Wood**

**Product Sales & Service**

**Water-based Coatings & Strippers**

**George Brooks President 240-409-0947**



## ORDERS
# 1-800-346-1633 X 110 / X 119

EXHIBIT

*B*

Circle 006 on reader information card

THE INDUSTRY'S RECOGNIZED INTERNATIONAL FINISHING SOURCEBOOK

FINISHING FOR ELECTRONICS

Product Showcase: Air Pollution Control

Spotlight: Internet Services

## Retail Dealer Search Results

Click Here To Order Online

Belair Road Supply
10370 Theodore Green Blvd
White Plains MD 20695
(301) 934-1800

Central Wholesalers Inc.
6401 Virginia Manor Road
Beltsville MD 20705-0000
(301) 419-0114

Century Maintenance Supply
8700 Larkin Road Bay #44
Savage MD 20783
(240) 568-9517

City Group, Inc.
8301-D Patuxent Range Rd
Jessup MD 20794
(301) 498-6600

Hardware City
13711 Annapolis Road
Bowie MD 20715-0000
(301) 464-9030

Hardware City - White Oaks
11105 New Hampshire Ave
Silver Springs MD 20904-0000
(301) 593-3200

Hardware City Inc.
10504 Connecticut Ave
Kensington MD 20895
(301) 933-2207

Joseph's Do It Best
695 Main Street
Norwell MA 2061
(781) 659-4946

Joseph's Do It Best Hardware
817r Chief Justice Cushin
Cohasset MA 2025
(781) 383-2111

Joseph's Hardware
819 C J C Highway
Cohassett MA 2050
(781) 383-2111

La Plata Mill & Supply Co Inc
P O Box 670
La Plata MD 20646-0670
(301) 934-8161



Middleburg Millwork Inc.
P O Box 407
Middleburg VA 20118-0407
(540) 687-6318

Peoples Do It Best Supply
3200 Kenilworth Ave.
Hyattsville MD 20781-0000
(301) 927-2200

Close Window

**Commercial Dealer Search Results**

Click Here To Order Online

DAYCON PRODUCTS COMPANY
16001 TRADE ZONE AVENUE
UPPER MARLBORO MD 20774
(301) 218-1000



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **George A. Brooks et al** | ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | Civil Action No.  06cv1024 AW<br>Judge Alexander Williams, Jr. |
| **Motsenbocker Advanced Developments, Inc. et al** | ) ) ) | |
| Defendants. | ) ) | |

### Affidavit of Douglas Earnest

State of Illinois            )
                             )  ss:
County of _KENDAL_           )

I, Douglas Earnest, do hereby depose and say:

1.     I am over the age of 18 and am competent to testify and to make this affidavit and make this affidavit from personal knowledge.  I am a ~~professional metal refinisher~~ _KITCHEN REMODELER_ presently living in Illinois and am a friend and business associate of George Brooks, the plaintiff in the above-captioned lawsuit.

2.     In 1999 I was living in Maryland and was employed as a metal refinisher by Ace Metal, Inc.  I worked closely with George Brooks in that year to try to develop a biodegradable, water-based coating for metal, which coating we ultimately perfected and had manufactured and sold by Motsenbocker Advanced Developments, Inc.

3.     During that year, Mr. Brooks was a sales representative for a biodegradable, water-based stripper manufactured by

**EXHIBIT**

_D_

1

JUN-30-2006 10:54 PM    VALBERT.CABINETS    6305542388    P.02

From: Michael Treveline 202-775-1118 To: Douglas Earnest    Date: 6/28/2006 Time: 12:04:30 PM    Page 3 of 3

Motsenbocker Developments.  At first Mr. Brooks worked as a sales representative of this stripper on a contract with Motsenbocker Developments' Maryland distributor, Ecolab of Baltimore.

4.    Sometime in the spring or summer of 1999 Gregg Motsenbocker, the president of Motsenbocker Developments, was scheduled to come to Maryland to meet with Mr. Brooks and also with East-coast potential buyers.  I drove Mr. Brooks to a Marriott Hotel near BWI airport, but Mr. Motsenbocker never showed up.  We learned that he had to cancel the trip because he became ill.

5.    However, four weeks later, Mr. Motsenbocker did come to Maryland and did meet with Mr. Brooks at the same motel.  I well remember this since I picked up Mr. Brooks in Rockville, Maryland the evening before and brought him to my residence where he stayed that night.  The next morning, I brought him back to his car in Rockville on my way to work so he could drive to the Marriott Hotel to meet with Mr. Motsenbocker.  This time Mr. Motsenbocker showed up.  I spoke to Mr. Brooks later about the meeting and he was excited that he had worked out an agreement to work directly with Motsenbocker Developments on developing and selling the stripper.

I declare under the penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.  Executed on June 30, 2006, at Oswego, Illinois.

Douglas Earnest

$50 FEE PAID
#14637010.60 FEE NOT PAID
(SEND LETTER)

**ORIGINAL**
___ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JUL 1 3 2006

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

George A. Brooks, et al.,
_____
**Plaintiff(s)**

vs.

Hotsenbacher Advanced Developments Inc., et al.,
_____
**Defendant(s)**

Case No.: 8:06-cv-01024-AW

BY _____ DEPUT

\*\*\*\*\*\*

## MOTION FOR ADMISSION *PRO HAC VICE*

I, __Aaron J. Snow_____, am a member in good standing of the bar

of this Court. My bar number is __27874_____. I am moving the admission of

__Patrick Denis Webb_____ to appear *pro hac vice* in this case as

counsel for __All Defendants_____

We certify that:

1.      The proposed admittee is a member in good standing of the bars of the following State
Courts and/or United States Courts:

| Court | Date of Admission | |
|---|---|---|
| State of California | 1978 | Fed. - Central Dist. of California 1980 |
| Fed. - So. Dist. of California | 1978 | U.S. Ct. of Fed. Claims 1998 |
| U.S. Supreme Court | 1983 | |
| Ninth Circuit Ct of Appeals | 1980 | |

2.      During the twelve months immediately preceding this motion, the proposed admittee has
been admitted *pro hac vice* in this Court __0__ times.

3.      The proposed admittee has never been disbarred, suspended, or denied admission to
practice law in any jurisdiction.  (NOTE: If the proposed admittee has been disbarred,
suspended, or denied admission to practice law in any jurisdiction, then he/she must submit a
statement fully explaining all relevant facts).

4.      The proposed admittee is familiar with the Code of Professional Responsibility, the
Federal Rules of Civil and Criminal Procedure, the Federal Rules of Evidence, the Federal Rules

U.S. District Court (Rev. 01/06/2003) - Pro Hac Vice                                    Page 1 of 3



of Appellate Procedure and the Local Rules of this Court, and understands he/she shall be subject to the disciplinary jurisdiction of this Court.

5.    The proposed admittee understands admission pro hac vice is for this case only and does not constitute formal admission to the bar of this Court.

6.    Either the undersigned movant or _____, is also a member of the bar of this Court in good standing, and will serve as co-counsel in these proceedings.

7.    The $50.00 fee for admission *pro hac vice* is enclosed.  (Payment may be made by check or money order payable to: Clerk, United States District Court or by major credit card.)

8.    The completed Electronic Case Files Attorney Registration Form is enclosed.

Respectfully submitted,

| MOVANT | PROPOSED ADMITTEE |
|---|---|
| _Signature_ | _Signature_ |
| Aaron J. Snow | Patrick Denis Webb |
| Printed Name | Printed Name |
| Boies, Schiller & Flexner, LLP | Webb & Carey APC |
| Firm | Firm |
| 5301 Wisconsin Av/N/Ste 800 | 401 B Street, Ste. 806 |
| Washington DC 20015 | San Diego, CA 92101 |
| Address | Address |
| 202 - 237 - 2727 | 619 - 236 - 1650 |
| Telephone Number | Telephone Number |
| 202 - 237 - 6131 | 619 - 236 - 1283 |
| Fax Number | Fax Number |

**ORDER**

GRANTED ☐          ☐ DENIED

Date: 7-12-06

Patricia C. Cannon

Clerk, United States District Court

By: Tina Stavrou