**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **George A. Brooks et al** | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Civil Action No. 06cv1024 AW |
| **Motsenbocker Advanced Developments, Inc. et al** | ) | Judge Alexander Williams, Jr. |
| Defendants | ) | |

### Notice of Appeal

Notice is hereby given that George A. Brooks and Brooks Industries, Inc., all plaintiffs in the above-captioned case, hereby appeal to the United States Court of Appeals for the Fourth Circuit the ordered entered in this case on 8 December 2006.

Respectfully submitted,

Dated:  8 January 2007     Signed:       /s/

Michael J. Trevelline, Maryland Fed. Bar No. 14733
Address:     1823 Jefferson Place, NW
Washington, DC 20036-2504
Telephone:  (202) 737-1139/Fax:  (202) 775-1118
Email:      mjt@mjtlegal.com

**Attorney for Plaintiffs George Brooks and Brooks Industries, Inc.**

## Certificate of Service

I hereby certify that this motion and supporting memorandum this 8th day of January 2007 was served by electronic case filing through the Court

/s/

Michael J. Trevelline

**TRANSMITTAL SHEET**
**(Notice of Appellate Action)**

| | | |
|---|---|---|
| X  Notice of Filing<br>☐  Cross Appeal<br>☐  Interlocutory Appeal<br>☐  Additional NOA<br>☐  Amended NOA<br>☐  Transmittal of Record<br>_  Supplement to ROA<br>_  Transmittal of Certificate<br>_  Other | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF MARYLAND<br>AT GREENBELT<br><br>Caption:<br>George A. Brooks, et al.<br>vs.<br>Motsenbocker Advanced Developments,<br>Inc., et al. | District Court Case No.  AW 06-1024<br>4 CCA Case No.<br>Consolidated with No.<br><br>Case Manager: |

**Part I**

Notice of appeal is enclosed to all parties (except to appellant in civil cases); NOA, docket entries, district court opinion and order, and magistrate judge's recommendation (if applicable) are enclosed to 4CCA.

| | |
|---|---|
| 1.  NOA filed: 1/8/07<br><br>2.  Amended NOA filed: | 4.  Fees<br>  ☐ USA no fee required<br>$5 filing fee:       X  paid  _ unpaid<br>$450 docketing fee:   X  paid  _ unpaid<br>Pauper status:  __ granted    ☐ denied    __ pending in District Court<br>Does PLRA apply?   ☐ yes  ☐ no   3 strikes?    ☐ yes  ☐ no<br>(If PLRA applies, 4CCA sends forms and acts on application.) |
| 3.  District Judge:<br>Alexander Williams, Jr. | 5.  Materials Under Seal in District Court?    __ yes  X  no<br><br>Party Names Under Seal in District Court?   ☐ yes   __  no |
| 6.  Official Court Reporter(s):<br>Gloria Williams<br><br>For Electronically Recorded:<br>Coordinator(s):<br>Stephanie Savoy (410) 962-3928<br>Kathy Chiarizia  (301) 344-3104 | 7.  Transcript<br><br>In-Court Hearing Held?         X  yes   no |
| | 8.  Criminal/Prisoner Cases<br><br>☐ recalcitrant witness         Defendant's Address:<br>☐ on death row<br>☐ in custody<br>☐ on bond<br>☐ on probation |

**Part II**                    TRANSMITTAL OF RECORD TO COURT OF APPEALS

| ORIGINAL RECORD | SUPPLEMENT TO RECORD - SUPPLEMENT #_____ |
|---|---|
| Pleadings:      Vols._____<br>Transcript:     Vols._____<br>Exhibits:       Vols._____<br>Depositions:    Vols._____<br>State Ct. Record: Vols._____<br>Sealed:         Vols._____<br>No. of Boxes    _____ | Pleadings:      Vols._____<br>Transcript:     Vols._____<br>Exhibits:       Vols._____<br>Depositions:    Vols._____<br>State Ct. Record: Vols._____<br>Sealed:         Vols._____<br>No. of Boxes    _____ |

**Deputy Clerk:  Kathy Chiarizia    Phone:  (301) 344-3104          Date:  January 11, 2007**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **George A. Brooks et al** ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Civil Action No. 06cv1024 AW |
| **Motsenbocker Advanced Developments,** ) | Judge Alexander Williams, Jr. |
| **Inc. et al** ) | |
| Defendants ) | |
| ) | |

## Motion to Supplement the Record

Pursuant to Fed. R. App. P. 10(e)(2)(C) & 27 & Local Rule 10(e) & 27, the Plaintiffs move the Court to Supplement the record by adding the attached affidavit.

The facts and legal grounds on which this motion is based are:

1.    The Defendants filed a Motion to Dismiss for lack of personal jurisdiction. Attached to Appellant's 7 July 2006 opposition as Exhibit A was an affidavit by Appellant George Brooks describing at paragraph 5 a 1999 meeting between George Brooks and Defendant Gregg Motsenbocker, at which meeting the agreement Plaintiffs are suing under was entered into. Defendant Gregg Motsenbocker denied a Maryland meeting took place. (Gregg Motsenbocker Affidavit attached to Motion to Dismiss ¶ 8.) Plaintiffs in their opposition memoranda of law and oral argument argued that the fact of the Maryland meeting was significant.

2.    Plaintiff George Brooks has since realized that he was mistaken, the meeting did not take place in Maryland near the Baltimore Washington International Airport, but rather took place

in Virginia near the Regan National Airport.  To fulfill his duty of candor to this Court, undersigned counsel is obliged to notify the Court of the correct facts.  To that end, Plaintiffs ask the Court to order that the attached affidavit of George Brooks supplementing the error be made apart of the record.

3.    This Court's decision is presently on appeal before the Fourth Circuit Court of Appeals.  Plaintiffs filed a Motion to Correct the Record before the Fourth Circuit.  The Fourth Circuit denied the motion, and Plaintiffs provide the Order as Attachment B.  In the Order the Fourth Circuit notes that the denial is without prejudice to Plaintiffs filing a motion to supplement the record before this Court.

Respectfully submitted,

Dated: 15 March 2007    Signed:    _/s/_____
                                    Michael J. Trevelline, Maryland Fed. Bar No. 14733
                        Address:    1823 Jefferson Place, NW
                                    Washington, DC 20036-2504
                        Telephone:  (202) 737-1139/Fax:  (202) 775-1118
                        Email:      mjt@mjtlegal.com

**Attorney for Plaintiffs George Brooks and Brooks Industries, Inc.**

## Certificate of Attempted Consent

I hereby certify that consent for the relief sought in this motion was diligently sought but was refused.

_/s/_____
Michael J. Trevelline

## Certificate of Service

I hereby certify that this motion and supporting memorandum this 15 March 2007 was served by electronic case filing through the Court

_/s/_____

-2-

Michael J. Trevelline

## Memorandum of Points and Authorities in Support of Motion

Fed. R. App. P. 10(e)(2)(C) provides for a motion to correct be submitted to the Court of Appeal to correct "anything material . . . [that] is . . . misstated in the record by error or accident . . . ." As described in the Complaint and in the Memoranda in opposition to the Motion to Dismiss, the suit centers on breach of a contract entered into at this alleged meeting, and the place of the meeting has some bearing on whether personal jurisdiction exists over the Defendants. Therefore, for the Court of Appeals to determine the jurisdiction question, it should have before it the corrected claim of Plaintiffs as to the place of the meeting. Judicial efficiency will be greatly served by such an order— without the corrected facts before it, the decision of the Court of Appeals may be of limited value.

**In conclusion,** Plaintiffs request of the Court an order that the record be supplemented to include the enclosed affidavit so that the Court of Appeals can issue an opinion on the facts.

Respectfully submitted,


Dated: 15 March 2007

Signed: _____/s/_____
Michael J. Trevelline, Maryland Fed. Bar No. 14733
Address:     1823 Jefferson Place, NW
             Washington, DC 20036-2504
Telephone:   (202) 737-1139/Fax: (202) 775-1118
Email:       mjt@mjtlegal.com

**Attorney for Plaintiffs George Brooks and Brooks Industries, Inc.**

3 Exhibit:
A. Affidavit of George Brooks
B. 7 March 2007 Fourth Circuit Order
C. Proposed Order

-3-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **George A. Brooks et al** ) | |
| Plaintiffs, ) | |
| vs. ) | Civil Action No. 06cv1024 AW |
| **Motsenbocker Advanced Developments, Inc. et al** ) | Judge Alexander Williams, Jr. |
| Defendants ) | |

### <u>Affidavit of George Brooks</u>

District of Columbia    )
                        ) ss:
City of Washington      )

   I, George Brooks, being duly sworn, do hereby depose and say:

   1.   I am over the age of 18 and am competent to testify and to make this affidavit and make this affidavit from personal knowledge. I am a plaintiff in the above-captioned lawsuit.

   2.   After attending oral arguments held on 5 December 2006 on the question of personal jurisdiction, I realized that I had made a mistake. The meeting between myself and Mr. Greg Motsenbocker in 1999 did not take place in Maryland at the Marriott Hotel outside BWI Airport as I reported. Rather it took place at a Hyatt Hotel outside of Regan National Airport in Virginia.

   3.   I believe I made this error since as I described in my first affidavit, a meeting was initially scheduled with Mr. Motsenbocker, which he cancelled because of medical problems. That



*Affidavit of George Brooks—Page 1 of 2*

meeting was to take place at the Marriott Hotel, where I went to

meet him only to find out he was ill.

    4.   I declare under penalty of perjury that the foregoing is

true and correct.  Executed on _1/3/ 2007_____.

_____

George Brooks

FILED:   March 7, 2007

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1033
(8:06-cv-01024-AW)

GEORGE A. BROOKS; BROOKS INDUSTRIES, Inc.,

Plaintiffs - Appellants,

versus

MOTSENBOCKER ADVANCED DEVELOPMENTS, INC.;
GREGG A. MOTSENBOCKER; SKIP A. MOTSENBOCKER,

Defendants - Appellees.

O R D E R

Appellants have filed a motion to correct the record, with an attachment consisting of the affidavit of George Brooks. Appellees have filed a response in opposition to the motion.

The Court denies the motion without prejudice to the filing of a motion to supplement the record on appeal in district court pursuant to Rule 10(e) of the Federal Rules of Appellate Procedure and Local Rule 10(e).

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

EXHIBIT
B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**George A. Brooks et al**      )
                          )
     Plaintiffs,         )
                          )     Civil Action No. 06cv1024 AW
       vs.            )     Judge Alexander Williams, Jr.
                          )
**Motsenbocker Advanced Developments,** )
**Inc. et al**                    )
     Defendants.        )
                          )

## Order

    This matter came before the Court upon Plaintiffs' Motion to Supplement the Record, and it appearing that good cause exists for such motion;

    IT IS THEREFORE ORDERED, that the motion be, and it is, hereby GRANTED.

    The affidavit of George Brooks found at Exhibit A to Plaintiffs' Motion to Supplement the Record is made a part of the record of these proceedings.

Dated:_____         _____
                         The Honorable Alexander Williams, Jr.

Copies to:

Michael J. Trevelline
Attorney-at-Law
1823 Jefferson Place, NW
Washington, DC  20036-2504

Aaron J. Snow
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, NW, Suite 800
Washington, DC  20015

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

GEORGE A. BROOKS, *et al.*,                    *

           Plaintiffs,                    *

        v.                    *          Civil Action No. AW-06-1024

MOTSENBOCKER ADVANCED
DEVELOPMENTS, INC., *et al.*,                    *

          Defendants.                    *

* * * * *

## ORDER

HAVING CONSIDERED the Motion to Supplement the Record (Paper No. 28) filed by

Plaintiffs, the Court finds that Plaintiffs have not presented any cogent reason for granting this

motion. Therefore, IT IS this **26ᵗʰ day of March, 2007**, by the United States District Court for the

District of Maryland, hereby **ORDERED:**

1.    That the Motion to Supplement the Record (Paper No. 28) BE, and the same hereby

      IS, **DENIED**; AND

2.    That the Clerk of the Court transmit a copy of this Order to all counsel of record.


                                      /s/
                             Alexander Williams, Jr.
                             United States District Court

JUDGMENT

FILED: August 2, 2007

UNITED STATES COURT OF APPEALS

for the

Fourth Circuit

No. 07-1033
8:06-cv-01024-AW

GEORGE A. BROOKS; BROOKS INDUSTRIES, INC.

Plaintiffs - Appellants

v.

MOTSENBOCKER ADVANCED DEVELOPMENTS, INC.; GREGG A.
MOTSENBOCKER; SKIP A. MOTSENBOCKER

Defendants - Appellees

--------------------
Appeal from the United States District Court for the
District of Maryland at Greenbelt
--------------------

In accordance with the written opinion of this Court
filed this day, the Court vacates the judgment of the District
Court.  This case is remanded to the District Court for further
proceedings consistent with the Court's opinion.

A certified copy of this judgment will be provided to the
District Court upon issuance of the mandate.  The judgment will
take effect upon issuance of the mandate.

/s/ Patricia S. Connor
_____
CLERK

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 07-1033**

─────────────

GEORGE A. BROOKS; BROOKS INDUSTRIES, INC.,

Plaintiffs - Appellants,

versus

MOTSENBOCKER  ADVANCED  DEVELOPMENTS,  INC.;
GREGG A. MOTSENBOCKER; SKIP A. MOTSENBOCKER,

Defendants - Appellees.

─────────────

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.  Alexander Williams, Jr., District Judge.
(8:06-cv-01024-AW)

─────────────

Submitted:  July 20, 2007            Decided:  August 2, 2007

─────────────

Before TRAXLER and SHEDD, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

─────────────

Vacated and remanded by unpublished per curiam opinion.

─────────────

Michael J. Trevelline, Washington, D.C., for Appellants. Patrick D.
Webb, WEBB & CAREY, San Diego, California; Aaron J. Snow, BOIES,
SCHILLER & FLEXNER, LLP, Washington, D.C., for Appellees.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

George A. Brooks ("Brooks") and Brooks Industries, Inc. (collectively "Plaintiffs") sued Motsenbocker Advanced Developments, Inc. ("Motsenbocker"), Gregg A. Motsenbocker ("Gregg"), and Skip Motsenbocker (collectively "Defendants"), for breach of contract, misrepresentation, and related claims. Plaintiffs are located in Maryland and the Defendants in California. Brooks alleged by affidavit that Gregg traveled to Maryland and made him the exclusive nationwide sales representative for some of its products. Under the agreement reached, Brooks alleged he was to receive a percentage of sales of the products as a commission. Defendants moved to dismiss the action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Defendants supported their motion with a sworn declaration from Gregg, President of Motsenbocker, specifically denying that he had ever traveled to Maryland to meet with Brooks or had agreed to make him a sales representative for its products.

The district court held a hearing on the motion and listened to the arguments of counsel; the hearing, however, did not include any witness testimony or otherwise resolve the factual dispute between Brooks and Gregg regarding the disputed meeting and agreement reached while in Maryland. Thereafter, the district court issued a written memorandum granting Defendants' motion to dismiss and finding that Brooks failed to prove the existence of

- 2 -

personal jurisdiction by a preponderance of the evidence.  Brooks timely appeals.  For the reasons that follow, we vacate and remand.

When a defendant files a motion to dismiss under Fed. R. Civ. P. 12(b)(2), challenging the court's personal jurisdiction, the question is one for the judge and the plaintiff, as the party invoking the court's jurisdiction bears the burden of establishing the necessary jurisdictional facts, e.g. the existence of minimum contacts between the defendant and the forum state.  Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); see Myland Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993).  Where the jurisdictional facts are disputed, however, the court may either resolve the issue in a separate evidentiary hearing or defer ruling pending receipt at trial of evidence relevant to jurisdiction. Combs, 886 F.2d at 676.  If the court rules on the basis of the motion papers alone, the plaintiff need only make a prima facie showing of a sufficient jurisdictional basis.  Id.  The court, in deciding whether a plaintiff has met this burden, must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.  Id.; Wolf v. Richmond County Hosp. Auth., 745 F.2d 904, 908 (4th Cir. 1984).

Here, the district court ruled only on the papers before it, but required Brooks to prove jurisdiction by a preponderance of the evidence in violation of Combs.  See Combs, 886 F.2d at 676.

- 3 -

Moreover, summary disposition should not be made based on conflicting affidavits. See <u>Davis v. Zahradnick</u>, 600 F.2d 458, 460 (4th Cir. 1979) (summary judgment is inappropriate when affidavits present conflicting facts requiring credibility determinations). Rather, because the jurisdictional facts were disputed by conflicting sworn documents, the court should have either resolved the issue in a separate evidentiary hearing or deferred ruling pending receipt at trial of evidence relevant to jurisdiction. <u>Combs</u>, 886 F.2d at 676.

Accordingly, we vacate the district court's order granting Defendants' motion to dismiss under Rule 12(b)(2) and remand for proceedings consistent with this opinion. We decline to address the other issues raised on appeal and dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>VACATED AND REMANDED</u>


**CT**
a Wolters Kluwer business

CT
300 E. Lombard Street
Suite 1400
Baltimore, MD 21202

410 539 2837 tel
410 332 1178 fax
www.ctlegalsolutions.com

August 16, 2007

FILED

AUG 2 1 2007

Michael J. Trevelline
1823 Jefferson Place, NW,
Washington, DC 20036

Re: Brooks, et al., Pltfs. vs. Motsenbocker Advanced Developments, Inc., et al., Dfts. // To: Verizon

Case No. 07-0773    AW-06-1024

Dear Sir/Madam:

We are herewith returning the Subpoena, Service Form which we received regarding the above captioned matter.

Our records indicate that we represent more than one entity beginning with the name: (Verizon). In order that we may properly process the enclosed documents(s), we must be provided with the full name of the entity for which it is intended.

Should you make this determination, please note the full name of the entity on the envelope, return the document(s) to us and we will be glad to forward it on.

Very truly yours,

Leona Jones
Process Specialist

Log# 512504277

cc: US District Court for the District of Maryland (Southern Division)
    6500 Cherrywood Lane,
    Greenbelt, MD 20770

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

FILED
August 24, 2007

No. 07-1033
8:06-cv-01024-AW

RECEIVED

AUG 2 9

Al GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
B_____DEPUTY

GEORGE A. BROOKS; BROOKS INDUSTRIES, INC.

Plaintiffs - Appellants

v.

MOTSENBOCKER ADVANCED DEVELOPMENTS, INC.; GREGG A.
MOTSENBOCKER; SKIP A. MOTSENBOCKER

Defendants - Appellees

M A N D A T E

The judgment of this Court, entered 8/2/07, takes effect
this date

A certified copy of this Court's judgment and a copy of
decision are issued to the district court and constitute the
mandate of this Court.

/s/ Patricia S. Connor
------------------------
CLERK

JUDGMENT

FILED: August 2, 2007

## UNITED STATES COURT OF APPEALS

### for the

Fourth Circuit

RECEIVED

AUG 2 9 2007

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

No. 07-1033
8:06-cv-01024-AW

GEORGE A. BROOKS; BROOKS INDUSTRIES, INC.

Plaintiffs - Appellants

v

MOTSENBOCKER ADVANCED DEVELOPMENTS, INC.; GREGG A.
MOTSENBOCKER; SKIP A. MOTSENBOCKER

Defendants - Appellees

---------------------

Appeal from the United States District Court for the
District of Maryland at Greenbelt

---------------------

In accordance with the written opinion of this Court
filed this day, the Court vacates the judgment of the District
Court. This case is remanded to the District Court for further
proceedings consistent with the Court's opinion.

A certified copy of this judgment will be provided to the
District Court upon issuance of the mandate. The judgment will
take effect upon issuance of the mandate.

/s/ Patricia S. Connor

_____

CLERK

A True Copy, Teste:
Patricia S. Connor, Clerk
BY _Anthony W. Webb_
Deputy Clerk

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 07-1033**

─────────────

GEORGE A. BROOKS; BROOKS INDUSTRIES, INC.,

Plaintiffs - Appellants,

versus

MOTSENBOCKER ADVANCED DEVELOPMENTS, INC.;
GREGG A. MOTSENBOCKER; SKIP A. MOTSENBOCKER,

Defendants - Appellees.

─────────────

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Alexander Williams, Jr., District Judge.
(8:06-cv-01024-AW)

─────────────

Submitted: July 20, 2007                    Decided: August 2, 2007

─────────────

Before TRAXLER and SHEDD, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

─────────────

Vacated and remanded by unpublished per curiam opinion.

─────────────

Michael J. Trevelline, Washington, D.C., for Appellants. Patrick D.
Webb, WEBB & CAREY, San Diego, California; Aaron J. Snow, BOIES,
SCHILLER & FLEXNER, LLP, Washington, D.C., for Appellees.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

George A. Brooks ("Brooks") and Brooks Industries, Inc. (collectively "Plaintiffs") sued Motsenbocker Advanced Developments, Inc. ("Motsenbocker"), Gregg A. Motsenbocker ("Gregg"), and Skip Motsenbocker (collectively "Defendants"), for breach of contract, misrepresentation, and related claims. Plaintiffs are located in Maryland and the Defendants in California. Brooks alleged by affidavit that Gregg traveled to Maryland and made him the exclusive nationwide sales representative for some of its products. Under the agreement reached, Brooks alleged he was to receive a percentage of sales of the products as a commission. Defendants moved to dismiss the action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Defendants supported their motion with a sworn declaration from Gregg, President of Motsenbocker, specifically denying that he had ever traveled to Maryland to meet with Brooks or had agreed to make him a sales representative for its products.

The district court held a hearing on the motion and listened to the arguments of counsel; the hearing, however, did not include any witness testimony or otherwise resolve the factual dispute between Brooks and Gregg regarding the disputed meeting and agreement reached while in Maryland. Thereafter, the district court issued a written memorandum granting Defendants' motion to dismiss and finding that Brooks failed to prove the existence of

- 2 -

personal jurisdiction by a preponderance of the evidence. Brooks timely appeals. For the reasons that follow, we vacate and remand.

When a defendant files a motion to dismiss under Fed. R. Civ. P. 12(b)(2), challenging the court's personal jurisdiction, the question is one for the judge and the plaintiff, as the party invoking the court's jurisdiction bears the burden of establishing the necessary jurisdictional facts, e.g. the existence of minimum contacts between the defendant and the forum state. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); see Myland Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993). Where the jurisdictional facts are disputed, however, the court may either resolve the issue in a separate evidentiary hearing or defer ruling pending receipt at trial of evidence relevant to jurisdiction. Combs, 886 F.2d at 676. If the court rules on the basis of the motion papers alone, the plaintiff need only make a prima facie showing of a sufficient jurisdictional basis. Id. The court, in deciding whether a plaintiff has met this burden, must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. Id.; Wolf v. Richmond County Hosp. Auth., 745 F.2d 904, 908 (4th Cir. 1984).

Here, the district court ruled only on the papers before it, but required Brooks to prove jurisdiction by a preponderance of the evidence in violation of Combs. See Combs, 886 F.2d at 676.

- 3 -

Moreover, summary disposition should not be made based on conflicting affidavits. See Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979) (summary judgment is inappropriate when affidavits present conflicting facts requiring credibility determinations). Rather, because the jurisdictional facts were disputed by conflicting sworn documents, the court should have either resolved the issue in a separate evidentiary hearing or deferred ruling pending receipt at trial of evidence relevant to jurisdiction. Combs, 886 F.2d at 676.

Accordingly, we vacate the district court's order granting Defendants' motion to dismiss under Rule 12(b)(2) and remand for proceedings consistent with this opinion. We decline to address the other issues raised on appeal and dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

VACATED AND REMANDED

- 4 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GEORGE A. BROOKS, et al., | ) | Case No. 8:06-cv-01024-AW |
| | ) | |
| Plaintiffs, | ) | **SUPPLEMENTAL FILING REGARDING** |
| vs. | ) | **DEFENDANTS' MOTION TO DISMISS OR** |
| | ) | **TRANSFER** |
| MOTSENBOCKER ADVANCED | ) | |
| DEVELOPMENTS, INC., et al., | ) | Judge Alexander Williams |
| | ) | Greenbelt Division |
| Defendants. | ) | |

## SUPPLEMENTAL FILING REGARDING DEFENDANTS' MOTION TO DISMISS OR TRANSFER

Defendants submit this supplemental brief to apprise the Court formally of the parallel proceeding initiated by Plaintiffs in this matter in the United States District Court for the Southern District of California, and, in light of that development, to recast our pending motion – which requested dismissal or, in the alternative, transfer to that very district (Paper No. 10) – and ask that the court first consider transfer, which is now more appropriate and, if granted, would moot the question of dismissal and effect the same result without the need for an evidentiary hearing.

As noted in our conference call of August 8, 2007, Plaintiffs on April 27 filed, in the Southern District of California, a complaint substantially identical to the complaint in this case. *See Brooks v. Motsenbocker*, Case No. 07-cv-773 (S.D. Cal.). The Southern District of California is, of course, the venue to which Defendants requested that this case be transferred in the first place when they moved to dismiss or transfer. In the California case, discovery is already underway: Requests for production, interrogatories, and subpoenas have all been served.

Meanwhile, the Fourth Circuit's recent judgment here, vacating this court's dismissal for lack of jurisdiction, appears to instruct the Court to hold an evidentiary hearing on the question of jurisdiction; and Plaintiffs have stated that, before any such hearing, they require discovery to establish jurisdictional facts.

Defendants submit that, given the changed circumstances in this case, transfer would be more appropriate and expeditious than proceeding with discovery and an evidentiary hearing here. It is well-established that when determining whether to transfer an action, a court is vested with wide discretion. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955); *King v. Johnson Wax Assocs, Inc.*, 565 F. Supp. 711, 719 (D. Md. 1983) (citing *Paesch v. Winter,* 366 F.2d 756 (4th Cir. 1966)). "In determining whether to grant a motion to transfer, courts are to consider: 1) the weight accorded the plaintiff's choice of venue; 2) witness convenience and access; 3) convenience of the parties; and 4) the interest of justice." *Howard Univ. v. Watkins*, C.A. No. DKC 2006-2076, 2007 U.S. Dist. LEXIS 17167 (D. Md. March 12, 2007) (citing *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005)).

Transfer is now even more appropriate than it was when Defendants first filed their motion. Given the progress of the case in the Southern District of California, it makes no sense to proceed in parallel in the District of Maryland. If this court neither dismisses nor transfers this case, there will exist parallel proceedings on the same matter in two districts. But whether this court dismisses or transfers this action, the result will be identical: The case will still proceed in California. Transfer now would avoid wasting this court's and both parties' resources on the hearing, attendant jurisdictional discovery, and any further consideration of dismissal. "[A] district court can transfer a case regardless of whether it has jurisdiction over the Defendant, if the interests of justice support transfer over dismissal." *Paratek*

2

*Microwave, Inc. v. Agile Materials & Techs., Inc.*, Civil No. WMN-04-2534, 2005 U.S. Dist. LEXIS

37688, *16 (D. Md. June 7, 2005) (footnotes omitted).

Moreover, having filed in California without even waiting for the Fourth Circuit to rule on their

appeal, Plaintiffs themselves chose another venue, and can hardly now argue that that forum is somehow

inconvenient, inappropriate, or not of their own choosing. *See, e.g., Inline Connection Corp. v. Verizon*

*Internet Servs.*, 402 F. Supp. 2d 695, 701, 702 (E.D. Va. 2005) (where "two cases involving precisely

the same issues are simultaneously pending in different District Courts," "Plaintiff cannot contend that

the Delaware forum is inconvenient when it chose to litigate there ... .") (citing *In Continental Grain*

*Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)).  The situation here is not dissimilar to that in *Affinity*

*Memory & Micro, Inc. v. K&Q Enters.*, 20 F. Supp. 2d 948 (E.D. Va. 1998): as here, cases involving the

same parties, facts and allegations were proceeding in two federal courts at once.  In *Affinity Memory &*

*Micro*, the court concluded:

> It is pellucidly clear that two essentially similar federal actions in separate
> fora should not continue in parallel fashion; only one should go forward.
> Because this is the first-filed action, the jurisdiction and transfer issues
> should be decided here first. Personal jurisdiction over defendant here is
> doubtful. Given this, and given that the action in Minnesota is further
> along and that it appears that plaintiff has waived any defects in personal
> jurisdiction in the Minnesota action, transfer to the United States District
> Court for the District of Minnesota is appropriate.

*Id.* at 955-56.

3

Defendants therefore request that the court at this time consider their motion for transfer, which, if granted, would moot Defendants' motion to dismiss.

Dated: September 5, 2007          By:      /s/ _____
                                           Aaron J. Snow, Bar No. 27814
                                           Boies, Schiller & Flexner LLP
                                           5301 Wisconsin Ave., N.W., Ste. 800
                                           Washington, D.C. 20015
                                           Tel: 202-237-2727
                                           Fax: 202-237-6131
                                           asnow@bsfllp.com

                                           Patrick D. Webb, admitted *pro hac vice*
                                           Webb & Carey
                                           401 B Street, Ste. 306
                                           San Diego, CA  92101
                                           Tel: 619-236-1650
                                           Fax: 619-236-1283
                                           pwebb@webbcarey.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| George A. Brooks et al | ) |
| Plaintiffs, | ) |
| vs. | ) Civil Action No. 06cv1024 AW |
| | ) Judge Alexander Williams, Jr. |
| Motsenbocker Advanced Developments, Inc. et al | ) |
| Defendants. | ) |

## Opposition to Supplemental Filing

## Regarding Defendants' Motion to Dismiss or Transfer

Plaintiffs file this opposition to Defendants' Supplemental Filing in order to correct the errors made by Defendants therein. To decide to transfer under the law and considerations argued by Defendants would be reversible error. Moreover, since Defendants Supplemental Filing makes no case for the need to transfer and since the Defendants are obliged to make "a strong case" for the need to transfer, it is legally impossible for this Court to transfer this case.

### 1.   The "First-Filed" Rule

Defendants have failed to apprise the Court of the "first-filed" rule, a rule weighing heavily on the decision Defendants are asking the Court to make.  This rule holds that later-filed actions are generally stayed while an earlier filed action is litigated, or the courts transfer the later filed action to the first filed action.  See Peregrine Corp. v. Peregrine Indus., Inc., 769 F.Supp.

*Page 1*

169, 171 (E.D. Pa. 1991).  "Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." Id. at 171-72.  The Court has before it no exceptional circumstances.  This Court is obliged to stay the California action as soon as it determines that personal jurisdiction over defendants exist in Maryland.

## 2.  Preservation of Statute of Limitations

Defendants argue—almost exclusively—that this Court should transfer this action to California under 28 U.S.C. 1404(a) since Plaintiffs filed a later action in California that is ongoing. (Supplemental Filing passim.)  Plaintiffs refer the Court to pages 23 to 25 of its Memorandum of Points and Authorities in Opposition to Defendants' original motion.  There in considerable detail the factors that courts look to in deciding a section 1404(a) motion are stated and discussed—something completely lacking from Defendants' Supplemental Filing.  Quite significantly the factors do not permit a court to punish a plaintiff for refilling a dismissed case in order to forestall a statute of limitations defense—what the Plaintiffs have done here—so that Defendants' entire Supplemental Filing is fallacious.

The decision the Defendants rely on is factually inapposite to the question before this Court—Affinity Memory & Micro, Inc. v. K & Q Enters., 20 F.Supp.2d 948 (E.D. Va. 1998).  In that case, the court did indeed find it significant that the plaintiff had filed an identical second action.  However, Defendants have failed to apprise this Court of the key fact—the second action was filed only "[t]wo weeks later … ." Id. at 951.  This failure by the Defendants would result in a troubling injustice, a certainly

*Page 2*

reversible injustice.  For it would allow courts to punish plaintiffs for seeking to forestall statute of limitations defenses and re-file when a suit has been dismissed.  California Code of Civil Procedure Section 339 provides for a two year statute of limitations applicable to breach of an oral contract.  The Complaint at paragraph 61 alleges that Defendants breached the oral contract in May 2005 so that the statute would run in May of 2007, just days before the California action was filed on 27 April 2007.

Defendants entire Supplemental Filing, then, is highly fallacious and to be disregarded.

### 3.  Defendants Failure to Inform this Court of an Interdict Imposed on Defendants Prohibiting Defendants from Presenting Certain Evidence

Also significant is Defendants' failure to inform this Court that they have been prohibited from presenting significant evidence in the California litigation and apparently in this litigation as well.  Defendants describe to this Court the status of the California litigation:  "discovery is already underway:  Requests (sic) for production, interrogatories, and subpoenas have all been served."  (Supplemental Filing p. 1.)  Defendants fail to inform this Court of an interdict that has been laid on them in the California litigation, a prohibition applying to this litigation as well.

By Order dated 27 June 2007, the California court ordered that Rule 26(a)(1)(A-D) initial disclosures be made on or before 30 July 2007.  (Order attached as Exhibit A.)  Defendants have failed to make any initial disclosures, even though they are weeks overdue.  This failure has resulted in an automatic prohibition of Defendants

from entering into evidence anything that should have been
disclosed.  Rule 37(c)(1); <u>Chalick v. Cooper Hosp./Univ. Med. Ctr.</u>,
192 F.R.D. 145, 151 (D. NJ 2000).  The language of Rule 37(c)(1) is
quite broad and appears to prohibit Defendants from entering any
such evidence in this proceeding as well as the California
proceeding.  Therefore, this Court cannot consider any evidence
presented by Defendants that should have been disclosed until and
unless Defendants file a motion in the California litigation
seeking relief from the automatic prohibition and that court grants
some such relief.

### 4.    Section 1404(a) private and public factors

Plaintiffs refer the Court to pages 23 to 25 of its Memorandum
of Points and Authorities in Opposition to Defendants' original
motion.  The analysis presented there still stands.  The
Motsenbockers have defrauded Brooks, a man of slim means, of
hundreds of thousands, nay millions of dollars, in commissions so
that the Motsenbockers control these significant fruits of their
fraud and so have an enormous advantage in this litigation.  This
is a factor that weighs heavily on this Court's analysis.  (Private
factor number 4 found on page 24 of original opposition to motion.)
In addition, Brooks has submitted his witness list in the
California litigation (attached as Exhibit B) as part of his
initial disclosures.  The number of Maryland and East-Coast
witnesses militates in favor of continuing the litigation in
Maryland.

### 5.    Legally Impossible to Rule in Favor of Defendants

The burden is on the Defendants to make "a strong case" for the
need to transfer.  <u>Celanese Corp. v. Fed. Energy Admin.</u>, 410

F.Supp. 571, 575 (D.D.C. 1976). The Defendants sole argument in its Supplemental Filing rested on the fallacious premise that this Court should punish plaintiffs for complying with statute of limitations requirements. Therefore, it is almost impossible for Defendants to have carried the burden of proof and to have made a "strong case."

### 6.  Conclusion

WHEREFORE, since an assessment of section 1404(a) considerations militate so heavily in favor of not transferring jurisdiction, and since Defendants have made virtually no case let alone a "strong case" in favor of transfer, the motion of Defendants must be denied.

Respectfully submitted,

Dated:  11 September 2007     Signed:     ___/s/_____
                                          Michael J. Trevelline, Maryland Fed. Bar No. 14733
                             Address:     1823 Jefferson Place, NW
                                          Washington, DC 20036-2504
                             Telephone:   (202) 737-1139/Fax:  (202) 775-1118
                             Email:       mjt@mjtlegal.com

**Attorney for Plaintiffs George Brooks and Brooks Industries, Inc.**

2 Exhibit:
A.  Order dated 27 June 2007
B.  Initial Disclosures of Plaintiffs

### Certificate of Service

I hereby certify that the **foregoing this 11 September 2007** was served by electronic case filing through the Court

___/s/_____
Michael J. Trevelline

*Page 5*

1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                        **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| GEORGE A. BROOKS; BROOKS INDUSTRIES, INC., | ) ) ) | Civil No. 07cv773 BTM (NLS) |
| Plaintiff, v. | ) ) ) ) ) | **ORDER FOLLOWING EARLY NEUTRAL EVALUATION CONFERENCE, SETTING RULE 26 COMPLIANCE, AND NOTICE OF** |
| MOTSENBOCKER ADVANCED DEVELOPMENTS, INC.; GREGG A. MOTSENBOCKER; SKIP A. MOTSENBOCKER, | ) ) ) ) ) | ***TELEPHONIC* CASE MANAGEMENT CONFERENCE** |
| Defendants. | ) ) ) | |

17

18          On June 27, 2007, an Early Neutral Evaluation Conference (ENE) was scheduled in this matter.

19   For reasons explained in the Order to Show Cause that this Court also issued on this date, the ENE did

20   not occur. The Court now issues the following orders:

21          1.    Counsel are ordered to appear **telephonically** on ***August 10, 2007 at 10:30 a.m.*** before

22   Magistrate Judge Stormes for a Case Management Conference pursuant to Federal Rule of Civil

23   Procedure 16(b). Plaintiff's counsel shall initiate the telephonic conference.

24          2.    The Rule 26(f) conference shall be completed on or before ***July 16, 2007***.

25          3.    A Joint Discovery Plan shall be lodged with Magistrate Judge Stormes on or before

26   ***July 26, 2007***. (The date and time for the CMC should be included in the caption of the Joint Discovery

27   Plan.)

28   ///

**EXHIBIT**

**A**

1                                                                          07cv773 BTM (NLS)

1      4.      The date of initial disclosure pursuant to Rule 26(a)(1)(A-D) shall occur on or before

2  *July 30, 2007.*

3      Plaintiff's counsel shall serve a copy of this order on all parties that enter this case hereafter.

4  Each responsible attorney of record and all parties representing themselves shall participate in the

5  conference. Represented parties need not participate.

6      Failure of any counsel or party to comply with this order will result in sanctions.

7      **IT IS SO ORDERED.**

8  DATED: June 27, 2007

9

10                 Hon. Nita L. Stormes
                U.S. Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv773 BTM (NLS)

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **George A. Brooks et al**<br><br>Plaintiffs,<br><br>vs.<br><br>**Motsenbocker Advanced Developments, Inc. et al**<br><br>Defendants | Civil Action No.  2007 CV 0773 BTM NLS<br>Judge Barry Ted Moskowitz<br>Magistrate Judge Nita L. Storms |

### Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1)

**Plaintiffs,** through counsel, **make** the following disclosures pursuant to the provisions of Rule 26(a)(1) of the Federal Rules of Civil Procedure:

### Introductory Statement

The following disclosures are based on the information reasonably available to the disclosing party or parties as of this date.  The disclosing party or parties' disclosures represent a good faith effort to identify individuals and documents it reasonably believes are relevant to the disputed facts identified with particularity in the pleadings.  By making these disclosures, the disclosing party or parties do not represent that they are identifying every document, tangible thing or witness possibly relevant to this lawsuit.

The disclosing party or parties' disclosures are made without waiving: (1) the right to object to production of any document or tangible thing disclosed herein on the basis of privilege, the work product doctrine, relevance or any other valid ground; and (2) the right to object on the grounds of competence, privilege, relevance and materiality, hearsay or any other proper ground to the use of this information, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action; and (3) the right to object on any and all grounds, at any time, to any other discovery request or proceeding involving or relating to the subject matter of these disclosures.

### Disclosures

A.  The name and, if known, the address and telephone number of each individual likely to have

-1-

07cv0773



discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information are set forth as follows:

1.  George Brooks, 4913 Lackwanna Street, College Park, MD 20740, (301)345-4776. Mr. Brooks will testify to substantially all of the facts alleged in the complaint.

2.  Vickie Maisonieuve, 15714 Saint Thomas Church Road, Upper Marlboro, MD 20772, (301) 627-2427. Ms. Maisonieuve will testify that she has knowledge of several of the trips that Mr. Brooks took to promote and develop the Product and what the Product consisted of.

3.  Patrick Poney, 20015 Sweetgum Circle, Apt. 44, Germantown, MD 20874, (301) 972-1741. Mr. Poney will testify that he was trained to work with the Product, helped with demonstrations of the Product, traveled to do so.

4.  Sean Siemon, 124 North Ridge Avenue, Greencastle, PA 17225, (717) 643-0507/(301) 573-1083. Mr. Siemon will testify that he was trained to use the Product, used the Product, demonstrated the Product at various locations, witnessed Defendants provide the Product to Plaintiff so that Plaintiff could change the labels.

5.  Walter Noga, P.O. Box 2005, Annapolis Junction, MD 20701, (800) 638-0828. Mr. Noga will testify to the facts of the Motsenbocker Advanced Developments-Ecolab contract, the Motsenbocker Developments-Ecolab-Brooks contract certain efforts to promote the Product done with Gregg Motsenbocker and George Brooks, and Mr. Brooks' development of the Product.

6.  Marcel Maisoneuve , P.O. Box 113, Broomes Island, MD 20615, (717) 830-1018, (301) 220-0686. Mr. Maisonneuve will testify to the facts concerning the production of the videos, training to use the Product, and use of the Product.

7.  Daniel Poney, 4705 Flower Valley Drive, Rockville, MD 20853, (301) 929-1571. Mr. Poney will testify concerning Mr. Brooks' development of sales materials for the Product and development of the Product.

8.  Theresa Poney, 4705 Flower Valley Drive, Rockville, MD 20853, (301) 929-1571. Ms. Poney will testify concerning Mr. Brooks' development of sales materials for the Product and development of the Product.

*07cv0773*

9.  Larry Brooks, 5211 Pinewilde Drive, Houston, TX  77066, (281) 610-2180.  Mr. Brooks will testify to substantially all of the allegations of the Complaint.

10. Georgia Cornell, 4776 Lackawanna Street, College Park, MD  20740.  Ms. Cornell will testify that Mr. Brooks worked to develop the Product and received shipments from Defendants.

11. Rose Sachs, 5401 Norbeck Road, Rockville, MD 20853, (301) 460-9176.  Ms. Sachs will testify that Mr. Brooks worked to develop the Product.

12. Mark Tetlow, 1111 Edmonston Road, Rockville, MD  20851, (301) 762-4720.  Mr. Tetlow will testify that he worked for a company that purchased and used the Product and can testify to its use and training and information provided by Mr. Brooks.

13. John Pisaini, 710 Marshall Avenue, Rockville, MD  20851, (301) 424-5444.  Mr. Pisaini will testify to substantially all of the allegations of the Complaint.

14. Thomas Clime, 22610 Georgia Avenue, Brookeville, MD  20833, (301) 924-4305.  Mr. Clime will testify that he lent Mr. Brooks $20,000 to fund the development and promotion of the product after investigating the Product and the contract that Mr. Brooks had with Motsenbocker Developments.

15. Laura Brooks, 1475 Hawthorn Avenue, Buena Vista, VA  24416, (540) 529-2456.  Ms. Brooks will testify that Mr. Brooks found the Motsenbocker graffiti remover, bought some, tested it, and entered into contracts with Motsenbocker Developments.

16. Douglas Earnest, 19 E Benton, Oswego, IL 60543, (630) 363-0366.  Mr. Earnest will testify concerning the development and promotion of the Product and the nature of Mr. Brooks' contract with Motsenbocker Developments.

17. Michelle Earnest, 19 E Benton, Oswego, IL 60543, (630) 363-0366.  Ms. Earnest will testify concerning the development and promotion of the Product.

18. Charles Scaminace, Sherwin-Williams Paints, 101 Prospect Avenue, NW, Cleveland, OH  44115, (216) 566-2203.  Mr. Scaminace will testify to aspects of Mr. Brooks' efforts to develop and to promote both the Product and the finish coat and related facts.

07cv0773

19. Gregg Motsenbocker, 874 Felspar Street, San Diego, CA 92109, (858) 272-8372. Mr. Motsenbocker is expected to testify to most of the factual allegaions of the Complaint.

20. Skip A. Motsenbocker, 7925 Hillandale Drive, San Diego, CA 92120, (619) 287-7877. Mr. Motsenbocker is expected to testify to most of the factual allegaions of the Complaint.

21. Naomi Craft, 823 Anchorage Place, Chula Vista, CA 91914, (619) 934-4474. Ms. Craft will testify concerning the efforts Mr. Brooks made to develop sales materials, Mr. Brooks development of the Product for uses other than for removing graffiti, the nature of the agreement between Mr. Brooks and Motsenbocker Developments.

22. David Straub, New York, NY, (212) 631-7506. Mr. Straub will testify to development and sales efforts of Mr. Brooks in New York and to a meeting with Gregg Motsenbocker concerning the Product.

23. Nancy Clark, Mt Sinai Hospital, 1425 Madison Avenue, NY, NY 10029, (212) 241-0108, (212) 722-9676. Ms. Clark will testify to work Mr. Brooks did to develop and to promote the Product.

24. Robert Speak, Dual County Heating & Air Conditioning, 120 High Street, Hagerstown, MD 21740, (301) 573-1083. Mr. Speak will testify concerning the work that Mr. Brooks did with a Mr. Gregg Speak in order to promote and to develop the Product and money that Mr. Brooks paid to Mr. Gregg Speak.

25. Jeannette Jordan, 363 Citrus Drive, Imperial Beach, CA 91932, (619) 423-8591. Ms. Jordan will testify to the development and promotional work done by Mr. Brooks and to the relationship that Mr. Brooks had with Motsenbocker Developments.

26. Paula Carrier, Motsenbocker Advanced Developments, Inc., 4901 Morena Boulevard, Suite 806, San Diego, CA 92117, (858) 581-0222. Ms. Carrier will testify to some of the promotional efforts of Mr. Brooks, to his relationship to Motsenbocker Developments, including promises made to Mr. Brooks.

27. Robert Palimino, The Lee Quigley Company, 5301 W 65th Street, Bedford Park, IL 60638, (708) 563-1600. Mr. Palimino will testify to representations made by Motsenbocker Developments about the Product.

*07cv0773*

28. Patrick McCormick, Local 8A-28A, 3618 33rd Street, 2nd Floor, Long Island City, NY 11106, (718) 361-1770. Mr. McCormick will testify concerning efforts Mr. Brooks made to promote and to develop the Product and representations concerning Mr. Brooks' relationship with Motsenbocker Developments.

29. Thomas McCaslin, 4425 Kenneth Trl, Stow, OH 44224, (330)688-1273, (216) 332-1413. Mr. McCaslin will testify concerning Mr. Brooks' development of the finish coat.

30. Charles George, 4913 Lackawanna Street, College Park, MD 20740, (301) 508-0655. Mr. George will testify to substantially all of the facts alleged in the Complaint.

31. Joseph Gargiulo, 5119 Brookridge Place, Fairfax, VA 22030, (703) 578-1885, (703) 578-1885. Mr. Gargiulo will testify concerning purchase of the Product.

32. Mid America Metals, 2242 Northwest Parkway SE, Marietta, GA 30067, (770) 952-3144. A representative will testify concerning Mr. Brooks training on how to use the Product.

33. Timothy J. Flavin, 888 Woodleaf Park Drive 79, Mableton, GA 30126, (770) 944-1302. Mr. Flavin will testify concerning Home Depot's negotiations to purchase the Product.

34. Eric Durham, Motsenbocker Advanced Developments, Inc., 4901 Morena Boulevard, Suite 806, San Diego, CA 92117, (858) 581-0222. Mr. Durham will testify concerning orders for the Product made through Mr. Brooks and related facts.

35. Stonewall Video Productions, 4507A Metropolitan Court, Frederick, MD 21704, (301) 695-7181. A representative will testify concerning the production by Mr. Brooks of videos promoting the Product and the finish coat.

B. A copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that the disclosing party may use to support its claims or defenses, unless solely for impeachment are set forth as follows:

*07cv0773*

1. Advertisements-Promotional-Letters, bates-stamped Brooks 0001-0023.

2. Business Cards, bates-stamped Brooks 0024-0030.

3. Contents of CD, bates-stamped Brooks 0031-0132.

4. Faxed Promotional, bates-stamped Brooks 0133-0159.

5. Holiday Card, bates-stamped Brooks 0160-0162.

6. Invoice Brooks 0163-0165.

7. LiftOff Promotional Items, bates-stamped Brooks 0166-0254.

8. LiftOff Website, bates-stamped Brooks 0255-0270.

9. Material Safety Data Sheets, bates-stamped Brooks 0271-0273.

10. Miscellaneous, bates-stamped Brooks 0274-0277.

11. Patent, bates-stamped Brooks 0278-0282.

12. Photos, bates-stamped Brooks 0283-0293.

13. Price Lists, bates-stamped Brooks 0294-0297.

14. Promotional Efforts, bates-stamped Brooks 0298-0432.

15. Sherwin-Williams, bates-stamped Brooks 0433-0435.

16. St. Louis Accident, bates-stamped Brooks 0436-0445.

17. Telephone Address Book, bates-stamped Brooks 0446-0610.

18. Telephone Address Book, bates-stamped Brooks 0611-0771.

19. BB&T Bank Statements, bates-stamped Brooks 0772-0913.

20. Brooks Corporate Paperwork, bates-stamped Brooks 0914-0959.

07cv0773

21.     Brooks Credit Report, bates-stamped Brooks 0960-0961.

22.     Receipts, bates-stamped Brooks 0962-1406.

23.     Brooks Industries Tax Returns, bates-stamped Brooks1407-1588.

24.     A CD-Rom disk containing the contents of a floppy disk labeled "Premium Quality Recycled Media eco."

25.     A CD-Rom disk containing the contents of a floppy disk labeled "Imitation 2HD."

26.     A CD-Rom disk containing the contents of a CD-Rom labeled "World's 1st Water-Based System for Refinishing Metal & Wood."

27.     A CD-Rom disk containing the contents of a floppy disk labeled "Paint Label."

28.     A CD-Rom disk containing the contents of a CD-Rom labeled "Satin Finish Brass in 30 Min."

29.     A CD-Rom disk containing the contents of a CD-Rom labeled "World's 1st Water-Based System for Refinishing Metal & Wood."

30.     A CD-Rom disk containing the contents of a CD-Rom labeled "Oxidize Brass in 40 Min."

31.     A CD-Rom disk containing the contents of a CD-Rom labeled "Satin Finish Brass in 30 Min."

32.     A CD-Rom disk containing the contents of a CD-Rom labeled "World's 1st Water-Based System for Refinishing Metal & Wood."

33.     A CD-Rom disk containing the contents of a CD-Rom labeled "Brass and Wood."

34.     A CD-Rom disk containing the contents of a CD-Rom labeled "Refinish Brass/Wood Basic Steps."

35.     A CD-Rom disk containing the contents of a CD-Rom labeled "World's 1st Water-Based System for Refinishing Metal & Wood."

36.     A CD-Rom disk containing the contents of a CD-Rom labeled "Oxidize Brass in 40 Min."

37.     A CD-Rom disk containing the contents of a CD-Rom labeled "Motsenbocker's Lift-Off Press Kit 2005 National Hardware Show."

38.    A CD-Rom disk containing the contents of a CD-Rom labeled "Refinish Brass/Wood Basic Steps."

39.    A CD-Rom disk containing the contents of a CD-Rom labeled "Jensen 700 MB 80 Min."

40.    A CD-Rom disk containing the contents of a DVD labeled "Motsenbocker's Lift Off Finish Coat & Lacquer Remover: How to Restore a Mirror Finish Elevator Instructional Video."

41.    A CD-Rom disk containing the contents of a DVD labeled "Motsenbocker Lift Off Finish Coat & Lacquer Remover: How to Restore a Satin Finish Elevator."

42.    A CD-Rom disk containing the contents of a DVD labeled "Motsenbocker Lift Off Finish Coat & Lacquer Remover: How and Why / Instructional."

43.    A CD-Rom disk containing the contents of a DVD labeled "Motsenbocker Lift Off Finish Coat & Lacquer Remover: How and Why / Instructional Video."

44.    A CD-Rom disk containing the contents of a DVD labeled "Motsenbocker Lift Off Finish Coat & Lacquer Remover: How and Why / Instructional Video Metal & Wood."

45.    A CD-Rom disk containing the contents of a DVD labeled "Motsenbocker Lift Off Finish Coat & Lacquer Remover: How and Why / Instructional Video A Mirror Finish 2003."

46.    A CD-Rom disk containing the contents of a DVD labeled "Motsenbocker Lift Off Finish Coat & Lacquer Remover: Wood and Metal Instructional Video."

47.    A CD-Rom disk containing the contents of a DVD labeled "Motsenbocker Lift Off Finish Coat & Lacquer Remover: How and Why / Instructional Video How to Restore a Mirror Finish Elevator."

C. A computation of any category of damages claimed by disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered are as follows:

07cv0773

Plaintiffs are entitled to a 10% commission of all revenues that Motsenbocker Developments has received, is receiving, and will receive from sales of the Product as defined in the Complaint. Thus, damages will consist of immediate payment of 10% of all past revenues and future payments of 10% of all revenues to be earned for the life of the Product. In addition, Plaintiffs are entitled to other statutory damages allowed by California wholesale sales representative law.

D. For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment are as follows:

1. **Plaintiffs** are unaware of any insurance coverage.

Respectfully submitted,

Dated: **30 July 2007**     Signed:

                            _____
                            Michael J. Trevelline, DC Bar # 437454
                 Address:   1823 Jefferson Place, NW
                            Washington, DC 20036-2504
                 Telephone: (202) 737-1139/Fax: (202) 775-1118
                 Email:     mjt@mjtlegal.com

**Attorney for Plaintiff George Brooks & Brooks Industries, Inc.**

Attachments:
1. Above-described documents bates-stamped Brooks 0001-1588.
2. The 24 above-described CD-Roms.

## Certificate of Service

I hereby certify that a copy of the **foregoing** was was sent via first class mail, postage prepaid, this _____ day of _____, 20____, to:

Mr. Patrick D. Webb
Webb Carey
401 B Street, Suite 306
San Diego, CA  92101

                            _____
                            Michael J. Trevelline

07cv0773

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GEORGE A. BROOKS, et al., | ) | Case No. 8:06-cv-01024-AW |
| | ) | |
| Plaintiffs, | ) | **DEFENDANTS' RESPONSE IN OPPOSITION TO** |
| vs. | ) | **PLAINTIFFS' MOTION FOR LEAVE TO FILE** |
| | ) | **AMENDED COMPLAINT** |
| MOTSENBOCKER ADVANCED | ) | |
| DEVELOPMENTS, INC., et al., | ) | Judge Alexander Williams |
| | ) | Greenbelt Division |
| Defendants. | ) | |

## RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

### I.    Introduction

Plaintiffs' motion, seeking leave, *inter alia*, to add a California state law cause of action, underscores yet again why this case belongs in California, not Maryland.  The action should be transferred and Plaintiffs' motion to amend denied as moot.

But even if not moot, Plaintiffs' motion should be denied.  Plaintiffs' succinct memorandum in support of this motion leaves the very misleading impression that the only difference between their proposed amended complaint ("PAC") and their original complaint is the addition of a new cause of action under California law.[1]  In fact, the PAC contains not only a new cause of action, but no fewer than eleven material changes to their story. First, Plaintiffs *again* assert that the key alleged meeting (at which the alleged agreement was allegedly formed) took place somewhere other than where they

---

[1] *See* Paper No. 35 at 1 ("Counsel for Plaintiffs have discovered a statutory cause of action applicable to the facts alleged in the Complaint and wish to amend the Complaint to assert this cause of action."); *id.* at 3 ("Brooks would like to amend his Complaint to assert this cause of action."); *id.* at 4 ("To not allow amendment, [sic] would deny Plaintiffs a valuable cause of action provided by the California legislature.").

originally alleged it to take place. Moreover, they propose to change the dates of several key events and enhance the nature of Plaintiffs' role in the purported contract. None of this is mentioned in Plaintiffs' motion or accompanying memorandum of law. *See* Ex. A (line-by-line comparison of original Compl. and PAC).

Leave to amend should be denied for several reasons. First, Plaintiffs' desire to change where they allege the key meeting to have taken place has been raised previously in this court, under another guise, and was rejected; the court should do so again here and not permit Plaintiffs to abuse the amendment process for the sake of forum shopping. Second, the new proposed facts directly contradict facts alleged in the original complaint seventeen months ago, and should therefore be rejected. Third, Plaintiffs' allegations cannot, as a matter of law, support their California cause of action, rendering its addition to the complaint futile.

## II.    The Case Should Be Transferred and the Motion Denied As Moot.

Defendants incorporate by reference the arguments in their supplemental brief of September 5. Paper No. 33. There, Defendants noted that transfer was appropriate because Plaintiffs themselves filed a substantially identical action in California and that case has proceeded to discovery; if this case is not dismissed or transferred, two parallel actions will proceed – a highly undesirable result.

Transfer is even more appropriate now that Plaintiffs assert a California cause of action. This court has not yet addressed the question of whether the laws of Maryland or California would apply to Plaintiffs' state law claims in this case, but with the addition of a California state law claim, if this case remains in Maryland, this court will necessarily be required to rule on questions of California law – a duty best reserved for courts in that state and therefore favoring transfer to California. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) (factors influencing whether to transfer

include "the local interest in having localized controversies decided at home" and "the interest in having

the trial of a diversity case in a forum that is at home with the law that must govern the action") (quoting

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

In response to Defendants' supplemental filing, Plaintiffs argue that Defendants "failed to

apprise the Court of the 'first-filed rule,'" that Plaintiffs should not be "punished" for refiling in

California in order to avoid being time-barred after their dismissal here, that Defendants are tardy in

their initial disclosures in the California proceeding, and that various other factors weigh against

transfer. Pl. Supp. at 1-4.

Plaintiffs' application of the first-filed rule is simplistic and incorrect. As noted in *Affinity*

*Memory & Micro, Inc. v. K&Q Enters.*, 20 F. Supp. 2d 948, 954 (E.D. Va. 1998), "the first-filed rule is

not to be applied mechanically; for example, courts have declined to defer to the first-filed action when

little if anything has been done to advance that action for trial." In *Affinity*, cases involving the same

parties, facts and allegations were proceeding in two federal courts at once. The court concluded that,

although the first filed action was before it, transfer was appropriate where, like here, "[p]ersonal

jurisdiction over defendant here is doubtful" and "the [other] action is further along and . . . it appears

that plaintiff has waived any defects in personal jurisdiction in the [other] action . . . ." *Id.* at 955-56.

Plaintiffs' arguments regarding the statute of limitations and Defendants' initial disclosures in

California are nonsensical. Whether Plaintiffs filed in California (or anywhere else) in April simply has

nothing to do with whether this case should now be transferred to the most appropriate venue. Likewise,

the timeliness of Defendants' initial disclosures in no way bears on whether this case should proceed

here or in California.

3

Finally, Plaintiffs point to a case in the federal District of Columbia for the proposition that Defendants must make a "strong case" for transfer. Pl. Supp. 4-5 (citing *Celanese Corp. v. Fed. Energy Admin.*, 410 F. Supp. 571 (D.D.C. 1976)). Opinions from other jurisdictions notwithstanding, it is well-established that when determining whether to transfer an action, a court is vested with wide discretion, *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955); *King v. Johnson Wax Assocs, Inc.*, 565 F. Supp. 711, 719 (D. Md. 1983) (citing *Paesch v. Winter*, 366 F.2d 756 (4th Cir. 1966)); and that, "[i]n determining whether to grant a motion to transfer, courts are to consider: 1) the weight accorded the plaintiff's choice of venue; 2) witness convenience and access; 3) convenience of the parties; and 4) the interest of justice." *Howard Univ. v. Watkins*, C.A. No. DKC 2006-2076, 2007 WL 763182, *4 (D. Md. March 12, 2007) (citing *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005)). Indeed, *Celanese* seems an odd choice for Plaintiffs to cite, because there, the court *granted* the defendants' motion to transfer – for some of the same reasons that this court should transfer this case: "The Court believes that the defendants have met this stringent test," in large part because "the transfer is necessary in order to avoid a needless duplication of judicial efforts in resolving suits that present many identical and complex legal issues." *Id.* at 575.

The other factors cited by Plaintiffs, see Paper No. 13 at 24-25, are unpersuasive. Plaintiffs' plea for their own convenience rings hollow given that they themselves chose to file in California; and Plaintiffs no longer even assert, as they did last year, that the contract was formed in Maryland.

As against those meager arguments, it is clear that the avoidance of parallel litigation, the fact that the litigation has proceeded significantly further in California and the assertion of a California statutory claim must be dispositive. *Affinity*, 20 F. Supp. 2d at 954. The court should therefore transfer this case to the Southern District of California and deny as moot Plaintiffs' motion for leave to amend.

**III.    If the Court Does Not Transfer This Case to California, Leave to Amend Should Nonetheless Be Denied.[2]**

**A. Standard of Review**

Defendants agree with Plaintiffs, Pl. Br. at 3, that the court may deny leave to amend for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, Plaintiffs' motion should be denied for bad faith, prejudice to Defendants, and futility of amendment.

---

[2] As a preliminary matter, Defendants agree with Plaintiffs that they may not amend as a matter of course, but are required to obtain leave of the court. "The right to amend as a matter of course must terminate at some point. This is so even if a responsive pleading has not been filed, and even if the order of dismissal is not affirmed." *Phillips v. Borough of Keyport*, 179 F.R.D. 140 (D.N.J. 1998) (denying amendment as a matter of course after Third Circuit reversed dismissal) (footnote omitted); *United States v. Union Corp.*, 194 F.R.D. 223, 229-30 (E.D. Pa. 2000) ("the ... approach, adopted in the majority of circuits that have addressed the issue, is that the right to amend as a matter of course terminates with the granting of a 12(b)(6) motion") (citing cases in several circuits); *Stephenson v. Dow Chem. Co. (In re Agent Orange Prod. Liab. Litig.)*, 220 F.R.D. 22, 24 (E.D.N.Y. 2004) ("Dismissal of a complaint functions much as would a responsive pleading. Each side and the court will have put so much effort into the motion to dismiss that the litigation can hardly be considered a clean slate for purposes of amendment.") (denying leave to amend after Second Circuit reversed dismissal); 3 MOORE'S FEDERAL PRACTICE § 15.07[2] (2d ed. 1987) ("Since the plaintiff had an opportunity to amend prior to the disposition of the motion to dismiss, and chose to stand on his original pleading, the party successfully moving against such pleading should at least have the opportunity to oppose the amendment."). Moreover, "[t]he right to amend as a matter of course . . . terminates if a substantial period of time has elapsed since the dismissal." *United States v. Union Corp.*, 194 F.R.D. at 223. *See* 6 WRIGHT, MILLER, & KANE § 1483, at 589; *id.* at 590 (stating that this practice "appears sound"). For example, in *Hewlett-Packard Co. v. Arch Assocs. Corp.*, 172 F.R.D. 151, 153 (E.D. Pa. 1997), the court held that leave to amend was required after the passage of fifteen months.

**B. Plaintiffs Should Not Be Permitted To Use the Amendment Process To Enable Forum Shopping.**

For the third time in six months, Plaintiffs request leave to change their story by asserting that the alleged meeting resulting in the purported contract between the parties took place in Virginia, *see* PAC ¶ 21, and not Maryland, as Plaintiffs asserted in the original complaint and repeated to this court for eight months. *See* Compl. ¶ 21 (April 24, 2006); Paper No. 13, Ex. A (Affidavit of George Brooks) at ¶ 5 (July 7, 2006); and Paper No. 26 (Mot. Hearing Transcript) at 16 (Dec. 5, 2006). In March of this year, this court rejected Plaintiffs' first transparent attempt to establish contacts in yet another jurisdiction by baldly changing the facts underlying their complaint. Paper No. 29. The Fourth Circuit also rejected this jurisdictional gamesmanship. Paper No. 28, Ex. B (Fourth Circuit Order denying Plaintiffs' motion.) This court should again deny Plaintiffs the opportunity they obviously seek by changing their story: to file a third complaint, this time in Virginia. Abuse of the amendment process for forum shopping would cause clear prejudice to Defendants, who already have been sued by Plaintiffs on substantially identical grounds in two courts 2,600 miles apart.

**C. Fact Allegations Directly Contradicting the Original Complaint Should Not Be Permitted.**

In addition to adding a new cause of action and moving the alleged seminal meeting from Maryland to Virginia, Plaintiffs propose *ten more* factual changes which contradict the original complaint and should also be rejected. This is the first time Plaintiffs have ever hinted at any of the following proposed changes:

- Plaintiffs have backdated several events. They now allege:

6

o   that Brooks first purchased Motsenbocker's Lift Off not "In May 1998," Compl. ¶ 12, but "in or about 1997," PAC ¶ 12;

o   that Brooks entered into a contract with EcoLab not "On or about August 1998," but "On or about 1997," ¶ 15;

o   that Brooks entered into a contract with Defendants not "In 1999," but "In 1998 or 1999," ¶ 18;

o   that Gregg Motsenbocker met with Brooks not "In 1999," but "In 1998," ¶ 21; and

o   that Brooks began marketing Defendants' product not "In 1999," but "In 1998 and 1999," ¶ 30.

• Plaintiffs for the first time now assert that Brooks' contract with EcoLab made him not only the exclusive North American "sales representative" of "the Product sold as a stripper to remove coatings such as paint, lacquers, and varnish," Compl. ¶ 15, but the exclusive "sales representative and developer" of that product. PAC ¶ 15. Similarly, Plaintiffs for the first time assert that Brooks' contract with "Motsenbocker Developments [sic]" made him not only the exclusive North American "sales representative" of Motsenbocker's Lift Off Finish Coat, Compl. ¶ 18, but its exclusive "sales representative and developer." PAC ¶ 18. (Plaintiffs assert this despite the knowledge that Defendants owned and own the patents on precisely these products.)

• Plaintiffs now assert that the alleged agreement provided that Brooks would "earn[] a commission on all sales of the Product sold as a stripper under any name when marketed as a stripper," PAC ¶ 24, not just for "the Product and Finish Coat," Compl. ¶ 22.

7

- Plaintiffs now assert that Brooks' alleged agreement with Motsenbocker Advanced Developments was not merely "a type of partnership agreement," but specifically a "joint venture" agreement. PAC ¶¶ 24, 109.

- Plaintiffs now allege that they are owed commissions not only on Home Depot sales, but on sales at "Lowes, Ace Hardware, Dutch Guard and other outlets." PAC ¶ 60.

This raft of proposed factual amendments is unacceptable. Courts routinely deny leave to amend when the proposed amendments directly contradict facts asserted in the previous complaint. *See, e.g., Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, No. C 97-00300 SI, 2005 U.S. Dist. LEXIS 4875, *8-9 (N.D. Cal. March 21, 2005) ("Plaintiff will be denied leave to amend because its Proposed First Amended Complaint directly contradicts the original Complaint.") (citing *Parker v. Joe Lujan Enterprises, Inc.*, 848 F.2d 118, 121 (9th Cir. 1988)); *Cartanza v. LeBeau*, C.A. No. 1480-K, 2006 WL 903541, *5 (Del. Ch. April 3, 2006) ("Where it appears that a plaintiff's purpose in seeking amendment and asserting a new claim is his or her anticipation of an adverse ruling on the original claims" and "the allegations in the amended pleading contradict those in the original complaint," "leave to amend has been denied."); *Azafrani v. Cohen*, Case No. B164262, 2004 WL 1173073, *4 (May 27, 2004) (court has "discretion to deny leave to amend where the proposed amendment omits or contradicts harmful facts pleaded in the original pleading unless a showing is made of mistake or other sufficient excuse for changing the facts. Absent such a showing, the proposed pleading may be treated as a sham.") (citing cases); *accord CPF Premium Funding v. Ferrarini*, 95 Civ. 4621 (CSH), 1997 WL 158361, *15 (S.D.N.Y. April 3, 1997) (leave denied where amendment curing pleading defects "would not merely constitute a clarification; it would directly contradict many of the assertions made in the present complaint.").

8

As is often the case when proposed amendments directly contradict prior factual allegations, these changes reek of bad faith. "The well-established rule is that a proposed amendment which contradicts allegations in an earlier pleading will not be allowed in the absence of *very satisfactory evidence* upon which it is *clearly shown* that the earlier pleading is the result of mistake or inadvertence." *Azafrani* at *4 (quoting *American Advertising & Sales Co. v. Mid-Western Transport*, 152 Cal. App. 3d 875, 879 (1984)) (emphasis added; internal quotation marks omitted). Plaintiffs filed their initial complaint here seventeen months ago. Paper No. 1 (filed April 24, 2006). Only now are they bringing ten of their eleven factual amendments to the court's attention for the first time. (Plaintiffs claimed in February that Brooks' recollection of the Maryland meeting had changed, but at that time, none of his other recollections were alleged to have changed.) If these proposed amendments are all to correct mistaken memories, it is curious that all ten favor Plaintiffs. Plaintiffs have done nothing to demonstrate that these were all mere mistakes, nor have they explained why these errors were not corrected far earlier.

### D. Plaintiffs' New California State Law Claim Is Futile.

The addition of a claim under the Independent Wholesale Sales Representatives Contractual Relations Act of 1990, Cal. Civ. § 1738.10-17, is futile because, even accepting as true all of Plaintiffs' allegations for the purposes of this motion, the California claim cannot succeed. According to the California courts:

> The Act cannot apply to a nonresident sales representative who tries, unsuccessfully, to solicit buyers in California. . . . If making any sort of failed effort to sell a product in California gave rise to jurisdiction here, our courts would quickly be inundated by the claims of foreign sales representatives, who lack even the most tenuous ties to California.

9

*MSPal, Inc. v. Xiamen Xiashun Aluminum Foil, Ltd.*, Case No. B183961, 2006 WL 1195845, \*4-5 (May 5, 2006). Because Plaintiffs are nonresidents of California who have never alleged that they ever sold any product in California, they cannot state a claim under section 1738.15.

If the court decides that transfer to the Southern District of California is inappropriate, it should still deny Plaintiffs' motion for all these reasons.

Dated: September 28, 2007         By: _____

Aaron J. Snow, Bar No. 27814
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave., N.W., Ste. 800
Washington, D.C. 20015
Tel: 202-237-2727
Fax: 202-237-6131
asnow@bsfllp.com

Patrick D. Webb, admitted *pro hac vice*
Webb & Carey
401 B Street, Ste. 306
San Diego, CA 92101
Tel: 619-236-1650
Fax: 619-236-1283
pwebb@webbcarey.com

10

**Comparison of Original Complaint and Proposed Amended Complaint**

```
Key:
• Blue double-underlined text was added in the proposed Amended
  Complaint.
• Red strikethrough text is deleted in the proposed Amended
  Complaint.
• All other text remains unchanged.
• Spacing and uppercase/lowercase changes are ignored.
```

1. Plaintiff George A. Brooks ("Brooks") is an individual residing in Prince Georges County, Maryland.

2. Plaintiff Brooks Industries, Inc. is a corporation organized under the laws of Maryland with its principal place of business in Prince Georges County, Maryland.

3. Defendant Gregg A. Motsenbocker is an individual residing in San Diego County, California.

4. Defendant Skip Motsenbocker is an individual residing in San Diego County, California.

5. Defendant Motsenbocker Advanced Developments, Inc. ("Motsenbocker Developments") is a corporation organized under the laws of California with its principal place of business in San Diego.

6. There is complete diversity of citizenship between all Plaintiffs and all Defendants in this matter. As will be more fully explained below, the amount in dispute in this action, exclusive of interests and costs, exceeds the sum of $75,000. Therefore, this court has jurisdiction over this dispute by virtue of 28 U.S.C. § 1332.

7. This Court has personal jurisdiction over the Defendants under the Maryland long-arm statute, Md. Code Courts & Judicial Proceedings § 6-103.

8. Venue is proper in this Court because a substantial part of the events complained of herein have occurred in this district and Defendant Motsenbocker Developments conducts a significant amount of business in this district. Background Facts Ecolab, Inc. & Brass Wash

9. Motsenbocker Developments possesses patents (Patent Numbers

**Comparison of Original Complaint and Proposed Amended Complaint**

5,484,487 and 5,415,800) on a biodegradable, water-based, nonflammable, liquid cleaner used to remove paint and paint-like coverings and deposits ("the Product").

10. Motsenbocker markets and labels the Product as MÖTSENBÖCKER'S LIFT OFF® under that name and with various additional titles serving to identify particular uses and with at times a gel additive making it more suitable for particular uses.

11. Brooks is a painter by trade.

12. In or about May ~~1998,~~1997, Brooks purchased a bottle of the Product in a Maryland store marketed as a graffiti remover with a disclaimer that it is not to be used on painted wood and metal.

13. As an experiment, Brooks tested the Product as a stripper for removing clear coats from brass, finding that it worked well.

14. Brooks telephoned Motsenbocker Developments and spoke to Gregg Motsenbocker. After receiving assurances from Gregg Motsenbocker that he would not steal Brooks' ideas, Brooks related that following the death of workers stripping brass with flammable strippers the painting industry was looking for a water-based brass stripper and that the Product seemed to fulfill this need. Brooks proposed marketing it for Motsenbocker Developments.

15. Motsenbocker Developments agreed and arranged for Brooks to sign a contract with Ecolab, Inc.~~.~~ Ecolab possessed the exclusive rights to market the Product wholesale. On or about August ~~1998,~~1997, Brooks entered into a written contract with Ecolab making Brooks the exclusive North American sales representative and developer of the Product sold as a stripper to remove coatings such as paint, lacquers, and varnish. The terms of the agreement included that Brooks would be paid exclusively by commission earning 12% of the first million dollars in sales, 10% of the next half million, and 8% thereafter. As the exclusive sales representative and developer, Brooks was to receive his commissions on all North American wholesale sales whether Brooks initiated it or not, and Brooks was to receive such for as long as Ecolab had the right to distribute the Product whether or not sold through any other sales representative. Ecolab granted Brooks these rights well beyond what a sales representative would normally have in recognition of Brook's contribution to the development of the product.

**Comparison of Original Complaint and Proposed Amended Complaint**

16. Brooks then chose the name "Brass Wash" and marketed it under that name.

17. In or about 1998 or 1999 while Brooks was working with Motsenbocker Developments and Ecolab to promote the Product, Motsenbocker Developments modified the composition of the Product Brooks was selling. After consultation with Brooks, Motsenbocker Developments returned to the original formula. Motsenbocker's Lift Off® Finish Coat

18. In ~~1999 on behalf of Motsenbocker Developments~~1998 or 1999, Brooks worked with The Sherwin Williams Company at its Cleveland, Ohio and Olive Branch, Mississippi laboratories to develop a water-based clear coat to protect metal and wood and that could also be removed with the Product when it came time to refinish the part or panel without leaving a stain on metal. At that time, all existing water-based coats could not be used to cover metal and wood without tarnishing it. Brooks perfected a covering, Sherwin Williams produced it, and Motsenbocker Developments marketed it under the name "Motsenbocker's Lift Off® Finish Coat," (hereinafter "Finish Coat") with Brooks entering into an agreement with Motsenbocker Developments making Brooks the North American, exclusive sales representative and developer of Finish Coat earning a commission of 10% on all sales, wholesale or retail.

19. From on or about 1999 to 2005, Motsenbocker Developments sold approximately $20,000 worth of Finish Coat, with Brooks earning a commission of approximately $2,000.

20. Despite demands, Motsenbocker Developments refuses to pay Brooks his commission. Motsenbocker Developments-Brooks Motsenbocker Lift Off® Agreement

21. In ~~1999,~~1998, Gregg Motsenbocker on behalf of Motsenbocker Developments traveled to ~~Baltimore, Maryland~~ Virginia near Ronald Regan National Airport and met with Brooks. He told Brooks that Motsenbocker Developments was ending its relationship with Ecolab and instructed Brooks to have no further contact with Ecolab.

22. When meeting with Brooks, Motsenbocker Developments offered to engage Brooks as the sales representative for the Product and Finish Coat, offering the same terms as Brooks' contract with Ecolab except that Brooks' commission would be a flat 10% and Brooks would earn a commission on retail as well as wholesale sales, and except that Brooks was free to market the Product under whatever name he and

**Comparison of Original Complaint and Proposed Amended Complaint**

Motsenbocker Developments agreed to and to work with Motsenbocker Developments to vary the formula if doing so would improve it.

23. Brooks accepted the offer, thus entering into an agreement ("the Agreement") with the understanding that Brooks would start marketing the Product under the Agreement as soon as Ecolab was no longer marketing the Product.

24. Under the commissioned sales representative agreement, the Agreement, Motsenbocker Developments and Plaintiffs were to share revenues from North American sales of the Product and in fact worked very closely together to develop and promote the Product so that the Agreement was a joint venture agreement (a type of partnership agreement), with the purpose of developing the Product into use as a refinishing stripper with various formulations and names, and with Brooks earning a commission on all sales of the Product sold as a stripper under any name when marketed as a stripper.

25. In 2004, when Brooks noticed that Gregg Motsenbocker had appeared to say that the Product with gel added was actually not covered by the Agreement with Brooks, Brooks asked Gregg Motsenbocker and Skip Motsenbocker about this. The Motsenbockers replied that Brooks could trust them and assured Brooks that he would receive his commissions and that the Motsenbockers would put something in writing.

26. In August 2000, Brooks formed Brooks Industries, Inc.

27. Brooks Industries is a janitorial service and seller of cleaning products.

28. Brooks Industries paid Motsenbocker Developments for the samples Brooks distributed under the Agreement.

29. In the alternative to the Agreement being with Brooks, Brooks and Brooks Industries allege that the parties agreed to transfer the Agreement to Brooks Industries. Promotional Trips and Development of the Product

30. In 1998 and 1999 under the Agreement, Brooks began marketing the Product and to experiment and further develop it and continued to do so until May 2005 when Motsenbocker Developments breached the Agreement by refusing to acknowledge its existence.

31. After the Agreement was in place in or about 1999, Brooks further experimented with the Product, discovered it worked as a remover of

**Comparison of Original Complaint and Proposed Amended Complaint**

paint from wood without damage to the part or panel, and began marketing it under the name "Coating Remover," with Motsenbocker Developments' knowledge and consent.

32. In 2000, Brooks further promoted the Product and in 2001 began marketing it under the name "Lacquer Remover" in addition to the names "Coating Remover," with Motsenbocker Developments' knowledge and consent.

33. In 2001 through 2004 Brooks further experimented with the Product and made some of the Product into gel form and distributed samples of the Product in that form.

34. Starting in 2000, Brooks promoted the Product by traveling at his own expense to promote the Product and continued to do so until Motsenbocker Developments breached the Agreement in 2005.

35. In 2000, Brooks traveled to Des Moines, Iowa to the offices and wood shop of Better Homes and Gardens Wood Magazine to promote the Product. The Wood Magazine tested the product in their testing wood shop.

36. This trip resulted in the review of the Product labeled "Lacquer Remover" in the Wood Magazine and the product receiving a five-star rating, the highest rating possible.

37. In 2002, Brooks traveled to Chicago to demonstrate the Product at a national hardware show, demonstrating the Product all day for two days.

38. In 2002, Brooks traveled to Washington, D.C. to demonstrate the Product at the True Value Ace Hardware Show. In addition, in

2002, Brooks traveled to approximately ten other places to promote the Product.

39. In 2003 Brooks traveled to the General Services Administration in Washington, D.C. to promote the Product.

40. Stuart Dean is a company in the business of refurbishing buildings. In 2003, Brooks traveled to Stuart Dean's offices throughout the United States and trained its employees on how to refinish with the Product.

**Comparison of Original Complaint and Proposed Amended Complaint**

41. In 2000, 2001, 2003, 2004, and 2005, Brooks traveled to the Metal Polishers Union Meany training center in White Oak, Maryland and convinced the management to train union members in the use of the Product.

42. In 2005, Brooks traveled to New Orleans and promoted the Product at a trade show. This was an instance where Motsenbocker Developments paid Brooks or Brooks Industries' expenses for promoting the Product.

43. In 2003, Brooks traveled to San Diego and Los Angeles, California to promote the Product and to help Motsenbocker Developments' staff on company matters.

44. In 2003, Brooks traveled to Houston, Texas to strip brass at a hotel using the Product and to promote the Product.

45. In October 2004, Brooks traveled to San Diego to work temporarily for Motsenbocker Developments as a salesman for other products; while there he promoted the Product under the Agreement as well. This employment as a salesman for other products ended in May 2005.

46. In or about November 2004, Brooks traveled to the Ace Hardware Trade Show in Florida to promote the Product. This was an instance where Motsenbocker Developments paid Brooks or Brooks Industries' expenses for promoting the Product.

47. In April 2005, Brooks traveled to a hardware trade show in Chicago to promote the Product. This was an instance where Motsenbocker Developments paid Brooks or Brooks Industries' expenses for promoting the Product.

48. In 2005, Brooks traveled to the Frazze Paint Corporation in California to promote the Product. This was an instance where Motsenbocker Developments paid Brooks or Brooks Industries' expenses for promoting the Product.

49. In 2005, Brooks traveled to a trade show in Law Vegas to promote the Product at International Hardware trade show. This was an instance where Motsenbocker Developments paid Brooks or Brooks Industries' expenses for promoting the Product. Creation of Promotional Materials

50. From 1999 to 2005, Brooks wrote the following in order to promote the Product: a 1999 book in entitled "The Proper Techniques and Procedure for Applying and Using Motsenbockers Liftoff Lacquer

**Comparison of Original Complaint and Proposed Amended Complaint**

Remover and Motsenbockers Liftoff Finish Coat for the Purpose of and How to Refinish Wood & Metal" (modified in 2001); a 2003 product booklet "Product Information Booklet" for the Lacquer Remover and Finish Coat; in 2003 a booklet entitled "Safe & Simple Step-by-Step Instructions on How to Restore and Clean Mirror & Satin Finish Brass"; various sales fliers and product definitions.

51. The three Defendants reviewed all these writings.

52. Motsenbocker Developments through Gregg Motsenbocker and Skip Motsenbocker and others distributed these writings to those interested in the Product.

53. From 1999 to 2005, Brooks made eight videos demonstrating how to use the Product for various purposes.

54. The videos were entitled: "Oxidize Brass in 40 Minutes," "Satin Finish Brass in 30 Minutes," "Refinish Brass/Wood Basic Steps," " "Finish Coat & Lacquer Remover," "How to Restore a Satin Finish Elevator," "A Mirror Finish 2003," "How to Restore a Mirror Finish Elevator," and "Metal & Wood."

55. The three Defendants viewed all of the videos and were aware of their contents.

56. Motsenbocker Developments through Gregg Motsenbocker and Skip Motsenbocker and others distributed the videos to those interested in the Product. Breach of Contract

57. In 2002, Brooks contacted the Home Depot buying office and learned that since Motsenbocker Developments already had a vendor number with the company that Brooks was obliged to contact the particular company buyer handling that number. When Brooks asked Gregg Motsenbocker about this, Gregg Motsenbocker responded "to be patient that it was God's time" or words to that effect.

58. Until early 2005, little of the Product had been sold, approximately $30,000 worth.

59. Plaintiffs allege upon information and belief that around December 2004 Motsenbocker Developments had entered into negotiations with Home Depot for Home Depot to carry the Product and that Motsenbocker Developments used some if not all of the promotional materials that Plaintiffs had developed to sell the Product to Home

**Comparison of Original Complaint and Proposed Amended Complaint**

Depot under the name "Paint & Varnish Remover" and various other names.

60. Plaintiffs allege upon information and belief that Motsenbocker Developments is selling large quantities of the Product under the name "Paint & Varnish Remover" and various other names throughout North America through Home Depot, Lowes, Ace Hardware, Dutch Guard and other outlets so that large commissions are due and owing to Brooks or Brooks Industries.

61. In or about May 2005, Motsenbocker Developments through Gregg Motsenbocker told Brooks that Motsenbocker Developments would be paying Brooks no commission on the Product.

62. Since May 2005, despite demands from Brooks, Motsenbocker Developments has refused to pay Brooks a commission on sales of the Product.

63. Upon information and belief, Brooks and Brooks Industries alleges that these commissions are in excess of $1,000,000.

Count I: Breach of Contract (By Brooks)

64. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 63 as if set forth at length herein.

65. Motsenbocker Developments breached the Agreement with Brooks by refusing to pay Brooks commissions on all sales of the product.

66. By reason of the foregoing, Motsenbocker Developments is liable to Brooks for compensatory damages and Brooks demands judgment against Motsenbocker on this Count for the sum of $1,000,000, the specific amount to be proved at trial.

Count II: Breach of Contract (By Brooks Industries)

67. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 66 as if set forth at length herein.

68. In the alternative to Count I, Motsenbocker Developments breached the commission agreement with Brooks Industries by refusing to pay Brooks Industries commissions on all sales of the Product.

69. By reason of the foregoing, Motsenbocker Developments is liable to Brooks Industries for compensatory damages and Brooks Industries

**Comparison of Original Complaint and Proposed Amended Complaint**

demands judgment against Motsenbocker Developments on this Count for
the sum of $1,000,000, the specific amount to be proved at trial.

Count III: Quantum Meruit

70. Plaintiffs repeat and reallege all of the allegations contained
in paragraphs 1 through 69 as if set forth at length herein.

71. Plaintiffs rendered valuable services for Motsenbocker
Developments with the intention of receiving from Motsenbocker
Developments a fee for services rendered. Motsenbocker Developments
accepted these services, received the benefit of such services, and
knew that Plaintiffs expected to be paid for such services.

72. All services rendered by Plaintiffs to Motsenbocker Developments
were rendered under such circumstances that Motsenbocker Developments
knew Plaintiffs expected to be paid. On many occasions Gregg
Motsenbocker and Skip Motsenbocker even told Brooks that Brooks would
become wealthy from such payment.

73. By reason of the foregoing, Motsenbocker Developments is liable
to Plaintiffs for compensatory damages and Plaintiffs demands
judgment against Motsenbocker Developments on this Count for the sum
of $1,000,000, the specific amount to be proved at trial.

Count IV: Unjust Enrichment

74. Plaintiffs repeat and reallege all of the allegations contained
in paragraphs 1 through 73 as if set forth at length herein.

75. Plaintiffs made substantial improvements to the Product by
performing valuable services to Motsenbocker Developments.

76. The improvements made by Plaintiffs to the Product conferred a
benefit upon the Defendants in the amount of 1,000,000, the specific
amount to be proved at trial.

77. Motsenbocker Developments was aware of, and had knowledge of the
benefits conferred upon the Product by Plaintiffs.

78. Motsenbocker Developments acceptance and retention of the
improvements made to the Product make it inequitable for Motsenbocker
Developments to retain these benefits without payments of their
value.

**Comparison of Original Complaint and Proposed Amended Complaint**

79. The unpaid for improvements had a value of $1,000,000, the specific amount to be proved at trial.

80. By reason of the foregoing, Motsenbocker Developments is liable to Plaintiffs for compensatory damages and Plaintiffs demands judgment against Motsenbocker Developments on this Count for the sum of $1,000,000, the specific amount to be proved at trial.

Count V: Promissory Estoppel/Detrimental Reliance

81. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 80 as if set forth at length herein.

82. All three Defendants promised Plaintiffs that Motsenbocker Developments would compensate Plaintiffs if Plaintiffs made the improvements.

83. In reliance upon this promise, Plaintiffs made the improvements to the Product by developing it and by promoting it.

84. Plaintiffs have made a claim upon Motsenbocker Developments to pay them for the improvements, but Motsenbocker Developments has wrongfully denied the claim.

85. Injustice will result if Motsenbocker Developments does not pay Plaintiffs.

86. By reason of the foregoing, Motsenbocker Developments is liable to Plaintiffs for compensatory damages and Plaintiffs demands judgment against Motsenbocker Developments on this Count for the sum of $1,000,000, the specific amount to be proved at trial.

Count VI: Tort Arising from Breach of Contract

87. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 86 as if set forth at length herein.

88. In or about May 2005 despite the fact that all three Defendants had numerous times promised Brooks that the Agreement would be honored, and despite all the work Plaintiffs had put into the Product, the three Defendants refused to honor the Agreement.

89. The course of conduct of the Defendants as described above was deliberately undertaken and was committed in wanton, willful, and

reckless disregard of Plaintiffs' rights and was attended by malice and vindictiveness on the part of said Defendants.

90. By reason of the foregoing, Defendants are liable to Plaintiffs for damages, both compensatory and punitive, and Plaintiffs demand judgment against Defendants on this Count for the sum of $1,000,000 in compensatory damages, the specific amount to be proved at trial, and for the sum of $1,000,000 in punitive damages.

Count VII: Misrepresentation

91. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 90 as if set forth at length herein.

92. From in or about 1999 to in or about May 2005, all three Defendants represented to Plaintiffs that Motsenbocker Developments intended to pay Brooks or Brooks Industries a commission under the Agreement on all North American sales of the Product.

93. These representations continued through the Defendants' contact with Home Depot in December 2004 into 2005 described above.

94. The foregoing representations made by the Defendants were false and fraudulent and were made by Defendants as part of a scheme or artifice to defraud.

95. The representations were known by the Defendants to be false when made and were made with intent to deceive Plaintiffs and with intent that Plaintiffs rely upon them and to induce Plaintiffs to promote and develop the Product in North America.

96. The representations were material and, at the time they were made, Plaintiffs believed them and did not know the truth and in reliance thereon Plaintiffs were induced to promote and develop the Product to their detriment.

97. The course of conduct of the Defendants as described above was deliberately undertaken and was committed in wanton, willful, and reckless disregard of Plaintiffs' rights and was attended by malice and vindictiveness on the part of said Defendants.

98. By reason of the foregoing, Defendants are liable to Plaintiffs for damages, both compensatory and punitive, and Plaintiffs demand judgment against Defendants on this Count for the sum of $1,000,000

**Comparison of Original Complaint and Proposed Amended Complaint**

in compensatory damages, the specific amount to be proved at trial, and of $1,000,000 in punitive damages.

Count VIII: Negligent Misrepresentation

99. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 98 as if set forth at length herein.

100. At all times material hereto, Defendants knew or should have known that Plaintiffs were relying upon the Agreement in developing and improving the Product.

101. At all times material hereto, Defendants knew or should have known that Plaintiffs had no way of knowing that Defendants had no intention of abiding by the Agreement.

102. At all times material hereto, Defendants failed to exercise reasonable care in that they did not advise Plaintiffs of their intention not to pay Plaintiffs for the services provided.

103. Said omissions were of material facts to the transaction upon which Plaintiffs reasonably relied.

104. Defendants knew or should have known that their negligence would subject the Plaintiffs to an unreasonable financial loss.

105. For the reasons set out above, the negligence of Defendants caused damage to the Plaintiffs.

106. The course of conduct of the Defendants as described above was deliberately undertaken and was committed in wanton, willful, and reckless disregard of Plaintiffs' rights and was attended by malice and vindictiveness on the part of said Defendants.

107. By reason of the foregoing, Defendants are liable to Plaintiffs for damages, both compensatory and punitive, and Plaintiffs demand judgment against Defendants on this Count for the sum of $1,000,000 in compensatory damages, the specific amount to be proved at trial, and for the sum of $1,000,000 in punitive damages.

Count IX: Breach of Fiduciary Duties

108. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 107 as if set forth at length herein.

109. As discussed above, the Agreement was a joint venture agreement (a type of partnership agreement).

110. As detailed above, while working for Motsenbocker Developments as a commissioned sales representative, Plaintiffs worked with the Defendants very closely in developing and promoting the Product for use as a stripper of coverings such as paint, varnish, lacquer and the like from wood and metal parts and panels as part of the process of refinishing.

111. Plaintiffs allege upon information and belief that as a party to the Agreement in or about 2004 and 2005, the Defendants held discussions with potential purchasers of the Product such as Home Depot without informing Plaintiffs.

112. As discussed above, Plaintiffs allege upon information and belief that Motsenbocker Developments has sold substantial quantities of the Product to Home Depot and other purchasers without informing or paying Plaintiffs.

113. As discussed above, Defendants suddenly told Plaintiffs that Defendants were not honoring the Agreement in or about May 2005.

114. As Plaintiffs' partner under the Agreement, Defendants breached their fiduciary duties to Plaintiffs by covertly planning to sell the Product and selling it without informing or paying Plaintiffs.

115. By virtue of Defendants' breach of fiduciary duties owed to Plaintiffs, Plaintiffs suffered damages.

116. The course of conduct of the Defendants as described above was deliberately undertaken and was committed in wanton, willful, and reckless disregard of Plaintiffs' rights and was attended by malice and vindictiveness on the part of said Defendants.

117. By reason of the foregoing, Defendants are liable to Plaintiffs for damages, both compensatory and punitive, and Plaintiffs demand judgment against Defendants on this Count for the sum of $1,000,000 in compensatory damages, the specific amount to be proved at trial, and for the sum of $1,000,000 in punitive damages.

Count X: Accounting

118. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 117 as if set forth at length herein.

**Comparison of Original Complaint and Proposed Amended Complaint**

119. Since in or about May 2005 when Defendants told Plaintiffs that Defendants would not recognize the Agreement, Plaintiffs have repeatedly requested of Defendants payment under the Agreement and have requested both informally and formally an accounting or showing by Motsenbocker Developments of the sums actually and honestly due Plaintiffs from Motsenbocker Developments. Motsenbocker Developments has consistently and adamantly refused without reason or justification to make any accounting or showing in connection with the foregoing sums, transactions, and amounts which constitute a fraudulent attempt to defraud Plaintiffs of sums rightfully due to Plaintiffs, held by Motsenbocker Developments in trust for Plaintiffs, and which sums are well known by Motsenbocker Developments to be due Plaintiffs.

120. Plaintiffs are fearful that, unless enjoined by an order of this Court, Motsenbocker Developments may attempt to change, alter or destroy business and other records of the Agreement and also Plaintiffs' own financial records insofar as they may apply to the subject matter of this lawsuit.

121. By reason of the foregoing, Plaintiffs ask this Court to order Motsenbocker Developments to preserve the business records and to provide an accounting of monies owing under the Agreement.

Count XI: Declaratory Relief

122. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 121 as if set forth at length herein.

123. A dispute has arisen between Motsenbocker Developments and Plaintiffs as to the existence and terms of the Agreement.

124. Motsenbocker Developments contends that the Agreement does not exist, that Plaintiffs developed and promoted the Product with no expectation of compensation, that Plaintiffs developed and promoted a different product than the one Motsenbocker Developments is now selling throughout the United States, that Motsenbocker Developments already compensated Plaintiffs for developing and promoting the Product, that the revenues Motsenbocker Developments is deriving from the Product sold under the name "Paint & Varnish Remover" and various other names is not covered by the Agreement, that Motsenbocker Developments owes Plaintiffs nothing.

**Comparison of Original Complaint and Proposed Amended Complaint**

125. Plaintiffs contend that the Agreement exists, that Motsenbocker Developments is selling large quantities of the Product, and that Motsenbocker Developments owes substantial sums of money to Plaintiffs under the Agreement.

126. An actual existing and bona fide controversy exists between the Plaintiffs and Motsenbocker Developments as to their jural and legal relations in respect to the existence and terms of the Agreement and the rights of the parties under this Agreement that can be determined only by a declaratory judgment.

Count XII: Breach of Contract

127. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 126 as if set forth at length herein.

128. Motsenbocker Developments breached the commission agreement with Brooks or in the alternative with Brooks Industries by refusing to pay Brooks commissions on all sales of the Finish Coat.

129. By reason of the foregoing, Motsenbocker Developments is liable to Plaintiffs for compensatory damages and Plaintiffs demand judgment against Motsenbocker on this Count for the sum of $2,000, the specific amount to be proved at trial.

Count XIII: Unlawful Contract

130. Plaintiffs repeat and reallege all of the allegations contained in paragraphs 1 through 129 as if set forth at length herein.

131. Motsenbocker Developments willfully failed to enter into a written contract with Brooks, as required by California Civil Code § 1738.15.

132. As a proximate result of Motsenbocker Developments' unlawful action, Brooks suffered the denial of commissions owed him on past, current, and future sales of the Product, all to Brooks' damage in the sum of approximately $1,000,000, the amount to be proved at trial.

133. Brooks is entitled to have the damages trebled, pursuant to California Civil Code § 1738.15.

134. Brooks is entitled to reasonable attorney's fees and costs, pursuant to California Civil Code § 1738.16.

**Comparison of Original Complaint and Proposed Amended Complaint**

WHEREFORE, Plaintiffs request a judgment against Defendants for $2,002,000, the specific amount to be proved at trial, with interest and costs, and for an accounting and for declaratory relief on the following counts, and such other relief as the Court deems appropriate:

A. Under Counts I, II, III, IV, V, VI, VII, VIII, IX ,~~and~~ X, and XIII, against Motsenbocker Developments, $1,000,000 in compensatory damages;

B. Under Counts VI, VII, VIII, and IX, against Motsenbocker Developments, $1,000,000 in punitive damages;

C. Under Counts VI, VII, VIII, and IX, against Gregg Motsenbocker and Skip Motsenbocker, $1,000,000 in compensatory damages;

D. Under Counts VI, VII, VIII, and IX, against Gregg Motsenbocker and Skip Motsenbocker, $1,000,000 in punitive damages;

E. Under Count X (Accounting), Plaintiffs demand that:

> 1. Motsenbocker Developments be ordered by a decree of this Court to fully and completely account for all sums due Plaintiffs as commissions on the sales of the Product;

> 2. Plaintiffs have judgment against Motsenbocker Developments in the sum found to be due to Plaintiffs on such accounting, with interest together with the costs and disbursements of this action;

F. Under Count XI (Declaratory Relief), against Motsenbocker Developments for declaratory relief that the Agreement exists, the terms of the Agreement and the monies Motsenbocker Developments is to pay Plaintiffs under the terms of this agreement;

G. Under Count XII, against Motsenbocker Developments $2,000 in compensatory damages;

H. Under Count XIII, against Motsenbocker Developments $1,000,000 in compensatory damages, said damages to be trebled, costs of suit, and such other relief as may be just and proper;

I. That the monetary judgment against the Defendants be joint and several.

**Comparison of Original Complaint and Proposed Amended Complaint**

<u>Jury Demand</u>

<u>Plaintiffs continue to demand trial by jury on all issues so triable.</u>

LEXSEE 2005 U.S. DIST. LEXIS 4875

As of: Sep 28, 2007

**THINKET INK INFORMATION RESOURCES, INC., Plaintiff, v. SUN MICRO-
SYSTEMS INC, Defendant.**

**No. C 97-00300 SI**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA**

*2005 U.S. Dist. LEXIS 4875*

**March 21, 2005, Decided
March 21, 2005, Filed**

**PRIOR HISTORY:** *Thinket Ink Info. Res., Inc. v. Sun
Microsystems, Inc., 368 F.3d 1053, 2004 U.S. App.
LEXIS 9547 (9th Cir. Cal., 2004)*

**DISPOSITION:** Plaintiff's motion to modify June 11,
1997 Order and resultant judgment and Plaintiff's motion
for leave to amend complaint denied. Action dismissed.

**COUNSEL:** [*1] For THINKET INK INFORMA-
TION RESOURCE, INC., RALPH JACKSON, Plain-
tiffs: Rodney G. Moore, Moore Law Firm, San Jose, CA;
Robert David Baker, Robert D. Baker Law Office, San
Jose, CA.

For RALPH JACKSON, Plaintiff: Rodney G. Moore,
Moore Law Firm, San Jose, CA.

For SUN MICROSYSTEMS INC, defendant: Alfred C.
Pfeiffer, Jr., Vincent Colianni, David H. Fallek, Neha S.
Nissen, Bingham McCutchen LLP, San Francisco, CA.

**JUDGES:** SUSAN ILLSTON, United States District
Judge.

**OPINION BY:** SUSAN ILLSTON

**OPINION**

**ORDER DENYING PLAINTIFF'S MOTION TO
MODIFY THIS COURT'S ORDER OF JUNE 11,
1997 AND RESULTANT JUDGMENT; DENYING
LEAVE TO AMEND COMPLAINT; AND DIS-
MISSING ACTION**

On March 18, 2005, the Court heard argument on
plaintiff's motion to modify the June 11, 1997 Order and
resultant judgment and plaintiff's motion for leave to
amend the complaint. Having carefully considered the
arguments of counsel and the papers submitted, the Court
hereby DENIES plaintiff's motions. Having denied the
motions, the remaining claims are time-barred and the
action must be DISMISSED.

**BACKGROUND**

Plaintiff is a minority-owned business certified by
the Small Business Administration. In June 1992, plain-
tiff began providing [*2] defendant with systems sup-
port services at defendant's Fremont product distribution
center ("PDC") via purchase orders. In March 1995,
plaintiff obtained a Master Services Agreement
("MSA"), making it eligible to compete for more of the
work defendant gives to independent contractors. How-
ever, plaintiff alleges that defendant never gave it addi-
tional work under the MSA.

As a result, plaintiff filed this action against defen-
dant in this Court on January 28, 1997, alleging that Sun
failed to give plaintiff additional work because of racial
animus and asserted claims under *42 U.S.C. § 1981, Cal.
Civ. Code §§ 51, 52*, and for breach of contract, breach
of covenant of good faith and fair dealing and promis-
sory estoppel. This Court granted defendant's motion to
dismiss on June 11, 1997, finding that plaintiff's claim of
discrimination for defendant's failure to enter into an
MSA between January 1993 and December 1994 was
time barred under the statute of limitations and that
plaintiff was required to arbitrate the remaining claims.
The Court denied plaintiff's motion for reconsideration

2005 U.S. Dist. LEXIS 4875, *

on August 27, 1997. Although the Court gave plaintiff an opportunity [*3] to file an amended complaint, plaintiff never did. As a result, the Court entered judgment in favor of defendant on February 27, 1998.

After arbitrating its remaining claims, plaintiff appealed this Court's dismissal order to the Ninth Circuit. On May 17, 2004, the Ninth Circuit upheld the Court's dismissal order in most respects. *Thinket Ink Information Resources, Inc. v. Sun Microsystems, 368 F.3d 1053 (9th Cir. 2004)*. However, the court vacated the portion of the order finding plaintiff's pre-MSA *§ 1981* claims to be time barred in order to consider the recent Supreme Court decision of *Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 158 L. Ed. 2d 645, 124 S. Ct. 1836 (2004)*. *Jones* held that the "statute of limitations for a cause of action brought under *42 U.S.C. § 1981*, as amended by the Civil Rights Act of 1991, was governed by the four-year statute of limitations set forth in *28 U.S.C. § 1658(a)* rather than by the personal injury statute of limitations of the forum state." *Thinket, 368 F.3d at 1061*.

As a result, plaintiff has now filed with this Court two motions: 1) motion for leave to amend the complaint; [*4] and 2) motion to modify the Court's Order of June 11, 1997, based on a document received by plaintiff's counsel in 2000. These motions are before the Court today. [1]

   1   The Court GRANTS defendant's request for judicial notice.

## DISCUSSION

### 1. Motion to modify the Court's dismissal order

Plaintiff requests that this Court modify its dismissal order of June 11, 1997 because defendant allegedly withheld production of a Services Agreement signed by both parties. *See* Pl.'s Ex. E. Plaintiff asserts that the Services Agreements did not have an arbitration clause, but that the MSAs did contain an arbitration clause. Plaintiff argues that the new evidence "leaves no doubt that Services Agreement # 1461-0696 is distinct from Master Services Agreement # 1477-1295, and should not have been subject to this court's arbitration order." Pl.'s Mot. at 5.

Plaintiff argues that the Order should be modified under *Federal Rule of Civil Procedure 60(b)*. [2] Plaintiff argues [*5] that modification is proper in this instance under both newly discovered evidence and fraud. However, *Rule 60(b)* provides that the motion "shall be made within a reasonable time, and for [newly discovered evidence or fraud] not more than one year after the judgment, order, or proceeding was entered or taken." The Court entered judgment in this case on February 27,

1998 *See* Docket # 39. Therefore, plaintiff clearly has failed to satisfy the requirements of *Rule 60(b)*.

   2   *Fed. R. Civ. P. 60(b)* states: "[T]he court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . 2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under *Rule 59(b)*; 3) fraud . . . misrepresentation, or other misconduct of an adverse party. . . ."

Plaintiff argues that the June 11, 1997 order did not become final until the Ninth Circuit issued its opinion on May 17, 2004. However, the [*6] one-year limitation period for *Rule 60(b)* is not tolled during an appeal. *Nevitt v. United States, 886 F.2d 1187, 1188 (9th Cir. 1989)*. Therefore, this Court does not have jurisdiction to consider plaintiff's motion and DENIES plaintiff's motion to modify the judgment or the Court's Order. *Id.*

### 2. Leave to amend

Plaintiff requests leave to amend his complaint to bring two causes of action: 1) a claim under *42 U.S.C. § 1981* that defendant did not provide increased work to plaintiff in violation of an implied in fact contract because of race; and 2) a claim of wrongful termination in violation of public policy.

The Court will consider the following factors when faced with a motion for leave to amend: the futility of the proposed amendment, undue delay, bad faith, and undue prejudice to the opposing party. *Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)*.

### A. *Section 1981* claim

The Ninth Circuit remanded this case in order to allow the Court to consider the statute of limitations of plaintiff's *section 1981* pre-MSA claims in light of *Jones*. In its original complaint, plaintiff's *section 1981* pre-MSA [*7] claim dealt with defendant's failure to provide plaintiff with an MSA or any other written contract aside from purchase orders:

   "In spite of plaintiff's efforts, plaintiffs' [sic] were unable to secure a written contract or Master Services Agreement from defendant "SUN" . . . . Between approximately January 1993 and December 1994, plaintiff filed applications for the "MSA" and was denied three (3) times without explanation. Further, plaintiff was denied twice (2) for the Reselling Equipment Program."

Complaint at PP 8-9.

Therefore, plaintiff's claims were related to contract formation, which was recognized by *section 1981* before the amendments of 1991. *See Patterson v. McLean Credit Union, 491 U.S. 164, 176-177, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989)*. *Jones* altered the statute of limitations only for causes of action arising under *section 1981* as amended by the Civil Rights Act of 1991. *Thinket, 368 F.3d at 1061*. Thus, *Jones* did not alter the statute of limitations for a *section 1981* claim based on a failure to contract. *See Johnson v. Crown Enterprises, Inc., 398 F.3d 339, 2005 WL 121876, *2 (5th Cir. 2005)*.

In order to avoid a finding that plaintiff's [*8] pre-MSA *section 1981* claims are barred under the statute of limitations, plaintiff changed course in its Proposed First Amended Complaint and has abandoned its claim that the defendant refused to enter into an agreement with plaintiff on the basis of race. Instead, plaintiff alleges that there was an implied in fact contract between the parties from June 1992 to December 1994. PFAC at P 5. This is in direct contradiction with plaintiff's original complaint, which brought a claim on the basis of defendant's failure to enter into an agreement. This was done because the 1991 amendment to *section 1981* added the subsection defining the statute's "make and enforce contracts" language to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *42 U.S.C. § 1981(b); see* PFAC at P 11. Therefore, plaintiff is changing course in order to fit his claim into the four year statute of limitations.

Plaintiff will be denied leave to amend because its Proposed First Amended Complaint directly contradicts the original Complaint. *See Parker v. Joe Lujan Enterprises, Inc., 848 F.2d 118, 121 (9th Cir. 1988)* [*9] (holding that district court properly denied leave to amend because plaintiff could not justify delay to add a theory inconsistent with original complaint, among other reasons). Furthermore, plaintiff cannot assert that an implied in fact contract existed because it already had an express contract. *See* Complaint at P 8 ("[b]y June 1992, plaintiff started work for defendant via purchase orders only"); Jackson Decl. at P 4 ("Thinket performed services for Sun at Sun's Fremont PDC facility. That work was provided pursuant to Purchase Orders."). The implied agreement and the purchase orders deal with the same subject matter: the provision of services by plaintiff to defendant. "It is well settled that the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract." *Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002)*.

The Court finds that plaintiff cannot plead a valid claim under *section 1981* relating to an implied agreement between the parties. Because of this, plaintiff may only plead a cause of action under *section 1981* [*10] that defendant failed to enter into contractual agreements because of racial animus. This is exactly what plaintiff did in his original complaint. As discussed above, the one-year statute of limitations continues to apply under *Jones* for causes of action in existence before the 1991 amendments, which includes contract formation. Therefore, the Court finds that plaintiff's claim regarding an implied contract is futile, and that its claim in the original complaint under *section 1981* is time-barred under the one-year statute of limitations.

**B. Wrongful termination**

Plaintiff's claim for wrongful termination in violation of public policy lacks standing. It is undisputed that plaintiff was an independent contractor: "Thinket provides, inter alia, database design and development, computer design, and computer software and hardware support and maintenance services to governmental and private clients." Proposed First Amended Complaint at P 1. Under California law, independent contractors do not have standing for claims of wrongful termination in violation of public policy. *Sistare-Meyer v. Young Men's Christian Assoc., 58 Cal.App.4th 10, 17-18, 67 Cal. Rptr. 2d 840 (1997)*. Therefore, [*11] plaintiff does not have standing to bring this claim, and it will not be granted leave to amend its complaint in this manner.

Given that neither of the proposed causes of action are valid, the Court DENIES plaintiff's motion for leave to amend.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES plaintiff's motion to modify the Court's June 11, 1997 Order and resultant judgment and DENIES plaintiff's motion for leave to amend the complaint. [Docket # 85, # 87]

At oral argument, counsel agreed that unless the motions to amend are granted, plaintiff's claims must remain dismissed as time barred, since none of the existing claims in the action arose under the post-1990 amendment of *section 1981*. Accordingly, this action is DISMISSED, and the clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 21, 2005

SUSAN ILLSTON

United States District Judge

2005 U.S. Dist. LEXIS 4875, *

**JUDGMENT**

    This action has been dismissed as time barred. Judgment is entered accordingly.

**IT IS SO ORDERED AND ADJUDGED.**

Dated: March 21, 2005

SUSAN ILLSTON

United States District Judge

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **George A. Brooks et al** )<br>Plaintiffs, )<br>)<br>vs. )<br>**Motsenbocker Advanced** )<br>**Developments, Inc. et al** )<br>)<br>Defendants ) | Civil Action No. 06cv1024 AW<br>Judge Alexander Williams, Jr. |

### Reply In Support of

### Motion for Leave to File Amended Complaint

In reply to Defendants' opposition, Plaintiffs would like to apprise the Court of an opinion on all fours with this one. Indeed it could not be more analogous since it was decided by the Southern District of California in the Brooks v. Motsenbocker suit that is substantially identical to this one! As well, Plaintiffs would like to emphasize the strength of their motion and point to some of the defects in Defendants' opposition—especially the fact that Defendants have all but conceded the motion.

### I.  California Decision

Plaintiffs filed substantially the identical motion in the San Diego, California litigation.  Attached as Exhibit A is the decision of the California court granting the motion.  The opinion is dispositive of the arguments that Defendants make in their opposition.  Defendants can point to no reason why one court should grant and the other should deny the self-same motion.

### II.  Motion to Transfer & Statute of Limitations

Rather confusedly, approximately one-half of Plaintiffs opposition is devoted to arguing their motion to transfer. That an opposition devotes so much effort to another legal issue—a posture that can only but weaken their argument—is an indication that something unusual is occurring, something is amiss. Apparently Defendants have belatedly realized the weakness of their earlier motion to transfer and are attempting to remedy the weakness here; they realize that their opposition to the present motion is untenable and so do not mind addressing other issues instead of the ones at hand.

Plaintiffs would suggest that the key to understanding the confused state of Defendants' arguments is to be found at page 3 of the Opposition. The rest of Defendants' motion to transfer arguments consists essentially of rehashing their prior motion to transfer arguments. But on page 3, Defendants make their only substantive argument. Plaintiffs had pointed out to the Court the unfairness and lack of precedent behind Defendants' argument that Plaintiffs should be punished by complying with the statute of limitations and filing suit in California. (Opposition to Supplemental Filing at 2-3.) In response to this observation, Defendants on page 3 assert that it would be "nonsensical" to agree with Plaintiffs argument. Defendants offer no explanation for their assertion of "nonsensical," nor cite any precedent.

Apparently, Defendants have only now realized the unfairness of their argument to transfer based on punishing Plaintiffs for preserving their claims and so seeks to bolster their transfer

argument at this late date—sacrificing the opposition to the
Motion to Amend by all but conceding the motion to amend.

### III.  Progress of Maryland Litigation

Yet another indication of the weakness of Defendants'
opposition is found on page 5 of their opposition at footnote 2.
In this footnote, Defendants make out a central argument for not
granting a motion to amend, an argument that when supported
would almost alone be grounds to deny a motion to amend.  Why
hide such a central, highly-relevant argument in a footnote?
The most likely answer is not flattering to the Defendants'
position.  Defendants argue in footnote 2 that a motion to amend
is weaker in the later stages of the litigation since prejudice
is often likely.  The problem with the argument is that we are
in early stages of litigation—very early stages, not even a
scheduling order.  Quite significantly, the central theme of
Defendants' arguments in favor of transfer made in their earlier
filings is that the California litigation is advanced while the
Maryland litigation has barely started.  (See, e.g.,
Supplemental Filing Regarding Defendants' Motion to Dismiss or
Transfer at 1.)

Apparently on second thought Defendants realized how
untenable the argument was, but inexplicably retained it in a
footnote.  Since the litigation is in such an early stage,
Defendants could not be prejudiced and so the motion should be
granted.  Wright, Miller & Kane, Federal Practice and Procedure:
Vol 6 sec 1487 (citations omitted).

### IV.  Creating Jurisdiction in Virginia

Defendants argue that Mr. Brooks notifying the Court that he was mistaken about the location of a Maryland meeting since it occurred in Virginia was and is done in an attempt to establish jurisdiction of some unspecified lawsuit in the Commonwealth of Virginia and so should be denied as an instance of forum shopping. (Opposition at 6.)  The California court made short shrift of this argument. (Exhibit A, Order Granting Motion to Amend at 4-5.)  The argument seems to be a straw-man argument, setting up the specter of a jurisdiction dispute in some unspecified Virginia litigation. Defendants cite no precedent for their proposition that motions to amend should be denied because it may affect the jurisdictional dispute of some unspecified future litigation in another state. Nor can they.

## V.  Correcting Errors in Complaint

Second in length only to its motion to transfer arguments, Defendants argue that the amendment should be denied since the modifications of facts in the Amended Complaint are apparently made in bad faith. (Opposition at 6-9.)  Defendants cite cases holding that an amendment will not be allowed where new facts are alleged that contradict prior "harmful facts" where the amendment are done in "anticipation of an adverse ruling" or in reaction to an adverse ruling  (Opposition at 8.)  Defendants never articulate what exact adverse ruling is about to befall Plaintiffs if the amendment were denied.  Nor do they explain to the court why the facts of the former complaint are harmful to Plaintiffs.

There is a reason for this glaring absence—they cannot so articulate and explain.  The only motion pending is a motion to

transfer or to dismiss for lack of personal jurisdiction.  Mr.
Brooks' good faith correction that a meeting occurred not in
Maryland, but in Virginia can only do injury to his claim of
personal jurisdiction in Maryland.  Defendants' argument falls
flat on its face.  Likewise, what harm are Plaintiffs avoiding
by using the more precise term of "joint venture" to clarify the
type of partnership agreement at issue?  What harm is avoided by
correcting decade-old dates?  Especially where the exact dates
are of no moment and likely to be of no moment in any motion?

The cases Defendants cite hardly support the proposition that
a plaintiff is prohibited from correcting non-consequential
dates and vocabulary.  In each case, the plaintiff had had a
ruling go against it or about to go against it and was blatantly
changing facts of consequence to avoid the ruling.  Such is far
from the case here.  And Defendants can cite no case that
amendments at this early stage should not be allowed.

### VI.  Summary Judgment Argument

Finally, Defendants argue that the amendment adding a
California statutory cause of action would be futile since
Plaintiffs never discusses in the Amended Complaint selling
products in California.  (Opposition at 9-10.)  The Complaint
and Amended Complaints say otherwise.  (Amended Complaint ¶¶ 43,
45, 48, 132.)  But of even greater significance, Defendants cite
no case for the proposition that a plaintiff suing under the
California statutory cause of action must allege in the
complaint exactly what sales occurred in California.  No such
requirement exists.

Perhaps Defendants meant to make a summary judgment argument——Plaintiffs can prove no facts showing that Plaintiff ever made sales as a sales representative in the State of California.  If so, such argument fails since Defendants have attached no affidavit or even made a factual assertion that no sales occurred in California.  The fact is that Plaintiffs made sales in California.

Respectfully submitted,

Dated: **9 October 2007**     Signed:     _____/s/_____
Michael J. Trevelline, Md. Fed. Bar No. 14733
Address:     1823 Jefferson Place, NW
Washington, DC 20036-2504
Telephone:    (202) 737-1139/Fax:  (202) 775-1118
Email:      mjt@mjtlegal.com

**Attorney for Plaintiffs George Brooks and Brooks Industries, Inc.**

### Certificate of Service

I hereby certify that this motion and supporting memorandum this **9th day of October 2007** was served by electronic case filing through the Court.

_____/s/_____
Michael J. Trevelline

1 Exhibits:
A.  Order Granting Plaintiffs' Motion for Leave to File First Amended Complaint in San Diego Litigation

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          SOUTHERN DISTRICT OF CALIFORNIA

10

11  GEORGE A. BROOKS; BROOKS          )  Civil No. 07cv773 BTM (NLS)
    INDUSTRIES, INC.,                 )
                                      )  **ORDER GRANTING PLAINTIFFS'**
12                   Plaintiff,       )  **MOTION FOR LEAVE TO FILE FIRST**
    v.                                )  **AMENDED COMPLAINT**
13                                    )
    MOTSENBOCKER ADVANCED             )  [Doc. No. 11]
14  DEVELOPMENTS, INC.; GREGG A.      )
    MOTSENBOCKER; SKIP A.             )
15  MOTSENBOCKER,                     )
                                      )
16                   Defendants.      )
                                      )
17  ─────────────────────────────────

18       Plaintiffs George Brooks and Brooks Industries, Inc. (Plaintiffs) filed a complaint in this Court

19  on April 27, 2007 against Motsenbocker Advanced Developments, Inc. (MAD), Gregg Motsenbocker

20  and Skip Motsenbocker (Defendants). Defendants answered the complaint on May 17. On July 17,

21  Plaintiffs filed this motion for leave to file an amended complaint. [Doc. No. 11.] Defendants oppose

22  one of the four proposed amendments.

23       The district judge referred the motion to the undersigned pursuant to 28 U.S.C. § 631(b)(1)(A).

24  This motion came on for hearing on September 6, 2007 at 11:00 a.m. The Court, under Civil Local Rule

25  7.1(d)(1), found the matter suitable for decision without oral argument and took it under submission.

26  For the following reasons, the Court **GRANTS** Plaintiffs' motion for leave to file an amended

27  complaint.

28  / / /



                                      1                                    07cv773 BTM (NLS)

1                                                     RELEVANT FACTS

2   **Procedural History.**

3          The original complaint alleges twelve claims for breach of contract, fraud and other related

4   claims.  After Defendants answered, the Court ordered the parties to appear for an Early Neutral

5   Evaluation (ENE) on June 27, 2007.  Defendants, however, and their lead trial counsel failed to appear.

6   Instead of reconvening the ENE, the Court ordered the parties to comply with Federal Rule of Civil

7   Procedure 26 and to appear for a case management conference (CMC) on August 10, 2007.

8          Plaintiffs filed this motion on July 17, 2007.  The Scheduling Order, set at the August 10 CMC,

9   requires that all motions to amend the pleadings be filed by September 21, 2007.

10  **The Complaint.**

11         Plaintiffs allege in the original complaint that Brooks entered into an agreement with MAD to

12  develop and market a liquid remover to use as a remover for refinishing surfaces covered by paint and

13  paint-like coverings.  Comp. ¶¶ 9-17, 21-25.  Until that point, Plaintiffs allege that MAD had only been

14  marketing the liquid remover as a graffitti remover.  Compl. ¶¶ 9-12.  Plaintiffs allege that MAD

15  breached the contract by not paying commissions on sales of the liquid remover.  Compl. ¶¶ 60, 64-66.

16  **The Proposed First Amended Complaint (FAC).**

17         Plaintiffs now seek to change these factual assertions:

18              Para. 7: Seeks to change the assertion of personal jurisdiction from the
                "Maryland long-arm statute" to the assertion that "[t]his Court has
19              personal jurisdiction over the defendants by reason of their residency in
                California.
20
                Para. 21: Seeks to change the fact that Brooks met with Gregg
21              Motsenbocker not in Baltimore, but in "Virginia near Ronald Regan
                National Airport."
22
                Para. 24: Seeks to add the phrase "(joint venture)" after "a type of
23              partnership agreement."·

24         Plaintiffs also seek to add a new cause of action for unlawful contract based on the factual

25  assertions already in the complaint.  *See* FAC ¶¶ 130-134.  They assert that their counsel, through

26  continued research, has found that the California Civil Code requires manufacturers and distributors to

27  enter into written contracts with sales representatives, and if they fail to do so, provides for a trebling of

28  damages and award of attorney's fees.  Mem. P.&A. p.2, ll.1-4.

                                                          2                              07cv773 BTM (NLS)

**The Maryland Action.**

Plaintiffs filed an action alleging similar claims against Defendants in the District Court in Maryland. *See* Defs.' Opp'n to Mot. to Dismiss (Opp'n), Ex. A. In the Maryland action, Plaintiffs assert that Brooks and Gregg Motsenbocker met in Baltimore, Maryland. Opp'n, Ex. A: A10 ¶ 21 (Compl.), A73 ¶ 5 (Brooks Affidavit), A192 ll.15-19, 20-22 (Counsel's Statements). Defendants moved to dismiss the action, or in the alternative, to transfer it, to this District. Opp'n p.2, ll.18-20. Defendants assert that the trial court relied on Brooks' allegation that the meeting took place in Maryland to dismiss for lack of jurisdiction. Opp'n p. 3, ll.15-17.

While on appeal to the Fourth Circuit, Plaintiffs filed a motion to supplement the record. Reply, Ex. A. In that motion Plaintiffs assert that Brooks was mistaken in originally asserting that the meeting took place in Maryland, and that it in fact occurred in Virginia. Reply, Ex. A, p.1 ¶ 2, p.4 ¶¶ 2-3. Defendants opposed the motion to supplement. Reply, Ex. B. Plaintiffs represent that the Fourth Circuit denied the motion without prejudice to filing a motion to supplement in the Maryland District Court. Reply, Ex. A, p.2 ¶ 3.

Defendants allege that Plaintiffs have "been found to have falsely claimed that the meeting was in Baltimore, Maryland"[1] and that "Defendants had insufficient contacts with Maryland to establish the court's jurisdiction there." Opp'n p.3, ll.13-17.[2]

### DISCUSSION

**Rule 15.**

Federal Rule of Civil Procedure 15(a) permits the amendment of a counterclaim after the filing of responsive pleadings only with leave of court. Courts must apply the policy with extreme liberality. *Owen v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) (citation omitted). The underlying purpose of Rule 15(a) is "to facilitate decisions on merits, rather than on technicalities or pleadings." *James v. Pliler*, 269 F.3d 1124, 1126 (9th Cir. 2001).

When deciding whether to grant leave, a court must consider whether there is any bad faith,

---

[1] Defendants never mentioned Plaintiffs' motion to supplement the record filed in January 2007, which Defendants opposed.

[2] Defendants do not attach any order from the Maryland District Court or Fourth Circuit showing the basis of the District Court's decision, the issues on appeal or why the matter was remanded.

1 undue delay, prejudice to the opposing party, futility and whether the party has previously filed an

2 amended pleading. *Allen v. Beverly Hills*, 911 F.2d 1074, 1079 (9th Cir. 2001) (citation omitted).

3 Denying leave to amend requires a specific finding that the opposing party will be prejudiced, the

4 moving party is acting in bad faith, or the amendment will be futile. *DCD Programs, Ltd. v. Leighton*,

5 833 F.2d 183, 186-187 (9th Cir. 1987). The party opposing the motion bears the burden to show it will

6 be prejudiced. *Id.* at 187.

7 **Changes to Paragraphs. 7 and 24 and the New Cause of Action.**

8     Defendants do not oppose the proposed amendments to the assertion of personal jurisdiction in

9 this Court (para. 7), the addition of "(joint venture)" referring to the type of contract at issue (para. 24)

10 or the addition of the new claim for relief (count XIII). Plaintiffs brought the motion even before the

11 issuance of the scheduling order. Defendants cite to no prejudice that could result from these

12 amendments.

13 **Judicial Estoppel and Paragraph. 21.**

14     Defendants argue they will be prejudiced by the proposed change in paragraph 21 because the

15 proposed change seeks to "change the evidence" that the Maryland trial court relied upon to dismiss that

16 action and that Plaintiffs seek to create a "new" record that may allow them to continue litigating in,

17 perhaps, the Virginia forum. Opp'n p.3 ll.20-24. They also argue that paragraph 21 concerns "a fact

18 that may go to the court's jurisdiction." Opp'n p.3 l.12. Defendants assert that the doctrine of judicial

19 estoppel prevents Brooks from trying to plead around his prior sworn testimony. Opp'n p.2, ll.2-3. In

20 support, they rely on California case law.

21     A federal court relies on judicial estoppel "to prevent a party from gaining an advantage by

22 taking inconsistent positions" and "because of general considerations of the orderly administration of

23 justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast

24 and loose with the courts." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001)

25 (internal quotations omitted). The U.S. Supreme Court has provided factors a court may consider to

26 determine whether judicial estoppel applies:

27 / / /

28 / / /

4

First, a party's later position must be "clearly inconsistent" with its earlier position. [Citations omitted.] Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled[.] [Citation omitted.] **Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations,"** [citation omitted] and thus no threat to judicial integrity. [Citations omitted.] A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. [Citations omitted.]

*New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001) (emphasis added). The Ninth Circuit "has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton*, 270 F.3d at 783.

Here, Defendants assert that Plaintiffs did **not** succeed in pleading that the meeting took place in Maryland. Because Plaintiffs were not successful in that allegation, their now "inconsistent" position that the meeting actually took place in Virginia "introduces no 'risk of inconsistent court determinations.'" *New Hampshire*, 532 U.S. at 751. Further, for purposes of the litigation in this District, whether the meeting occurred in Maryland or Virginia would not create an unfair advantage for Plaintiffs or impose an unfair detriment on Defendants because personal jurisdiction is not in dispute here. Plaintiffs, therefore, cannot be judicially estopped from amending their complaint to assert this new fact.

The Court, therefore, **GRANTS** Plaintiffs' motion for leave to file an amended complaint. Plaintiffs are **ORDERED** to file their first amended complaint forthwith.

**IT IS SO ORDERED.**

DATED: September 6, 2007

Hon. Nita L. Stormes
U.S. Magistrate Judge

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DISTRICT

GEORGE A. BROOKS, *et al.*,              *

      Plaintiffs,                          *

          v.                              *     Civil Action No. AW-06-1024

MOTSENBOCKER ADVANCED                  *
DEVELOPMENTS, INC., *et al.*,            *

      Defendants.                          *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## MEMORANDUM OPINION

Plaintiffs George A. Brooks ("Brooks" or "Plaintiff") and Brooks Industries, Inc., bring this action against Defendants Motsenbocker Advanced Deveopments, Inc. ("Motsenbocker"), Gregg Motsenbocker, and Skip Motsenbocker (collectively "Defendants") for breach of contract, misrepresentation, and related claims. Currently pending before the Court is Defendants' Motion to Transfer (Docket Nos. 10 and 33) and Plaintiffs' Motion for Leave to File Amended Complaint (Docket No. 35). On February 20, 2008, the Court held a telephonic status conference on the Motion to Transfer and the pending evidentiary hearing on remand from the Fourth Circuit. The Court has reviewed the entire record, including the pleadings on the instant motions and the arguments of counsel. For the reasons state below, the Court will GRANT Defendants' Motion to Transfer and DENY-AS-MOOT Plaintiffs' Motion for Leave to Amend Complaint.

## FACTUAL & PROCEDURAL BACKGROUND

The facts of this case have been set forth in the Court's previous Memorandum Opinion (Docket No. 22) of December 8, 2006. However, at this time, the Court will restate the pertinent

1

facts as they relate to the instant motions. Brooks is a resident of Prince George's County, Maryland, and Brooks Industries, a janitorial services company that sells cleaning products, is a Maryland corporation, having its principal place of business in Prince George's County, Maryland. Motsenbocker, which owns patents on cleaning solvents to remove paint and paint-like coverings, is a California corporation with its principal place of business in San Diego, California. The individual Defendants also reside in San Diego.

The parties allegedly entered into an agreement whereby Plaintiff would market and sell one of Motsenbocker's products, MÖTSENBÖCKER'S LIFT OFF® Finish Coat. As part of the agreement, Plaintiff would receive a flat 10% commission for life (or at least for the life of the product) and receive an additional commission on retail and wholesale sales, and he could market the products under whatever name he had chosen. Thereafter, Brooks began marketing the product and did further experimentation to develop it. This agreement existed from about 1999 until May 2005, when Motsenbocker breached the agreement by refusing to acknowledge its existence.

On June 20, 2006, Defendants filed a Motion to Dismiss for Lack of Jurisdiction, or in the alternative, to Transfer the Case and Stay Discovery (Docket No. 10). Following a hearing on the motion, the Court granted Defendant's Motion to Dismiss on December 8, 2006 (Docket Nos. 22 and 23). Plaintiffs appealed this ruling to the Fourth Circuit, whereby the Fourth Circuit remanded the case and instructed this Court to hold a separate evidentiary hearing or defer ruling on the issue of jurisdiction pending the receipt of evidence at trial. Subsequently, in April 2007, Plaintiffs filed a complaint substantially identical to this case in the Southern District of California, with the addition of a California state law cause of action.[1]

---

[1] *See Brooks v. Motsenbocker*, Case No. 07-cv-0773 (S.D. Cal.).

2

## ANALYSIS

Pursuant to 28 U.S.C. §1404(a), a district court may transfer any civil action to any other district or division where it might have been brought, for the convenience of the parties and witnesses and in the interest of justice. In deciding whether to transfer a civil action to another district court, the Court considers several factors, including: 1) the weight accorded to the plaintiff's choice of venue; 2) witness convenience and access; 3) convenience of the parties; and 4) the interest of justice. *Dicken v. United States*, 862 F.Supp. 91, 92 (D. Md. 1994).

The Court has been apprised of the parallel proceeding in California that is progressing simultaneously with this case. That case is much further along in discovery than this action, where discovery has not commenced and no Scheduling Order has been issued. Also, Defendants informed the Court that discovery in the California action will be completed in May, and Defendants have also filed a motion for summary judgment, which is scheduled for oral argument in California in April 2008.

Considering the factors above, the Court will transfer this case to the Southern District of California. The Court believes that, in the interest of justice, there are no compelling reasons to continue this action in Maryland while there is an identical, pending lawsuit in another venue that is much further advanced in litigation than the present action. Moreover, in addition to preventing two identical cases from proceeding in separate venues, transferring this case will obviate the need to expend resources in conducting an evidentiary hearing, since Plaintiffs have indicated that they may need to perform additional discovery to establish jurisdictional facts.

## CONCLUSION

Therefore, the Court will GRANT Defendants' Motion to Transfer pursuant to 28

U.S.C.§1404 and transfer this case to the Southern District of California. Also, the Court will

DENY-AS-MOOT Plaintiffs' Motion to for Leave to Amend Complaint. The parties are to ensure

that the Maryland suit and any claims filed therein are consolidated with the California action. A

separate Order consistent with this Memorandum Opinion will follow.


<u>  February 25, 2008  </u>                                  <u>          /s/            </u>
            Date                                          Alexander Williams, Jr.
                                                      United States District Judge

4

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

### George A. Brooks, et al.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED** Prince Georges
**PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

**Michael Trevelline**
**1823 Jefferson P1 NW**
**Washington, DC 20036**

**DEFENDANTS**

### Motsenbocker Advanced Development, et al.

FILED

FEB 2 7 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**ATTORNEYS (IF KNOWN)**

**'08 CV 0378 WQH CAB**

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX)**
**(For Diversity Cases Only)**          FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

### 28 USC 1332

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Electmant | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**          DISTRICT OF MARYLAND

☐ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☒ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $ 2,002,000.00

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE _____ Docket Number _____

DATE 2/27/08          SIGNATURE OF ATTORNEY OF RECORD