Patrick D. Webb, Esq., State Bar No. 82857
**WEBB CAREY**
402 West Broadway Ste 680
San Diego, Calif. 92101
(619) 236-1650

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEORGE A. BROOKS, BROOKS INDUSTRIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>MOTSENBOCKER ADVANCED DEVELOPMENTS, INC.; GREGG A. MOTSENBOCKER; SKIP A. MOTSENBOCKER,<br><br>Defendants. | Case No. 08-378 BTM NLS<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>DATE: September 26, 2008<br>TIME: 11:00 A.M.<br>JUDGE: Barry Ted Moskowitz<br><br>**Per Chambers No Oral Argument Unless Requested by Court** |

Defendants, MOTSENBOCKER ADVANCED DEVELOPMENTS, INC.; GREGG A. MOTSENBOCKER; SKIP A. MOTSENBOCKER, submit the following memorandum of points and authorities in support of their motion for summary judgment, or in the alternative summary adjudication on all causes of action against the individual non-corporate Defendants, based upon the lack of any genuine material issue of fact that neither Gregg Motsenbocker, nor Skip Motsenbocker, made any representations to the Plaintiffs that were not in the scope of their authority, while acting on behalf of the corporate defendant, Motsenbocker Advanced Developments, Inc.

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND . . . . . . . . . . 1

II. SUMMARY JUDGMENT IS GRANTED WHERE THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT . . . . . . . . . . 9

A. The Moving Party has the Burden to Demonstrate the Absence of a Genuine Issue of Material Fact. . . . . . . . . . . 9

B. Then the Opposing Party has the Burden to Demonstrate the Existence of a Genuine Issue of Material Fact . . . . . . . . . . 10

C. A Mere Scintilla of Evidence will not create a Genuine Issue of Material Fact . . . . . . . . . . 11

D. Plaintiffs' Self-Serving Testimony Unsupported by Corroborating Evidence Will Not Create a Genuine Issue of Material Fact . . . . . . . . . . 11

III. THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT THE INDIVIDUAL DEFENDANTS MADE ANY REPRESENTATIONS TO THE PLAINTIFFS OUTSIDE THE SCOPE OF THEIR AUTHORITY ON BEHALF OF THE CORPORATE DEFENDANT, MAD, INC. . . . . . . . . . .

IV. CONCLUSION . . . . . . . . . . 23

## TABLE OF AUTHORITIES

**Cases**

Abbott v. The 76 Land and Water Co., 161 Cal. 42, 48-49 (1911) . . . . . 21

A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1032 (Fed.Cir.1992) . . . . . 19, 22

Aguilar v. Atlantic Richfield Co., 25 Cal. 4th 826, 845, fn. 4 (2001) . . . . . 9

American International Group v. American International Bank, 926 F.2d 829, 833 (9th Cir. 1991) . . . . . 10, 11

Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 256 (1986) . . . . . 9, 10

Celotex Corp. v. Catrett 477 U.S. 317 (1986) . . . . . 9, 10

Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 192-193 (2d Cir.1996) . . . . . 20

Danjaq LLC v. Sony Corp., 263 F.3d 942, 952 (9th Cir. 2001) . . . . . 19, 22

DiSalvo v. Bank of Cal., Nat. Ass'n 274 Cal.App.2d 351, 356 (1969) . . . . . 12

Estate of Housley, 56 Cal. App. 4th 342, 358 (1997) . . . . . 12

Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins. Co., 940 F.2d 550, 554 (9th Cir. 1991) . . . . . 12

Gregory v. Hamilton, 77 Cal. App. 3d 213, 220 (1978) . . . . . 12

Hanson v. Dataproducts Corp., 976 F.2d 497, 507 (9th Cir. 1992) . . . . . 11

Hot Wax Inc. v. Turtle Wax, Inc., 191 F.3d 813 (7th Cir.1999) . . . . . 20, 22

Immigrant Assistance Project of Los Angeles County Federation of Labor v. I.N.S., 306 F3d 842, 856 (9th Cir. 2002) . . . . . 19

In re Beaty, 306 F3d 914, 920, 921 (9th Cir. 2002) . . . . . 19

Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 836 (9th Cir. 2002) . . . . . 19, 20, 22

Johnson v. Washington Metropolitan Area Transit Authoirty, 883 F.2d 125, 128-29 (D.C. Cir. 1989) . . . . . . . . 11

Matsushita Elec. Industrial Co. v. Zenith Radio 475 U.S. 574 (1986) . . . . . . . . 9

Meade v. Cedarapids, Inc., 164 F.3d 1218, 1225 (9th Cir. 1999). . . . . . . . 10

Mycogen Cor. v. Monsanto Co., 28 Cal.4th 888, 905, fn. 10 (2002) . . . . . . . . 21

Nilsson v. City of Mesa. 503 F.3d 947, 952 (9th Cir. 2007) . . . . . . . . 11

Noogle v. Bank of America, 70 Cal.App.4th 853, 860 (1999) . . . . . . . . 22

Notten v. Mensing, 3 Cal. 2d 469 (1935) . . . . . . . . 12

Pasqualetti v. Galbraith, 200 Cal. App. 2d 378, 383 (1962) . . . . . . . . 12

Ralston Purina Co. v. Hobson, 554 F.2d 725 (5th Cir. 1977) . . . . . . . . 11

S.E.C. v. Phan, 500 F.3d 895, 909-10 (9th Cir. 2007) . . . . . . . . 11

Sparks v. Lauritzen 748 Cal.App.2d 269, 272 (1967) . . . . . . . . 12

Summersv. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) . . . . . . . . 11

Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) . . . . . . . . 10

TW Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631-32 (9th Cir. 1987) . . . . . . . . 11

Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) . . . . . . . . 11

Wang v. Hsu, 1991 LEXIS 4398 at [*25](D. Cal. 1991) . . . . . . . . 12

Ward v. Taggart, 51 Cal.2d 736, 744 (1959) . . . . . . . . 14

White v. Western Title Ins. Co., 40 Cal.3d 870, 902 (1985) . . . . . . . . 14

**Statutes and Rules**

Cal. Civil Code 1738.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 23

Cal. Civil Code 1738.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 17

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 56(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**I. FACTUAL BACKGROUND**

This is the first lawsuit Plaintiff George Brooks filed against Defendants Motsenbocker Advanced Developments, Inc., Gregg A. Motsenbocker, and Skip A. Motsenbocker (hereinafter the "Motsenbocker defendants"). As the Court may recall, it was originally dismissed by the U.S. District Court for Maryland, and appealed to the Fourth Circuit Court of Appeals, where it was remanded to the District of Maryland, and then transferred to this Court on February 25, 2008. It was then low-numbered, on May 7, 2008, but not consolidated with Brooks' second lawsuit against the Defendants, in U.S. Dist. Court for So. Dist. of Cal. Case No. 77cv778 BTM NLS.

Plaintiff Brooks has changed his sworn story twice since filing the first action, and filed a new declaration in the appellate record contradicting the first declaration he filed in the Maryland District Court. Webb Decl. Exhibits A & B. Here, Mr. Brooks continues to allege his first story as to how the alleged agreement between the parties came into existence, despite the fact that he has made contradictory allegations in the second action. As the Court may also recall, Brooks sought, and was granted, leave to amend the California complaint in Case No. 07cv773, to change his story that the alleged oral contract between the parties was entered in Maryland, to claim that the alleged oral contract was entered in Virginia.

The undisputed fact that Brooks claims to have subsequently recalled that the purported agreement was reached in Virginia, only after he was unable to demonstrate that Defendants had minimum contacts in Maryland, calls into serious question the veracity of the allegations of both of his complaints, and all of his declarations before the Court. It would appear that Mr. Brooks is quite willing to change his story for personal gain, in his continuing efforts to unfairly and falsely allege that he has some kind of relationship with the Defendants that would cause them liability to either of the Plaintiffs.

Defendant, Motsenbocker Advanced Developments, Inc. (MAD, Inc.) is a fledgling startup corporation in San Diego, California. Gregg Motsenbocker is president of the company.

MAD, Inc. has eight employees, and is a manufacturer of several patented products for removing paint and other adherents from certain surfaces. Motsenbocker Decl. ¶ 1.

There is no evidentiary support that Plaintiffs had anything to do with the development of the patented products for which they wishfully seek to obtain commissions. All of the patented products were invented and developed by Gregg Motsenbocker almost 10 years before Brooks ever contacted the Motsenbockers. Both patents identified in Plaintiffs' amended complaint claim:

> This invention is primarily directed toward the removal of adherent layers of certain kinds of adherent deposits from many kinds of substrate surfaces. Among these are the following: Street signs and freeway signs, such as reflectively silk screened, high intensity surfaces, and surfaces coated with protective materials, concrete, cinderblock, cement, slumpstone, mountain rocks and split rocks, stucco, formica, glass, iron work, steel, stainless steel, aluminum, and other metals and alloys, brick- glazed and unglazed, vinyl, and trees. Plastic for example, plexiglass and fiberglass. Wood, especially denser woods, tile glazed and unglazed, linoleum, clothing and fabric generally, carpets. wallpaper removal and blackboards and dry mark boards. Patent Numbers 5,484,487 and 5,415,800, Motsenbocker Decl. para. 2; Exhibit A, patent 5,415,800, pages 11-12, and patent 5,484,487, pages 20-21.

Plaintiffs define the "products" in the amended complaint for which they seek a commission in this dispute as: "the Product sold as a stripper," Comp. ¶ 15, and "marketed" as "Brass Wash," Comp. ¶ 16, (later "Coating Remover" and "Lacquer Remover," Comp. ¶ 31) and "Finish Coat," Comp. ¶ 18. Plaintiffs repeatedly misrepresent in their complaint that they "developed," what they define as the subject of their suit, even though they concede in their complaint that "the Product sold as a stripper," and "marketed" as "Brass Wash," was patented by the inventor, Gregg Motsenbocker, Comp. ¶ 9, nearly five years before he met Mr. Brooks. Gregg Motsenbocker then licensed the manufacture of the patented products to MAD, Inc., who in turn hires others to contract package the products. Motsenbocker Decl. ¶ 1, and Exhibit A. Moreover, Plaintiffs admit that the Defendants continue to use the original patented formula, Am. Comp. ¶ 17, under Patent Numbers 5,415,800, and 5,484,487, without any modifications supplied by Plaintiffs.

Plaintiffs provide no admissible evidence for the court to believe that an individual, self-described painter and warehouseman, could ever have been orally promised a 10% commission

on all North American sales of the identified products, when the multi-billion dollar, multi-national Ecolab was required to pay $250,000 to MAD, Inc., up-front, for an exclusive license to distribute and sell the Defendants' patented products, which written license was terminated after Ecolab's breach of the contract in 1999. Motsenbocker Decl. ¶ 5, Ecolab Distributorship/License Agreement, Exhibit B, ¶ 4.1.

Moreover, Plaintiffs claim that the alleged oral agreement was subsequently to be memorialized in writing, but can't produce a copy of any such writing, let alone provide one scintilla of written evidence corroborating the existence of either an oral or written contract for sales commissions. Motsenbocker Decl. ¶ 4.

Motsenbocker was first contacted by George A. Brooks during a telephone call in 1999. Motsenbocker responded to Brooks solely on behalf of MAD, Inc. Brooks indicated that he had seen Motsenbocker's patented products, which could be used for the removal of clear finishes from metal elevator doors, as had been claimed on the face of the patents for five years. As with many other similar trade contacts, Motsenbocker offered Mr. Brooks free product, on behalf of MAD Inc., with which he was permitted to develop his own cleaning and janitorial business. Motsenbocker Decl. ¶ 3.

At no time did the Defendants ever enter into the agreement described in Plaintiffs' complaint with either Plaintiff. Motsenbocker Decl. ¶ 4 & 7; SUF ¶ 1 & 8. MAD Inc. totally, absolutely and conclusively repudiated any claim by the Plaintiffs that any of them had a contract with MAD Inc., and has done so for more than 4 years prior to the original complaint being filed in Maryland on April 24, 2006. On multiple occasions in 2001 and 2003, Mr. Brooks and potential customers of Brooks Industries cleaning and janitorial services, were told that Mr. Brooks is not working on behalf of the Defendants and has no agreement to represent the Defendants. Motsenbocker Decl. ¶ 4.

In October 2004, Mr. Brooks traveled to San Diego and was employed by MAD Inc. as a warehouseman, until May 2005, when Mr. Brooks returned to Maryland. Motsenbocker Decl. ¶ 6. MAD, Inc. paid to Mr. Brooks his salary for being a warehouseman from October 2004

through May 2005, and none of the Plaintiffs were ever paid any commissions by any of the Defendants. Motsenbocker Decl. ¶8; SUF ¶ 7.

Defendants made no representation to Plaintiffs that they would be paid a commission under any agreement. Defendants are not aware of, and Plaintiffs have not produced, and Plaintiffs' discovery has not produced, any written evidence, correspondence, emails or faxes describing or even referring to any representation by Defendants to Plaintiffs that they would be paid a commission under any agreement. Motsenbocker Decl. ¶¶ 4 & 7; SUF ¶¶ 3, 8 and 9. There is no evidence of payment to Brooks for anything other than his employment as a warehouseman for MAD Inc. between October 2004 and May 2005. Motsenbocker Decl. ¶¶ 6 and 8.

There is no allegation, nor any admissible evidence, that either Gregg Motsenbocker or Skip Motsenbocker made any representations to the Plaintiffs, in their individual capacity, nor that any representations were made outside the scope of their authority as principals of, and on behalf of, the corporate Defendant, Motsenbocker Advanced Developments, Inc. Motsenbocker Decl. ¶9; SUF ¶ 10; Skip Motsenbocker Decl. ¶ 1; SUF ¶ 11. Therefore, Gregg Motsenbocker and Skip Motsenbocker are entitled to summary judgment in their favor on the Plaintiffs' claims against them as individuals.

Finally, as of December 31, 2007, Skip Motsenbocker took a new job in Missouri, and has no longer been an officer of MAD, Inc., and, has no longer resided in California. Skip Motsenbocker Decl. para. 2. For this independent reason, Skip Motsenbocker is entitled to summary judgment, since the Court does not have personal jurisdiction over him.

## II. SUMMARY JUDGMENT IS GRANTED WHERE THERE IS NO GENUINE ISSUE AS TO ANY MATERIAL FACT

### A. The Moving Party has the Burden to Demonstrate the Absence of a Genuine Issue of Material Fact.

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The

moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 256 (1986); Celotex Corp. v. Catrett 477 U.S. 317 (1986); Matsushita Elec. Industrial Co. v. Zenith Radio 475 U.S. 574 (1986). The moving party's burden is more properly labeled as one of *persuasion* rather than one of *proof*. That is because, in order to carry such burden, he must *persuade* the court that there is no material fact for a reasonable trier of fact to find, and not *prove* any such fact to the satisfaction of the court itself as though it were sitting as the trier of fact. Anderson, supra at 249; Aguilar v. Atlantic Richfield Co., 25 Cal. 4th 826, 845, fn. 4 (2001).

Together, Anderson, Celotex, and Matsushita operate generally, as follows: the moving party bears the burden of persuasion that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. Initially, the moving party bears a burden of production to make a prima facie showing of the nonexistence of any genuine issue of material fact. If he carries his burden of production, he causes a shift: the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a genuine issue of material fact. How each party may carry his burden of persuasion and/or production depends on *which* would bear *what* burden of proof at trial. Aguilar, supra, 845.

Here, the burden of proof for all of the Plaintiffs' causes of action against the individual non-corporate Defendants, Gregg and Skip Motsenbocker, is to show that there is a genuine issue of material fact that any of the alleged oral representations by Gregg and Skip Motsenbocker were made in their individual capacity, as opposed to having been made, as they have testified, solely within the scope of their authority to act on behalf of MAD, Inc.

**B. Then the Opposing Party has the Burden to Demonstrate the Existence of a Genuine Issue of Material Fact**

A party opposing a properly made and supported motion for summary judgment may not rest upon mere denials, but "must set out specific facts showing a genuine issue for trial." Fed.

R. Civ. P. 56(3)(2); see also, Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.")

In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. See, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." American International Group v. American International Bank, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting). An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. Anderson 477 U.S. at 248. "This requires evidence, not speculation." Meade v. Cedarapids, Inc., 164 F.3d 1218, 1225 (9th Cir. 1999).

**C. A Mere Scintilla of Evidence will not create a Genuine Issue of Material Fact**

The Court must assume the truth of direct evidence set forth by the opposing party. See Hanson v. Dataproducts Corp., 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. See Anderson, 477 U.S. at 249-50; TW Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631-32 (9th Cir. 1987) . Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the non-moving party." American International Group, 926 F.2d 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment, rather, the non-moving party must introduce some "significant probative evidence tending to support the complaint." Summersv. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).

    **D. Plaintiffs' Self-Serving Testimony Unsupported by Corroborating Evidence Will Not Create a Genuine Issue of Material Fact**

"Judges may, under certain circumstances, lawfully put aside testimony that is so undermined as to be incredible. The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury," Johnson v. Washington Metropolitan Area Transit Authoirty, 883 F.2d 125, 128-29 (D.C. Cir. 1989), citing Ralston Purina Co. v. Hobson, 554 F.2d 725 (5th Cir. 1977) ; S.E.C. v. Phan, 500 F.3d 895, 909-10 (9th Cir. 2007), "In certain instances–such as when a declaration state[s] only conclusions, and not such facts as would be admissible in evidence, –[a] court [can] disregard a self-serving declaration for purposes of summary judgment;" Nilsson v. City of Mesa. 503 F.3d 947, 952 (9th Cir. 2007), "[A] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact;" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002), "At summary judgment, this court need not draw *all* possible inferences in [the opposing party's] favor, but only all reasonable ones."

**III. THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT THE INDIVIDUAL DEFENDANTS MADE ANY REPRESENTATIONS TO THE PLAINTIFFS OUTSIDE THE SCOPE OF THEIR AUTHORITY ON BEHALF OF THE CORPORATE DEFENDANT, MAD, INC.**

There is no admissible evidence that either Gregg or Skip Motsenbocker made any representations to the Plaintiffs, outside the scope of their authority as officers of MAD Inc., which would support any of their respective causes of action for breach of oral contract, Count I, II, and XII, misrepresentation, Count VII, negligent misrepresentation, Count VIII, or breach of fiduciary duty, Count IX. Nor is there any admissible evidence that either Gregg or Skip Motsenbocker, individually received the benefit of any of the services alleged to have been performed by Plaintiffs for MAD Inc., with which to support Plaintiffs' claims against them as

individuals for quantum meruit, Count III, unjust enrichment, Count IV, promissory estoppel/detrimental reliance, Count V, or an accounting, Count X.

Therefore, Gregg and Skip Motsenbocker, in their individual capacity, are entitled to summary judgment in this action. In Simmons v. Navajo County 2008 WL 343292, *5 (D. Ariz.2008), summary judgment was granted where there was no material issue of fact as to individual defendants having acted only on behalf of the corporation. In White v. FedEx Corp., 2006 WL 618591, *10-11 (N.D. Cal. 2006), summary judgment was granted where Plaintiffs failed to submit any evidence as to the individual defendants' liability, separate and apart from their acts on behalf of FedEx Corporatin. Kerr v. Rose, 216 Cal.App.3d 1551, 1562-63 (1990), individual defendant not liable for representations solely in his capacity as an officer and director of the corporation.

As set forth in Tachera v. United Airlines, 1989 WL 142928, * (D.Hawaii1989): "Because all actions taken by defendant Jones in this matter fell within the scope of his employment at United, no recovery sought against him individually can be factually substantiated and he is dismissed as a party. See Lucas v. Liggett & Meyers Tobacco Co., 50 Haw. 477, 482 (1968) (under facts much more tenuous than these, the court held that "[w]here evidence as to the employee's scope of authority is undisputed as in this case, the determination of the matter is not within the province of the jury but is a question of law for the court"). See also Cruikshank v. U.S., 431 F.Supp. 1355, 1358 (D.Haw.1977) (wherein the court notes the expansive definition given to the phrase, "acting within the scope of employment"); McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987) (applying California law); and Monroe v. Consolidated Freightways, Inc., 654 F.Supp. 661, 663 (E.D. Mo. 1987)."

In addition, an individual who acts only on behalf of a corporation as an officer, director, or employee of a corporation does not do business in the state where the corporation conducts business, sufficient to provide the court with jurisdiction over the individual, in his individual capacity. Serafini v. Superior Court, 68 Cal.App.4th 70, 79 (1998). Moreover, an agent for a corporation is generally not personally liable for contracts and representations made on behalf of

 such a disclosed principal. Rest.2d Agency, §§ 320, 328; also see, e.g., Techno Corp. v. Dahl Associates, Inc., 521 F.Supp. 1036, 1037 (W.D.Pa.1981); see generally, e.g., Taylor-Rush v. Multitech Corp,.217 Cal.App.3d 103, 115, (1990); and Serafini, at 79. This is particularly applicable here, where Skip Motsenbocker has taken a new job in Missouri, no longer is an officer of MAD, Inc., and no longer resides within this Court's jurisdiction in California. Skip Motsenbocker Decl. ¶ 2; SUF ¶ 12.

**III. CONCLUSION**

Here, summary judgment should be granted in favor of Gregg and Skip Motsenbocker, in their individual capacities. There is no allegation, nor any admissible evidence, that either Gregg Motsenbocker or Skip Motsenbocker made any representations to the Plaintiffs, in their individual capacity, nor that any representations were made to Plaintiffs outside the scope of their authority as principals of, and on behalf of, the corporate Defendant, Motsenbocker Advanced Developments, Inc. Hence, the Plaintiffs have neither stated a valid cause of action against either individual Plaintiff, nor raised a genuine issue of material fact as to their alleged individual liability to Plaintiffs.

Moreover, Skip Motsenbocker no longer resides within the jurisdiction of this Court, and is no longer an officer of the corporation, MAD, Inc. for this independent reason, he is entitled to summary judgment in his favor in this action.

Dated: August 4, 2008

**WEBB & CAREY**

/s/ Patrick. D. Webb
Patrick D. Webb
Attorneys for Defendants