Patrick D. Webb, Esq., State Bar No. 82857
**WEBB CAREY**
402 West Broadway, Ste 680
San Diego, Calif. 92101
(619) 236-1650

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE A. BROOKS, BROOKS INDUSTRIES, INC. <br><br> Plaintiff, <br><br> v. <br><br> MOTSENBOCKER ADVANCED DEVELOPMENTS, INC.; GREGG A. MOTSENBOCKER; SKIP A. MOTSENBOCKER, <br><br> Defendants. | Case No. 08cv378 BTM NLS <br><br> **DECLARATION OF PATRICK D. WEBB IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> DATE: September 26, 2008 <br> TIME: 11:00 A.M. <br> JUDGE: Barry Ted Moskowitz <br><br> **Per Chambers No Oral Argument Unless Requested by Court** |

I, Patrick D. Webb, declare:

I am an attorney licensed to practice law before all the courts of the State of California, and a shareholder and employee of Webb & Carey, A.P.C.., and counsel for defendants MOTSENBOCKER ADVANCED DEVELOPMENTS, INC., GREGG A. MOTSENBOCKER, and SKIP A. MOTSENBOCKER. I have personal knowledge of the facts stated herein and if called to testify as a witness, would and could testify competently thereto.

1.  Plaintiffs' original complaint was filed on April 24, 2006 in the U.S. District Court for the District of Maryland.

2.  Exhibit A is a copy of Brooks Declaration in opposition to Defendants' motion to dismiss the Maryland action for lack of jurisdiction, heard before the Hon. Alexander Williams,

1  Jr. on December 5, 2006.

2      3.    Exhibit B is a copy of the Supplemental Brooks Declaration in support of the
3  motion to amend his complaint, which has not yet been granted in the Maryland action, as
4  transferred to this District.
5  .    I declare under the penalty of perjury under the laws of the State of California that the
6  foregoing is true and correct. Executed on August 4, 2008, at San Diego, California.

7

8                                                    /s/Patrick D. Webb
                                                Patrick D. Webb

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **George A. Brooks et al**  )<br><br>Plaintiffs,  )<br><br>vs.  )<br><br>**Motsenbocker Advanced Developments,**  )<br>**Inc. et al**  )<br>Defendants.  ) | Civil Action No. 06cv1024 AW<br>Judge Alexander Williams, Jr. |

## Affidavit of George Brooks

District of Columbia   )
                       ) ss:
City of Washington     )

I, George Brooks, being duly sworn, do hereby depose and say:

1. I am over the age of 18 and am competent to testify and to make this affidavit and make this affidavit from personal knowledge. I am a plaintiff in the above-captioned lawsuit. I hereby verify that the allegations stated in the complaint herein are true and accurate, and all sums claimed to be due therein are due and owing, exclusive of all setoffs and just grounds of defense.

2. I am a Maryland, self-employed painter. In 1998 I noticed a graffiti remover (the "Product") in a Maryland store sold by defendant Motsenbocker Advanced Developments, Inc. ("Motsenbocker Developments")  After experimenting, I found that it worked as a stripper of coatings covering brass, telephoned

*Affidavit of George Brooks—Page 1 of 9*

EXHIBIT A

Motsenbocker Developments with my idea to market it as such. At that time Motsenbocker Developments had an agent in Maryland, a company by the name of Ecolab, which is based in Minnesota, but it has an Olney, Maryland office. The Olney office was the distributor of all of the Liftoff products of Motsenbocker Developments including the product. When I called Motsenbocker Developments and spoke with Gregg Motsenbocker, he told me that he would like to enter into an agreement with me and that I should call his Maryland agent and distributor, Ecolab, and that Ecolab would sign the contract. I did so and entered into a written agreement in Maryland with Motsenbocker Developments through its distributor, Ecolab. I signed the agreement in Olney, Maryland. Since the idea of marketing the Product as a stripper was mine, the agreement did not make me a mere sales representative, rather in recognition of my discovery and continuing development, I was made the exclusive sales representative with Motsenbocker Developments and would earn a commission on all sales, not just the ones I initiated. In the following months, I worked closely with Motsenbocker Developments' Maryland agent, Ecolab, in marketing the Product and I started developing it.

    3.    In addition, in 1999 I traveled to a laboratory in Mississippi and developed a coating to be used in conjunction with the stripper. Upon my return to Maryland, I entered into an

agreement with Motsenbocker Developments where Motsenbocker Developments would produce the coating and I would be its exclusive sales representative upon similar terms to my agreement with Motsenbocker Developments made through Ecolab. We worked out this agreement by telephone, me in Maryland and Gregg Motsenbocker, Motsenbocker Developments' agent, in California.

4. In early 1999, I had made significant progress in demonstrating to those in the metal refinishing industry that the Product worked as an effective and safe stripper. In particular, my demonstration with Mount Sinai Hospital in New York City was quite a success. Since major players in the metal refinishing industry were conducting significant research to develop a safe and effective metal stripper and since I seemingly appeared out of nowhere with a product that worked from a little-known manufacturer, I sought to bring Gregg Motsenbocker to meet key players in the industry. To this end, I arranged in the spring or early summer of 1999 for Gregg to come to Maryland to meet with Mr. Walter Noga of Ecolab and then to travel to New York with Mr. Noga to meet with Mr. David Straub, the head of the Metal Maintenance Industrial Association.

5. Gregg agreed. So my associate, Mr. Douglas Earnest, and I went to the Marriott hotel in 1999 to meet with Gregg. Gregg did not show up—we learned because he had to have an operation in San

Diego.  So we arranged another meeting four weeks later.  Gregg did show up.  Mr. Earnest was aware of the meeting, but decided not to attend; however, he did drive me to my car the morning of the meeting.  Thus, in spring or early summer of 1999, Gregg Motsenbocker on behalf of Motsenbocker Developments traveled to Maryland to meet with me and Mr. Noga.  We met at the restaurant dining room of the Marriott hotel located near Baltimore, just outside of BWI Airport.  Out of the presence of Mr. Noga of Ecolab, Gregg told me that Motsenbocker Developments was ending its relationship with Ecolab and would like to modify the agreement with me in that the terms would be substantially the same including that I would continue to develop the product's formula and uses except that I would receive a flat 10% on all sales of the Product and that the coating I was developing would be part of the deal as well.  I accepted the offer to modify entering into the modified agreement (the "Agreement").  Immediately following the Agreement, Gregg and Mr. Noga traveled to New York to meet with Mr. Straub.

6.   Pursuant to the Agreement, as soon as Motsenbocker Developments' relationship with Ecolab ended, I ceased representing and developing the Product through Ecolab and started representing and developing it directly on behalf of Motsenbocker Developments and to develop the Product and to market it throughout the country as is detailed in the complaint especially at paragraphs 30 through

56. I did develop the product and marketed it from 1999 to 2005. I performed a significant amount of the development in Maryland, but also did some of the development in the District of Columbia. As part of my work, I wrote instruction manuals, product flyers, and product definitions, all done in Maryland. Also I developed other uses and names for the Product, all done in Maryland. From 1999 to 2005 I made eight videos demonstrating how to use the Product. I made these videos in Washington, D.C and two in Maryland. I sent these writings and videos to Motsenbocker Developments in California who then distributed them to interested buyers throughout the country. With the complete knowledge and consent of Gregg Motsenbocker, Skip Motsenbocker, and Motsenbocker Developments I represented myself in Maryland as an agent-sales representative of Motsenbocker Developments in Maryland. I attach as Exhibit B an advertisement I placed in Metal Finish Magazine, which shows my status as an agent, and which I provided a copy to Motsenbocker Developments.

7.   From 1999 to 2005 I communicated frequently with Motsenbocker Developments through its agents Gregg Motsenbocker and Skip Motsenbocker about the Product as well as about the coating. These communications were done by telephone and mail between my Maryland home and their offices in California. In addition, I traveled to their offices in California twice, once in 2003, once

in 2004 into 2005, to work with Motsenbocker Developments on company matters and to work on the Product.

8.  As paragraph 72 of the complaint states, often from 1999 to 2005 both Gregg and Skip Motsenbocker told me that I would be wealthy one day from the sale of the Product. They told me this not only when I was in California on two occasions, but often over the telephone when I was in Maryland and in other states. In reliance on the Agreement, on these continued promises and optimistic exhortations and in reliance on my own highly-optimistic assessment of the Product, I spent over $140,000 of my own money to promote the Product, including by traveling to trade shows and producing eight videos.

9.  In May 2005, Gregg Motsenbocker, Skip Motsenbocker, and Motsenbocker Developments told me that they would not honor the Agreement, that I would receive nothing. They did this after they had a meeting with Home Depot where they arranged for Home Depot to sell the product. I knew about the Home Depot meeting since I was at their offices when calls were made to arrange the meeting and I boxed up and sent samples of the Product to Home Depot and trained Skip Motsenbocker on how to conduct a demonstration and how to describe and pitch the Product.

10. Since then as a painter and sales representative with continued interest in the Product, I have discovered the Product at

*Affidavit of George Brooks—Page 6 of 9*

Home Depot stores in Maryland and that it is being sold at Ace Hardware and Dutch Guard as well. Under the Agreement, I am entitled to have a ten percent commission on all of sales of the Product, including of course the sale currently being done through Home Depot, Ace Hardware, and Dutch Guard. Considering that Home Depot alone has highly-saturated the North American market (the territory covered in the Agreement), I know that substantial quantities of the Product are being sold and that my commissions on Home Depot sales alone will amount to easily a million dollars. In addition, while working with Motsenbocker Developments I learned of a web site it maintains to promote its business. The web site is at www.liftoffinc.com. A search shows that no less than ten suppliers of the Product exist in Maryland including one wholesale supplier. I have attached the pages showing this as Exhibit C.

11. In addition to Motsenbocker Developments' relationship to me and to Ecolab in Maryland, I do know that Motsenbocker Developments did have an agreement with a Maryland sales representative company that promoted its other products in Maryland. I know this since in the early part of this decade I worked briefly at Motsenbocker Developments' California office where I spoke to the Maryland sales representatives on the telephone.

12. The key witnesses to my dealings with the defendants

*Affidavit of George Brooks—Page 7 of 9*

include:

| Witness | Location |
|---|---|
| George Brooks | Maryland |
| Vickie Masonieuve | Maryland |
| Patrick Poney | Maryland |
| Sean Siemon | Maryland |
| Walter Noga | Maryland |
| Marcel Maisonieuve | Maryland |
| Daniel Poney | Maryland |
| Theresa Poney | Maryland |
| Larry Brook | Maryland |
| Georgia Cornell | Maryland |
| Rose Sachs | Maryland |
| Mark Tetlow | Maryland |
| John Pisaini | Maryland |
| Thomas Clime | Maryland |
| Laura Brooks | Virginia |
| Douglas Earnest | Illinois |
| Michelle Earnest | Illinois |
| Charles Scamanice | Illinois |
| Gregg Motsenbocker | California |
| Skip Motsenbocker | California |
| Naomi Craft | California |

13. I declare under penalty of perjury that the foregoing is true and correct. Executed on July 5 2008.


George Brooks

2 Exhibit:
B. Metal Finish Magazine Advertisement
C. Pages from Motsenbocker Developments web site showing some of its suppliers in Maryland

*Affidavit of George Brooks—Page 9 of 9*

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **George A. Brooks et al**<br>Plaintiffs,<br><br>vs.<br><br>**Motsenbocker Advanced Developments, Inc. et al**<br>Defendants | Civil Action No. 06cv1024 AW<br>Judge Alexander Williams, Jr. |

## Affidavit of George Brooks

District of Columbia   )
                       ) ss:
City of Washington     )

I, George Brooks, being duly sworn, do hereby depose and say:

1. I am over the age of 18 and am competent to testify and to make this affidavit and make this affidavit from personal knowledge. I am a plaintiff in the above-captioned lawsuit.

2. After attending oral arguments held on 5 December 2006 on the question of personal jurisdiction, I realized that I had made a mistake. The meeting between myself and Mr. Greg Motsenbocker in 1999 did not take place in Maryland at the Marriott Hotel outside BWI Airport as I reported. Rather it took place at a Hyatt Hotel outside of Regan National Airport in Virginia.

3. I believe I made this error since as I described in my first affidavit, a meeting was initially scheduled with Mr. Motsenbocker, which he cancelled because of medical problems. That



*Affidavit of George Brooks—Page 1 of 2*

meeting was to take place at the Marriott Hotel, where I went to meet him only to find out he was ill.

    4.   I declare under penalty of perjury that the foregoing is true and correct.  Executed on  1/3/2007                    .

                                                    _____
                                                    George Brooks