# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE A. BROOKS, BROOKS INDUSTRIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MOTSENBOCKER ADVANCED DEVELOPMENTS, INC.; GREGG A MOTSENBOCKER; SKIP A. MOTSENBOCKER, <br><br> Defendants. | CASE NO. 08cv378 BTM(NLS) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

Defendants have filed a motion for summary judgment on the claims against the individual defendants Gregg A. Motsenbocker and Skip A. Motsenbocker. For the reasons discussed below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

On April 24, 2006, Plaintiffs commenced this suit in the District Court of Maryland. In an order dated February 25, 2008, the District Court of Maryland transferred the case to this district. The case was originally assigned to Judge Hayes but was "low-numbered" to Judge Moskowitz, who is presiding over Brooks v. Motsenbocker, 07cv773 BTM(NLS).

The claims in this case are substantially the same as the claims in Case No. 07cv773. Essentially, Plaintiffs George A. Brooks ("Brooks") and Brooks Indsutries, Inc., claim that in

1999, they entered into an oral contract with Motsenbocker Advanced Developments, Inc. ("MAD"). Under the terms of the oral contract, Brooks was engaged as a sales representative for the "Product" and "Finish Coat," and MAD agreed that Brooks would earn a flat 10% commission on retail as well as wholesale sales. Brooks alleges that based on assurances by MAD and the individual defendants that the agreement would be honored, Brooks devoted much time and effort marketing the products and developing promotional materials. In or about May 2005, Gregg Motsenbocker informed Brooks that MAD would not be paying Brooks any commissions. Brooks contends that he is owed commissions on sales of Finish Coat and the Product.

In this action, the Complaint asserts the following claims: (1) Breach of Contract; (2) Breach of Contract; (3) Quantum Meruit; (4) Unjust Enrichment; (5) Promissory Estoppel; (6) Tort Arising from Breach of Contract; (7) Misrepresentation; (8) Negligent Misrepresentation; (9) Breach of Fiduciary Duties; (10) Accounting; (11) Declaratory Relief; and (12) Breach of Contract. Although it is somewhat unclear from the Complaint, Plaintiffs clarify that only the sixth, seventh, eighth, and ninth causes of action are against the individual defendants.

## II. DISCUSSION

The individual defendants seek summary judgment on the claims against them on the grounds that (1) there is no evidence that they were acting outside the scope of their authority as officers of MAD (Gregg was President and Skip was Chief Operating Officer) and, therefore, they cannot be held personally liable; and (2) the Court lacks personal jurisdiction over Skip Motsenbocker. The Court rejects both of these arguments.

### A. Liability of Officers

Defendants claim that if a defendant acts within the scope of his authority as an officer of a corporation, the defendant cannot be held personally liable for claims arising out of these acts. Defendant is incorrect.

Under California law, corporate officer status "neither immunizes a person from

personal liability for tortious conduct nor subjects him or her to vicarious liability for such acts. PMC, Inc. v. Kadisha, 78 Cal. App. 4th 1368, 1379 (2000).  An individual officer who authorizes, directs, or actively participates in the tortious conduct is not shielded by the fact that he was acting within the scope of his official position.  As explained by the California Supreme Court:

> It is well settled that corporate directors cannot be held vicariously liable for the corporation's torts in which they do not participate. Their liability, if any, stems from their own tortious conduct, not from their status as directors or officers of the enterprise. (See United States Liab. Ins. Co. v. Haidinger-Hayes, Inc. (1970) 1 Cal.3d 586, 595 [83 Cal.Rptr. 418, 463 P.2d 770].) "[A]n officer or director will not be liable for torts in which he does not personally participate, of which he has no knowledge, or to which he has not consented. ... While the corporation itself may be liable for such acts, the individual officer or director will be immune unless he authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct." ( Teledyne Industries, Inc. v. Eon Corporation (S.D.N.Y. 1975) 401 F.Supp. 729, 736-737 (applying Cal. law), affd. (2d Cir. 1976) 546 F.2d 495.)

Frances T. v. Village Green Owners Assn., 42 Cal. 3d 490, 503-04 (1986). See also L.B. Indus., Inc. v. Smith, 817 F.2d 69, 71 (9th Cir. 1987) ("[T]o be held liable a corporate director must specifically direct, actively participate in, or knowingly acquiesce in the fraud or other wrongdoing of the corporation or its officers.").[1]

Here, Plaintiffs allege that over the years, Gregg and Skip made false promises to him that the 1999 agreement would be honored and that he would receive his commissions as agreed. (Brooks Decl. ¶¶ 3-5.)  Thus, Gregg and Skip were actively involved in the alleged misconduct – i.e., misrepresentation and breach of fiduciary duty – and may be held personally liable for their acts.[2]

---

[1] The cases cited by Defendants are inapposite.  See, e.g., Simmons v. Navajo County, 2008 WL 343292 (D. Ariz. 2008) (§ 1983 case holding that there was insufficient evidence regarding the individual defendants' liability for deliberate indifference because the plaintiff did not submit particularized evidence regarding the individual defendants' involvement in the alleged deliberate indifference); White v. FedEx Corp., 2006 WL 618591 (N.D. Cal. 2006) (plaintiff failed to submit evidence that the individual defendants aided and abetted in the alleged discrimination); Tachera v. United Airlines, 1989 WL 142928 (D. Hawaii 1989) (holding that only employer could be held liable for employment action of wrongful termination).

[2] In their reply brief, Defendants argue that the evidence does not support an inference that either Gregg or Skip intended to defraud Plaintiffs.  However, this is a new argument that was not raised in the moving papers. Moreover, based on the Declaration of George A. Brooks submitted in opposition to the motion for summary judgment in Case No.

**B.  Jurisdiction over Skip Motsenbocker**

At the time of the events that form the basis of Plaintiffs' claims, Skip Motsenbocker was the COO of MAD, a California Corporation, and resided in California.  As of December 31, 2007, Skip Motsenbocker has been working at a new job in Missouri, has not served as an officer of MAD, and no longer resides in California.  (Skip Motsenbocker Decl. ¶ 2.)

Defendants claim that due to Skip Motsenbocker's changed circumstances, the Court does not have personal jurisdiction over him.  The Court disagrees.  When determining whether they have personal jurisdiction over a defendant, courts "must examine the defendant's contacts with the forum *at the time of the events underlying the dispute . . . .*" Steel v. United States, 813 F.2d 1545, 1549 (9th Cir. 1987) (emphasis added).  Thus, "[o]ne may create diversity jurisdiction by a move to a different state, but *one cannot defeat personal jurisdiction by a move away from the state in which the underlying events took place.*" Id.  (emphasis added.)

At the time of the events underlying the dispute, Skip resided in California and was the COO of a California corporation.   The alleged misrepresentations were made by Skip in his capacity as COO.  Accordingly, it appears that the Court has specific jurisdiction over him.

**C.  Tort Arising From Breach of Contract**

Plaintiffs' Sixth cause of action against Defendants is for "Tort Arising from Breach of Contract."  As explained in the Court's order on the motions for summary judgment in Case No. 07cv773, under California law, "conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." Erlich v. Menezes, 21 Cal. 4th 543, 551 (1999).  Plaintiffs have not established that the breach of contract violated a duty completely independent of the contract, and, therefore, are not entitled to tort damages for the breach of contract.  Moreover, the individual defendants could not have breached the contract because they were not parties

---

07cv773, there is sufficient evidence to support an inference of fraudulent intent.

to it.

### III. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The Court grants judgment in favor of Defendants on Plaintiffs' Sixth Cause of Action for "Tort Arising from Breach of Contract." Defendants' motion is otherwise denied.

Plaintiffs also ask the Court to grant the Motion to Amend Complaint that was filed when the case was in the District of Maryland. However, the District of Maryland actually denied the motion as "moot" in its transfer order. If Plaintiffs wish to amend their Complaint, Plaintiffs may do so by joint motion or by filing a new motion to amend.

**IT IS SO ORDERED.**

DATED: October 31, 2008

_____
Honorable Barry Ted Moskowitz
United States District Judge